Steven P. Rice (Cal. Bar No. 094321)
CROWELL & MORING LLP
3 Park Plaza
20th Floor
Irvine, CA 92614-8505
Telephone: (949) 263-8400
Facsimile: (949) 263-8414
srice@crowell.com

Steven P. Quarles (D.C. Bar No. 351668)
squarles@crowell.com
J. Michael Klise (D.C. Bar No. 412420;
*pro hac vice* application pending)
jmklise@crowell.com
Thomas R. Lundquist (D.C. Bar No. 968123)
tlundquist@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Ave., NW
Washington, D.C. 20004-2595
Telephone: (202) 624-2629
Facsimile: (202) 628-5116

Attorneys for Proposed Intervenors

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, <br><br> Plaintiff, <br><br> v. <br><br> ENVIRONMENTAL PROTECTION AGENCY, et al., <br><br> Defendants, <br><br> and <br><br> CROPLIFE AMERICA and RISE, <br><br> Applicants for Intervention. | No. C-07-2794-JCS <br><br> NOTICE OF MOTION AND MOTION FOR LEAVE TO INTERVENE AS DEFENDANT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF <br><br> (Fed. R. Civ. P. 24) <br><br> Hearing Date: Friday, Nov. 2, 2007 <br> Time: 9:30 a.m. <br> Courtroom A, 15th Floor <br><br> Magistrate Judge Joseph C. Spero |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

NOTICE TO PLAINTIFF, DEFENDANTS, AND THEIR ATTORNEYS OF
RECORD ............................................................................................................................. 1

POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
INTERVENE ....................................................................................................................... 2

INTRODUCTION ....................................................................................................................... 3

    Endangered Species Act ................................................................................................... 3

    Federal Insecticide, Fungicide and Rodenticide Act ....................................................... 3

BACKGROUND ON PROPOSED INTERVENORS ................................................................. 5

    CropLife America ............................................................................................................ 5

    RISE (Responsible Industry for a Sound Environment) ................................................. 6

ARGUMENT .............................................................................................................................. 7

    I.     INTERVENTION OF RIGHT SHOULD BE GRANTED ................................. 7

          A.    This Motion To Intervene Is Timely ..................................................... 7

          B.    CLA and RISE Have Legally Protectable Interests That May
               Be Impaired by Disposition of This Case ............................................. 8

          C.    CLA's and RISE's Interests Are Not Represented by Existing
               Parties ................................................................................................. 11

          D.    CLA and RISE Are Entitled to Intervene in All Phases of this
               Action ................................................................................................. 13

    II.    PERMISSIVE INTERVENTION SHOULD BE GRANTED ........................... 16

CONCLUSION ......................................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Animal Protection Inst. v. Martin*, 241 F.R.D. 66 (D. Me. 2007) ..................................... 9, 12, 13, 15

*Animal Protection Inst. v. Merriam*, 242 F.R.D. 524 (D. Minn. 2006) .................................. 9, 12, 15

*Californians for Alternatives to Toxics v. EPA*, No. C-00-3150-CW (N.D. Cal.
　　Sept. 18, 2002) ....................................................................................................................5

*Californians for Safe Dump Truck Transportation v. Mendonca*, 152 F.3d
　　1184 (9th Cir. 1998) ...........................................................................................................10

*Center for Biological Diversity v. Johnson*, No. 1:04-cv-00126-CKK (D.D.C.
　　Aug. 29, 2005) .....................................................................................................................5

*Center for Biological Diversity v. Johnson*, No. C-02-1580-JSW (N.D. Cal.
　　Sept. 19, 2005 and Oct. 20, 2006) ......................................................................................5

*County of Fresno v. Andrus*, 622 F.2d 436 (9th Cir. 1980) ....................................................8

*Douglas County v. Babbitt*, 48 F.3d 1495 (9th Cir. 1995) .......................................................4

*Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489 (9th Cir.
　　1995) ...............................................................................................................................10, 14

*Home Builders Ass'n of North. California v. Williams,* Civ. S-04-345 (E.D.
　　Cal. Apr. 9, 2004) ..............................................................................................................16

*Kleissler v. U.S. Forest Serv.*, 157 F.3d 964 (3d Cir. 1998) ...................................... 10, 11, 12

*Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094 (9th Cir. 2002).................................2, 17

*Merrell v. Thomas*, 807 F.2d 776 (9th Cir. 1986) ...................................................................4

*Nader v. Ray*, 363 F. Supp. 946 (D.D.C. 1973) ......................................................................9

*National Association of Home Builders v. Defenders of Wildlife,* 127 S. Ct.
　　2518 (2007) .......................................................................................................................3, 5

*Natural Resources Defense Council  v. EPA*, 99 F.R.D. 607 (D.D.C. 1983) ........................9

*Natural Resources Defense Council v. Costle*, 561 F.2d 904 (D.C. Cir. 1977).....................12

*Natural Resources Defense Council v. EPA*, No. 1:03-cv-02444-RDB (D. Md.
　　Mar. 29, 2006) .................................................................................................................5, 9

*Newton County Wildlife Ass'n v. U.S. Forest Serv.*, 113 F.3d 110 (8th Cir.
　　1997) ..................................................................................................................................13

*Nuesse v. Camp*, 385 F.2d 694 (D.C. Cir. 1977)...................................................................11

*Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726 (1998).....................................................13

*People for the Ethical Treatment of Animals v. Babbitt*, 151 F.R.D. 6 (D.D.C. 1993) ................................................................................................................ 9

*Scott v. Williams*, 924 F.2d 56 (4th Cir. 1991) ............................................................ 9

*Scotts Valley Band of Pomo Indians v. United States*, 921 F.2d 924 (9th Cir. 1990) ........................................................................................................... 11

*Sierra Club v. EPA*, 995 F.2d 1478 (9th Cir. 1993) ............................................ passim

*Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994) .......................................... 8, 11, 12

*Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001) ....................... passim

*State ex rel. Lockyer v. United States*, 450 F.3d 436 (9th Cir. 2006) ............................. 10

*Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1972) ........................... 11, 12

*United States ex rel. Joslin v. Community Home Health of Maryland, Inc.*, 984 F. Supp. 374 (D. Md. 1997) ......................................................................... 9

*United States v. Oregon*, 839 F.2d 635 (9th Cir. 1988) ........................................ 7, 11

*United States v. Stringfellow*, 783 F.2d 821 (9th Cir. 1986) ...................................... 11

*Washington Toxics Coal. v. EPA*, No. 01-0132C (W.D. Wash. July 2, 2002 and Jan. 22, 2004), *aff'd*, 413 F.3d 1024 (9th Cir. 2005) .................................... 5, 7

**Statutes**

5 U.S.C. § 551(8) ........................................................................................................ 9

ESA § 3(15), 16 U.S.C. § 1532(15) ........................................................................... 3

ESA § 4, 16 U.S.C. § 1533 ........................................................................................ 3

ESA § 7(a)(2), 16 U.S.C. § 1536(a)(2) ................................................................. 3, 15

FIFRA § 3, 7 U.S.C. § 136a ...................................................................................... 6

FIFRA § 3(a), 7 U.S.C. § 136a(a) ............................................................................. 4

FIFRA § 3(c)(5), 7 U.S.C. § 136a(c)(5) .................................................................. 3, 4

FIFRA § 6, 7 U.S.C. § 136d ..................................................................................... 10

Pub. L. No. 100- 478 § 1010, 102 Stat. 2313 (1988), 7 U.S.C. § 136a note ................. 4

**Rules**

Fed. R. Civ. P. 24(a)(2) ........................................................................................ passim

Fed. R. Civ. P. 24(b)(2) ................................................................................... 1, 2, 17

Fed. R. Civ. P. 24(c) ................................................................................................. 2

**Other Authorities**

134 Cong. Rec. S12559 (Sept. 15, 1988) ........................................................................5

134 Cong. Rec. S9756 (July 25, 1988) ..........................................................................5

134 Cong. Rec. S9761 (July 25, 1988) ..........................................................................5

50 C.F.R. Part 402 ........................................................................................................3

67 Fed. Reg. 21232 (Apr. 30, 2002) ............................................................................13

Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE
    § 1916 (1972)) ..........................................................................................................7

H.R. Conf. Rep. No. 100-928 (1988) .............................................................................5

**NOTICE TO PLAINTIFF, DEFENDANTS, AND THEIR ATTORNEYS OF RECORD**

**PLEASE TAKE NOTICE** that on Friday, November 2, 2007, at 9:30 a.m., or as soon

thereafter as the matter may be heard, in Courtroom A of the above-styled Court, located at 450

Golden Gate Avenue, San Francisco, California, Proposed Intervenors CropLife America ("CLA")

and RISE (Responsible Industry for a Sound Environment) will and do hereby move the Court to

grant them intervention under Rules 24(a)(2) and 24(b)(2) of the Federal Rules of Civil Procedure.

CLA and RISE have a right to intervene as defendants because they have substantial interests

in the property that is the subject of this case, and those interests are not adequately represented by

the existing parties.  A ruling in favor of Plaintiff, holding that the Federal Defendants have violated

the Endangered Species Act in the registration and re-registration of pesticides under the Federal

Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), will directly and adversely affect the

interests of CLA's and RISE's members, who hold the FIFRA registrations for those products.

Additionally, CLA and RISE seek permissive intervention pursuant to Rule 24(b)(2).

This motion will be based upon this Notice of Motion, Motion to Intervene, and the Points

and Authorities in Support thereof, as well as the pleadings and papers filed herein.

DATED: September 28, 2007


By:    _____/s/_____

| | |
|---|---|
| Steven P. Rice (SBN 094321) | Steven P. Quarles |
| CROWELL & MORING LLP | J. Michael Klise (*pro hac vice* application |
| 3 Park Plaza | pending) |
| 20th Floor | Thomas R. Lundquist |
| Irvine, CA 92614-8505 | CROWELL & MORING LLP |
| Phone:  949-263-8400 | 1001 Pennsylvania Avenue, N.W. |
| Facsimile:  949-263-8414 | Washington, D.C. 20004-2595 |
| srice@crowell.com | (202) 624-2500 |
| | Fax:  (202) 628-5116 |
| | jmklise@crowell.com |

Attorneys for Proposed Intervenors

1

**POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE**

2        Pursuant to Rules 24(a)(2) and 24(b)(2) of the Federal Rules of Civil Procedure, CropLife

3   America ("CLA") and RISE (Responsible Industry for a Sound Environment), on behalf of and

4   including their members (collectively "Intervenors"), respectfully seek leave to intervene as of right

5   in the above-captioned action pursuant to Rule 24(a) of the Federal Rules of Civil Procedure in order

6   to protect their vital interests in their registrations of 40 pesticides[1] that are of great importance to

7   agriculture and other concerns in the San Francisco Bay watershed.  These registrations are licenses

8   issued to Intervenors by Defendant U.S. Environmental Protection Agency ("EPA") under the

9   Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136-136y.  Intervenors'

10  registrations authorize the use of the pesticides in the United States.  Intervenors' rights and legally

11  protectable interests in their registrations have been directly attacked by Plaintiff's action, which

12  seeks a declaratory judgment and injunction prohibiting EPA from continuing to allow the use of the

13  pesticides.

14        In addition, CLA and RISE seek permissive intervention pursuant to Rule 24(b)(2).  As the

15  Ninth Circuit held in *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002), in

16  light of the magnitude of this lawsuit and the interests of CLA's and RISE's interest in the property

17  at issue, intervention will contribute to the equitable resolution of the issues and should be granted.

18        Counsel for Intervenors has conferred with counsel for the parties to determine whether there

19  is opposition to this motion.  Counsel for the Federal Defendants (Ms. Riley) advises that her clients

20  take no position on this motion.  Counsel for the Plaintiff (Mr. Graf) advises that his client would be

21  willing to stipulate to intervention in the remedy phase of this action but would oppose CLA's and

22  RISE's intervention to address the merits.  That limitation is unacceptable to Intervenors, since

23  addressing the merits is essential to protect their interests.[2]

24

25

26  _____

[1]      The term "pesticides" is used to refer generically to herbicides, insecticides, fungicides and
all other types of pesticide products.

27  [2]      Pursuant to Rule 24(c), a proposed Answer accompanies this motion, as does a proposed

28  Order.

**INTRODUCTION**

In this suit, Plaintiff Center for Biological Diversity ("CBD") alleges that EPA has violated the ESA in conjunction with the registration of pesticides under § 3(c)(5) of FIFRA, 7 U.S.C. § 136a(c)(5). CBD alleges that EPA has violated § 7(a)(2) of the ESA, 16 U.S.C. § 1536(a)(2), by failing to consult with a federal wildlife Service on registrations for 46 pesticides that allegedly may affect one or more of 11 species in the San Francisco Bay area listed as endangered or threatened species under the ESA. Compl. ¶¶ 125-245. CBD seeks declaratory and injunctive relief, including an order directing EPA to begin consultation pursuant to ESA § 7(a)(2) on the alleged effects of pesticide registrations on the 11 species, and prohibiting EPA from authorizing uses of the identified pesticides in the San Francisco Bay watershed pending completion of the ESA § 7(a)(2) consultation process. *Id.*, Prayer for Relief ¶¶ 1-5.

**Endangered Species Act.** The ESA, 16 U.S.C. §§ 1531-44, was originally enacted in 1973 and has been amended on several occasions to increase its flexibility. The ESA is intended to protect and conserve endangered and threatened species. *National Association of Home Builders v. Defenders of Wildlife,* 127 S. Ct. 2518, 2526 (2007) ("*NAHB v. Defenders*"). The ESA protects those endangered species and threatened species ("listed species") that have been listed pursuant to the rulemaking process in ESA § 4, 16 U.S.C. § 1533. ESA § 7(a)(2) provides, in relevant part, that:

> Each Federal agency shall, in consultation with and with the assistance of the Secretary, insure that any action authorized, funded, or carried out by such agency...is not likely to jeopardize the continued existence of any...[listed] species or result in the destruction or adverse modification of [designated critical] habitat of such species.

16 U.S.C. § 1536(a)(2).[3]

A further description of the ESA § 7(a)(2) consultation process can be found in the joint FWS-NOAA/NMFS ESA § 7 regulations in 50 C.F.R. Part 402.

**Federal Insecticide, Fungicide and Rodenticide Act.** FIFRA, 7 U.S.C. §§ 136-136y, regulates the sale and use of pesticides in the United States. Under FIFRA, pesticides must be

---

[3]    The "Secretary" is the Secretary of the Interior (who has purview over terrestrial ESA-listed species) or the Secretary of Commerce (who has jurisdiction over some ESA-listed marine and anadromous fish species). 16 U.S.C. § 1532(15). The Secretary of the Interior's duties are carried out by the U.S. Fish and Wildlife Service ("FWS"). The Secretary of Commerce has delegated his

(continued...)

registered with EPA before they may be sold or distributed. *Id.* § 136a(a). Registration of a

pesticide requires a determination by EPA, based on more than 100 required studies of the

pesticide's potential toxicological and environmental effects, that

> (A) its composition is such as to warrant the proposed claims for it; (B) its labeling and other material required to be submitted comply with the requirements of this Act; (C) it will perform its intended function without unreasonable adverse effects on the environment; and (D) when used in accordance with widespread and commonly recognized practice it will not generally cause unreasonable adverse effects on the environment.

FIFRA § 3(c)(5), 7 U.S.C. § 136a(c)(5).

EPA's requirements for registering a pesticide are so extensive, the Ninth Circuit has

repeatedly held that environmental analyses normally required under the National Environmental

Policy Act ("NEPA") for federal actions "significantly affecting the quality of the human

environment" are not needed where analyses in support of a pesticide registration exist. *See, e.g.,*

*Douglas County v. Babbitt*, 48 F.3d 1495, 1502 (9th Cir. 1995) (noting that "NEPA did not apply

when the EPA registered pesticides under the Federal Insecticide, Fungicide, and Rodenticide Act");

*Merrell v. Thomas*, 807 F.2d 776, 780-81 (9th Cir. 1986) (finding that "analyses in support of

registration currently are an adequate substitute for an EIS [Environmental Impact Statement] in the

FIFRA context" and that "[t]o apply NEPA to FIFRA's registration process would sabotage the

delicate machinery that Congress designed to register new pesticides").

In amendments to the ESA in 1988, Congress addressed the ESA's relationship to FIFRA.

Section 1010 of the 1988 ESA amendments directed that ESA compliance for EPA's FIFRA

program be designed "to *minimize* the impacts to persons engaged in agricultural food and fiber

commodity production and other affected pesticide users and applicators." Pub. L. No. 100-478

§ 1010, 102 Stat. 2313, 7 U.S.C. § 136a note (emphasis added). The quoted language and its

legislative history[4] reflect the legislative intent to protect existing food and fiber uses of pesticides in

the context of ESA implementation.

---

(...continued)
ESA role to the National Marine Fisheries Service ("NMFS"), which is a component of the
Commerce Department's National Oceanic and Atmospheric Administration ("NOAA").

[4]    The Conference Report elaborated:

(continued...)

## BACKGROUND ON PROPOSED INTERVENORS

**CropLife America.** Organized in 1933, CropLife American ("CLA") is the nationwide not-for-profit trade organization representing the major manufacturers, formulators, and distributors of crop protection and pest control products. CLA is headquartered in Washington, D.C. Its member companies produce, sell, and distribute most of the active compounds used in crop protection products registered for use in the United States. CLA represents its members' interests by, *inter alia*, monitoring federal agency regulations and agency actions and related litigation to identify issues of concern to the crop protection and pest control industry, and participating in such actions when appropriate. Declaration of Douglas T. Nelson ¶¶ 4-5 (Sept. 21, 2007) (appended at Ex. A). For example, CLA has participated in each of the lawsuits thus far that have challenged EPA's compliance with the ESA during FIFRA pesticide registrations – as an intervenor-defendant in four cases, and by submitting comments on a proposed consent decree in the earliest of the cases.[5] And CLA filed a Supreme Court *amicus* brief in support of the successful petitioners in *NAHB v. Defenders*, *supra*, in which the Court rejected the argument that the ESA consultation provisions apply to EPA's transfers of permit program authority to states under another statute it administers, the Clean Water Act. Nelson Decl. ¶ 5.

---

(...continued)

> Agriculture is a major part of the U.S. economy and provides nutritional sustenance for our population and exports abroad.... The Conferees, therefore, anticipate that...[the federal agencies shall] implement the [ESA] in a way that protects endangered and threatened species *while minimizing, where possible, impacts on production of agricultural foods and fiber commodities.*

H.R. Conf. Rep. No. 100-928, at 24-25, *reprinted in* 1988 U.S.C.C.A.N. 2738, 2741-42 (emphasis added). *See also* 134 Cong. Rec. S12559 (Sept. 15, 1988) (Sen. Burdick's summary that the conference report "recognizes that protection of endangered species is important, but also that agriculture is a major part of our economy and provides sustenance for our population"); 134 Cong. Rec. S9761 (July 25, 1988) (remarks of Sen. Mitchell that "[a]lternatives are to be identified which would protect endangered or threatened species from pesticides and *which would minimize any adverse effect on the production of food and fiber,"* thereby *"minimizing impacts to the farmers, ranchers, and foresters who earn their living from food and fiber production"*) (emphasis added); 134 Cong. Rec. S9756 (July 25, 1988) (similar remarks from Sen. Byrd).

[5]      *See Washington Toxics Coal. v. EPA*, No. 01-0132C (W.D. Wash. July 2, 2002 and Jan. 22, 2004), *aff'd*, 413 F.3d 1024 (9th Cir. 2005); *Californians for Alternatives to Toxics v. EPA*, No. C-00-3150-CW (N.D. Cal. Sept. 18, 2002); *Center for Biological Diversity v. Johnson*, No. C-02-1580-JSW (N.D. Cal. Sept. 19, 2005 and Oct. 20, 2006); *Center for Biological Diversity v. Johnson*, No. 1:04-cv-00126-CKK (D.D.C. Aug. 29, 2005); *Natural Resources Defense Council v. EPA*, No. 1:03-cv-02444-RDB (D. Md. Mar. 29, 2006).

CLA's members hold registrations for at least 32 of the pesticides whose registrations CBD challenges in this lawsuit. *See* Nelson Decl. ¶ 7. CLA's members are responsible for obtaining EPA's registration of their products, which cannot be sold unless registered, and have invested hundreds of millions of dollars in research and testing of their pesticides in order to prove their safety to wildlife, humans and the environment, to support issuance of the registrations. *Id.* ¶ 3; FIFRA § 3, 7 U.S.C. § 136a.

**RISE (Responsible Industry for a Sound Environment).** RISE is a national not-for-profit trade association founded to promote intelligent use of pesticides for the purpose of enhancing and protecting urban and other non-agricultural areas. Declaration of Allen James (Sept. 21, 2007) ¶ 2 (appended at Ex. B). Established in 1991 and headquartered in Washington, D.C., RISE represents producers and suppliers of specialty pesticides and fertilizers,[6] serves as a resource and advocate on pesticides and fertilizers, and provides current and accurate information on issues and research affecting the industry. *Id.* RISE promotes its members interests by, *inter alia*, monitoring legislative and regulatory issues in Washington, D.C. and in the states. James Decl. ¶ 3. In addition, RISE lends support to the industry in litigation that threatens to impose unwarranted constraints on uses and marketability of its members' products.[7]

RISE members hold registrations for at least 36 of the pesticides whose registrations CBD challenges in this lawsuit. *See* James Decl. ¶ 7. RISE members have invested millions of dollars in research and testing of their pesticides in order to prove their safety to wildlife, humans and the

---

[6]    Specialty pesticides are pest management tools used to protect health and safety as well as enhance the quality of life and the environment. Specialty pesticide products as well as fertilizers are used in and around homes, businesses and public areas; on lawns, flowers and trees; in commercial greenhouses and nurseries; on sports turf including golf courses; and for vegetation management in water, along roadways, railroads and utility rights-of-ways. Specialty fertilizers provide essential plant nutrients, including micronutrients. These products are formulated to deliver the optimal amount of nutrients to plants to promote healthy and vigorous growth. Healthy plants are better able to withstand environmental stresses like drought, insect infestations, disease, weeds, air and water pollution and overuse. The safe and responsible use of specialty fertilizers improves our environment by promoting the vigorous growth of desirable plants. James Decl. ¶ 2.

[7]    For example, in a case similar to this one, in which the plaintiffs sued EPA over alleged noncompliance with the ESA in the registration of pesticides, RISE provided declaratory support against the plaintiffs' request to require point-of-sale notifications about the alleged effects of pesticides used in urban areas in California, Washington, and Oregon, on salmon listed as threatened

(continued...)

1  environment, to support issuance of the registrations.  James Decl. ¶ 5.

2                                          *    *    *

3         All told, CLA and RISE members are registrants for 40 of the 46 pesticides whose

4  registrations CBD challenges.[8]  Any action affecting the status of currently registered pesticides –

5  such as a decision in CBD's favor in this lawsuit – would significantly and adversely affect the

6  interests of CLA, RISE, and their members.  Nelson Decl. ¶¶ 7-10; James Decl. ¶¶ 7-10.  Thus, CLA

7  and RISE should be granted intervention in this case.

8                                        **ARGUMENT**

9  **I.     INTERVENTION OF RIGHT SHOULD BE GRANTED**

10        An applicant is entitled to intervene as of right under Rule 24(a)(2) if four conditions are met:

11  (1) the motion is timely; (2) the applicant claims a "significantly protectable" interest relating to the

12  property or transaction that is the subject of the action; (3) the applicant is so situated that disposition

13  of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the

14  applicant's interests may be inadequately represented by the parties to the action.  *Southwest Ctr. for*

15  *Biological Diversity v. Berg*, 268 F.3d 810, 817-18 (9th Cir. 2001).  Rule 24(a) is construed

16  "liberally in favor of potential intervenors."  *Id.* at 818.  CLA and RISE readily satisfy these

17  conditions and should be granted intervention as of right in this case.

18        **A.     This Motion To Intervene Is Timely**

19        An evaluation of timeliness requires an assessment of the impact of intervention on parties

20  rather than an assessment of the actual passage of time or stage of the case.  The "most important

21  consideration in deciding" timeliness is whether the parties will be prejudiced by the timing of the

22  application.  *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984) (quoting Charles Alan

23  Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1916 (1972)).  *See also Sierra*

24  _____

25  (...continued)
    or endangered species under the ESA.  *Washington Toxics Coal. v. EPA*, No. 01-0132C (W.D.
26  Wash.), *supra*.  James Decl. ¶ 4.

    [8]     As the accompanying declarations attest, CLA members are registrants for 32 of the
27  pesticides, and RISE members are registrants for 36 of the pesticides.  Nelson Decl. ¶ 7; James Decl.
    ¶ 7.  When allowance is made for overlaps in membership between the two organizations, the net
28  total is 40 of the pesticides at issue.

1    *Club v. Espy*, 18 F.3d 1202, 1202 (5th Cir. 1994) ("requirement of timeliness is not a tool of

2    retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the

3    original parties").

4           This motion is timely, because this case is at an early stage.  *See Sierra Club v. EPA*, 995

5    F.2d 1478, 1481 (9th Cir. 1993) (intervention motion timely when made at "outset" of the litigation).

6    The September 21, 2007 case management conference has been continued to October 26, 2007.  *See*

7    Civil Minutes (Sept. 21, 2007) (Dkt. 18).  No dispositive motions have been filed, and no briefing

8    schedule for summary judgment motions has been set or even proposed.  The parties' updated joint

9    case management statement, as ordered by the Court, is not due until October 19, 2007.  *Id.*  In light

10   of the preliminarily stage of these proceedings, there can be no prejudice to the parties from the

11   timing of this motion.

12       **B.     CLA and RISE Have Legally Protectable Interests That May Be
                  Impaired by Disposition of This Case**

13

14          Rule 24(a)(2) is satisfied "when the applicant claims an interest relating to the property or

15   transaction which is the subject of the action" and "disposition of the action may as a practical

16   matter impair or impede the applicant's ability to protect that interest."  We address these related

     elements together.

17          The interest test is interpreted flexibly and "broadly, in favor of the applicants for

18   intervention."  *Sierra Club v. EPA*, 995 F.2d at 1481.  The interest test seeks to involve "as many

19   apparently concerned persons as is compatible with efficiency and due process."  *County of Fresno

20   v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980).  CLA's and RISE's members clearly are "concerned

21   persons."  They are major stakeholders in this challenge to EPA's registration process for pesticides.

22   They are the manufacturers and formulators of pesticide products – the very products and activities

23   that are targeted by CBD's allegations of injury.  And, critically, they hold the FIFRA registrations

24   that CBD challenges.

25          The Rule 24(a) "property and transactions" that are the subject of this litigation are

26   Intervenors' registrations, and the use of the 40 pesticides that the registrations authorize.  Compl.

27   ¶¶ 1, 3; *id* § VIII at p. 20.  The Administrative Procedure Act ("APA") underscores the legally

28   protected nature of Intervenors' interests in these pesticide registrations.  Under the APA, a pesticide

1  registration is a "license."[9]  Where litigation directly challenges a pesticide registration, the license

2  holder has a significantly protectable interest sufficient to warrant intervention as of right.  *See*

3  *Natural Resources Defense Council v. EPA*, No. 1:03-cv-02444-RDB, slip op. at 6 (D. Md. Dec. 1,

4  2003) ("*NRDC v. EPA*") (appended at Ex. C) (allowing intervention as of right to pesticide

5  manufacturer in ESA citizen suit action); *Natural Resources Defense Council  v. EPA*, 99 F.R.D.

6  607, 609 (D.D.C. 1983) (holding that pesticide manufacturers had a "substantial and direct interest"

7  and were entitled to intervene as of right in litigation challenging EPA's regulatory process under

8  FIFRA and preliminary decisions that the manufacturers' pesticide products merited continued

9  registration).

10          Similarly, other courts have found that a license constitutes a protectable property right.  *See,*

11  *e.g., United States ex rel. Joslin v. Community Home Health of Maryland, Inc.*, 984 F. Supp. 374,

12  379 (D. Md. 1997) (finding that government issued license to operate home health services

13  constituted a vested property right protected by the Fourteenth Amendment).  There, the court

14  observed that "courts have uniformly held that the holder of a license has a property right protected

15  by the appropriate Federal Due Process Clause."  *Id*. (*citing Scott v. Williams*, 924 F.2d 56, 58 (4th

16  Cir. 1991)) (other citations omitted).

17          Moreover, it is well established in this and other Circuits, including in cases under the ESA,

18  that a license or permit is a property right that is protectable through federal intervention.  *See, e.g.,*

19  *Sierra Club v. EPA*, 995 F.2d 1478 (holder of a water quality permit had a "legally protectable

20  interest" in the validity of its discharge permit, and could intervene as of right because the relief

21  sought would require the EPA to make the permit more restrictive); *Animal Protection Inst. v.*

22  *Martin*, 241 F.R.D. 66 (D. Me. 2007) (licensed fur trappers granted intervention in ESA suit that

23  would enjoin state agency from issuing licenses); *Animal Protection Inst. v. Merriam*, 242 F.R.D.

24  524 (D. Minn. 2006) (same); *People for the Ethical Treatment of Animals v. Babbitt*, 151 F.R.D. 6

25  (D.D.C. 1993) (intervention of right granted to holder of ESA permit in environmental group's ESA

26  case against U.S. Fish and Wildlife Service); *Nader v. Ray*, 363 F. Supp. 946, 953 (D.D.C. 1973)

27

28  _____
    [9]       5 U.S.C. § 551(8) ("license" includes "the whole or a part of an agency permit, certificate,
    approval, registration . . . or other form of permission").

(holders of Atomic Energy Commission-issued nuclear facility licenses had a sufficient property interest to intervene as of right in an action challenging the validity of certain AEC equipment acceptance criteria and seeking an injunction to terminate the use of certain nuclear reactors). *See also Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972-73 (3d Cir. 1998) (timber companies' interests in their existing and future timber sales contracts with U.S. Forest Service were sufficient for intervention of right in a suit against the regulating agency seeking to restrict those timber sales).[10]

Thus, Intervenors' pesticide registrations constitute tangible, concrete property rights – far more than the mere "claim of an interest" that is the requisite for intervention as of right under Rule 24(a)(2). In addition, the disposition of this action could, as a practical matter, impair Intervenors' interests in their registrations. No one has more to lose from this litigation than Intervenors. The declaratory judgment and injunction sought by Plaintiff essentially would revoke or void Intervenors' registrations and prohibit use of their pesticides in the San Francisco Bay watershed, an area in which the pesticides are used extensively for agricultural and other purposes. This would certainly impair the value of these licenses, cause substantial losses of sales, and nullify much of Intervenors' investments of hundreds of millions of dollars in the safety data that enabled them to obtain the registrations. Nelson Decl. ¶¶ 3, 8-9; James Decl. ¶¶ 5, 8-9. It would also improperly circumvent the statutory right afforded by FIFRA to pesticide registrants to an adjudicatory hearing prior to the revocation or amendment of their licenses.[11] Nelson Decl. ¶ 9; James Decl. ¶ 9. CLA and RISE cannot possibly protect their interests without being able to intervene in this proceeding. Indeed, the Ninth Circuit has recognized that the potential loss of a license is a sufficient interest to warrant intervention as of right. *State ex rel. Lockyer v. United States*, 450 F.3d 436, 441-42 (9th Cir. 2006).

---

[10]    *See also, e.g., Californians for Safe Dump Truck Transportation v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998) (employees with economic interest in higher wages granted intervention of right in a case that could limit wages); *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 & n.11 (9th Cir. 1995) (timber industry granted intervention of right in suit challenging timber harvesting).

[11]    FIFRA § 6, 7 U.S.C. § 136d, provides a full hearing right as a condition precedent to the cancellation or restriction of a pesticide registration.

In addition to the property interests just described, CLA and RISE have an interest in avoiding adverse precedent against EPA's registration of pesticides, and against the uses of those products. *See* Nelson Decl. ¶¶ 5, 10; James Decl. ¶¶ 4, 10. Absent intervention, an adverse decision with precedential significance could result and impair the industry's ability to defend against other actions seeking to limit pesticide registration, manufacture, sale, and application based on alleged effects on other ESA-listed species. This interest in avoiding adverse *stare decisis* effects further supports intervention of right. *See Sierra Club v. Espy*, 18 F.3d at 1207; *Sierra Club v. EPA*, 995 F.2d at 1486; *United States v. Oregon*, 839 F.2d at 638; *Nuesse v. Camp*, 385 F.2d 694, 702 (D.C. Cir. 1977).

Lastly, due process and simple fairness suggest that all those potentially affected by the challenged EPA processes should be represented in this litigation – EPA, which registers the pesticides; CBD, which challenges the EPA's registrations; and CLA and RISE, whose members hold the registrations and would bear the brunt of an order in CBD's favor. *See Kleissler*, 157 F.3d at 971 (in cases pitting private, state, and federal interests against each other, "[r]igid rules [barring intervention] contravene a major premise of intervention – the protection of third parties affected by the pending litigation. Evenhandedness is of paramount importance.").

## C. CLA's and RISE's Interests Are Not Represented by Existing Parties

The final criterion for intervention of right is whether the representation of an applicant's interests by existing parties "may be" inadequate. The "burden of that showing should be treated as minimal." *Berg*, 268 F.3d at 823 (quoting *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538-39 n.10 (1972)); *accord Scotts Valley Band of Pomo Indians v. United States*, 921 F.2d 924, 926 (9th Cir. 1990); *Sierra Club v. Esp*, 18 F.3d at 1207. Clearly, the pesticide industry's interests are not represented by CBD – CBD seeks to enjoin the pesticide registration process in which CLA and RISE members participate and on which they depend. *See United States v. Stringfellow*, 783 F.2d 821, 828 (9th Cir. 1986) (adverse party cannot adequately represent applicant's interests).

As to the Federal Defendants, there may some commonality of interests between them and Proposed Intervenors, but it is well recognized that the overlap between private industry and

government "does not necessarily ensure agreement in all particular respects about what the law requires." *Natural Resources Defense Council v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977) (allowing industry to intervene in environmental organization's suit against EPA); *see also Berg*, 268 F.3d at 823 (although proposed private-sector intervenors shared government defendants' ultimate objective of preserving a challenged land management plan and species protection program, their interests diverged in other ways that warranted intervention). The Federal Defendants "may not" adequately represent CLA's and RISE's interests for several reasons.

First, CLA and RISE have a strong interest, not shared by EPA, in protecting the economic and other interests of manufacturers of crop protection and pest control products. While EPA must represent the broad public interest, the private industry stakeholders are legitimately concerned with the well-being of their businesses. *See Trbovich*, 404 U.S. at 538-39; *Berg*, 268 F.3d at 823-24; *Sierra Club v. Espy*, 18 F.3d at 1208. EPA does not have the same economic stake in opposing an injunction against pesticide registrations. *See Berg*, 268 F.3d at 823 (federal agency defendants in ESA case cannot be expected to protect private-sector land development interests); *Animal Protection Inst. v. Merriam*, 242 F.R.D. at 528-29 (state agencies, which represent sovereign interest, may not adequately represent more narrowly defined interests of private-sector intervenors); *Animal Protection Inst. v. Martin*, 241 F.R.D. at 70 (although government agency might take into account private-sector economic interests, it must also weigh countervailing factors, such as the more broadly viewed public interest).

Second, the Federal Defendants, as regulators, cannot adequately represent both their "public interest" in registering and regulating pesticides, and the industry's interests, as regulated entities, against invalidation of, and unjustified regulatory restrictions on, product registrations. *See Trbovich*, 404 U.S. at 539. *See also Kleissler*, 157 F.3d at 973-74 ("[t]he straightforward business interests asserted by intervenors may become lost in the thicket of sometimes inconsistent governmental policies"). Should settlement negotiations commence, the federal agency Defendants and the private-sector stakeholders could well have different perspectives on items to be included in any settlement – just as happened with respect to the proposed consent decree in a similar case, on

1   which CLA submitted comments in response to EPA's Federal Register notice.  *See* Nelson Decl.

2   ¶ 5; 67 Fed. Reg. 21232 (Apr. 30, 2002) .

3          Third, and related, the Federal Defendants may well take different positions from CLA and

4   RISE on jurisdictional, merits, and remedy issues.  Differences between government agency

5   defendants and private industry intervenors on such issues were instrumental in obtaining Supreme

6   Court reversal of an aberrant Sixth Circuit decision in *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S.

7   726 (1998).  In that case, the federal government *opposed* Supreme Court review of the unfavorable

8   decision below, and it fell to the industry intervenors to petition for certiorari, which was granted

9   despite the government's opposition.  Similarly, in another case involving private timber industry

10  intervention on the agency side, the timber industry intervenors put forward the prevailing arguments

11  at the district court level (which the government finally joined on appeal).  *Newton County Wildlife*

12  *Ass'n v. U.S. Forest Serv.*, 113 F.3d 110, 112 (8th Cir. 1997).  As these cases illustrate, an affected

13  industry's positions may differ from a government agency's, and the inclusion of the industry can

14  lead to a more complete development of the issues.

15         Fourth, CLA and RISE will add a necessary element to the proceedings.  Granting

16  intervention will ensure that all affected interests (CBD, EPA, and the industry) are heard.  This will

17  promote the interests of fairness and a more informed decision by the Court.  *See Berg*, 286 F.3d at

18  823 ("Applicants would likely offer important elements to the proceedings that the existing parties

19  would likely neglect").

20         **D.     CLA and RISE Are Entitled to Intervene in All Phases of this Action**

21         As noted above, CBD has advised counsel that it would be willing to stipulate to CLA's and

22  RISE's intervention to address any remedy in this action should the Court find EPA liable, but

23  would oppose our intervention to address the merits of their claims.  CBD's position, in the apt

24  words of one court, "is untenable."  *Animal Protection Inst. v. Martin*, 241 F.R.D. at 71 (granting

25  licensees full intervention of right in an ESA case).  CLA's and RISE's interests in this action are

26  not limited to the remedy only, but extend to – indeed begin with – the question of whether their

27  FIFRA registrations should be declared legally invalid in the first place.

28

1    CBD apparently will rely on the Ninth Circuit's "NEPA doctrine" – which precludes

2  intervenors from participating in the merits phase of cases under the National Environmental Policy

3  Act ("NEPA").  The Ninth Circuit's rationale for restricting private parties from intervening in the

4  merits phase of NEPA actions is based on the premise that, since only the government is responsible

5  for compliance with NEPA, a private party cannot claim an "interest relating to the property or

6  transaction which is the subject of the action" under Rule 24(a).  *See, e.g., Sierra Club v. EPA*, 995

7  F.2d 1478, 1484-85; *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489 (9th Cir. 1995).

8  The Ninth Circuit's "NEPA" doctrine does not, however, bar intervention in an ESA case where, as

9  here, the plaintiff seeks to deprive the intervenor of existing, legally protectable property rights that

10  are the subject of the plaintiff's claim.

11    The Ninth Circuit has never extended the NEPA rationale to ESA cases.  More importantly,

12  however, the rationale does not apply to a case in which the plaintiff is seeking an order that would

13  directly deprive the intervenor of existing, legally protectable property rights that are the subject of

14  the plaintiff's claim, as they are here.[12]  CBD's Complaint asks this Court both to declare that

15  licenses held by CLA and RISE members violate the ESA and to order EPA to suspend those

16  licenses and thus nullify Intervenors' property rights.  This case is not an abstract dispute merely

17  over EPA compliance with the ESA, but an action which seeks to directly "regulate" property rights

18  in pesticide registrations in the most fundamental way.  CLA and RISE have a strong interest in

19  protecting those property rights – licenses which their members have held for decades – from being

20  eviscerated by the Plaintiff.  CLA's and RISE's ability to protect their members' property rights in

21  their FIFRA registrations, and their FIFRA procedural right to a due process hearing prior to having

22  their registrations suspended, is completely dependent on being able to intervene in the merits phase

23  of this action and demonstrate to the Court that the Plaintiff's contentions are without merit.

24    *Sierra Club v. EPA* is particularly instructive on the distinction between NEPA, which

25  regulates only government conduct, and statutes like the Clean Water Act ("CWA"), FIFRA, and the

26

_____

27  [12]    *See Forest Conservation Council*, 66 F.3d at 1494, where the court noted that persons who "lacked a cognizable, legally protectable interest, because they did not have any existing legal right, contract or permits" would not satisfy the Rule 24(a)(2) "interest" test, whereas persons who "have

28  asserted tangible, concrete rights protected by various federal and state laws" would satisfy the test.

_____

ESA, where private rights can be regulated. The Ninth Circuit held that the "NEPA doctrine" did not bar intervention in a CWA case by a permit holder that owned wastewater treatment plants that discharged pollutants pursuant to CWA permits. *Id.* at 1480. The court reasoned:

> It is one thing to hold that only the government can be a defendant in a NEPA suit, where the statute regulates only government action, but quite another to exclude permit-holding property owners from a Clean Water Act suit, where the statute directly regulates their conduct.

995 F.2d at 1485. Here too, Intervenors are permit holders and their conduct is directly regulated by FIFRA, so intervention on the merits is warranted.

Moreover, it is not only the relief sought by the Plaintiff that affects the registrants' property rights, but CBD's fundamental contention on the merits that the registrations themselves violate the ESA. *See, e.g.*, Prayer for Relief, ¶ 1 (seeking declaration that "EPA is violating ESA § 7(a)(2) by failing to consult with FWS concerning the effects of EPA pesticide registrations on eleven identified endangered and threatened species in the Bay Area"). CBD has chosen to attack the legal sufficiency of pesticide registrations under the ESA, and thus has made the registrations themselves the Rule 24(a)(2) "property . . . which is the subject of the action." There is a clear relationship between the registrants' property interests in their registrations, and CBD's claims that these registrations violate the ESA. In analogous circumstances in ESA cases, courts have refused to limit intervention to the remedy stage. *See Animal Protection Inst. v. Martin*, 241 F.R.D. at 71 (declining to limit intervention to remedy stage, where ultimate target of ESA suit was trapping activities of intervenor trade association's members; *Animal Protection Inst. v. Merriam*, 242 F.R.D. at 529 (same).

Under these circumstances, there can be no question that pesticide registrants have "an interest relating to the property or transaction which is the subject of the action" – a critical factor that removes this case from the Ninth Circuit's NEPA jurisprudence. And where an applicant for intervention satisfies the "interest" test and the other prongs of the Rule 24(a)(2) criteria, admission as an intervenor is *mandatory*: Rule 24(a) provides that an applicant "*shall* be permitted to intervene in an action" if it satisfies the criteria of the rule (emphasis added). Moreover, Rule 24(a) does not distinguish between the merits phase and the relief phase of a case – it states that a person meeting the criteria shall be permitted to intervene in the "action." A judicial action consists of both merits

1   and relief phases, and indeed the entitlement to, and form of, relief obviously flow from the decision

2   on the merits.  Denial of intervention in the merits phase to applicants who, like CLA and RISE,

3   otherwise meet the Rule 24(a) criteria, would undermine the entire purpose of Rule 24(a): *i.e.*, to

4   grant a right to intervene to persons whose interests are sufficiently affected.

5          There is no Ninth Circuit decision that counsels denial of intervention under such

6   circumstances, nor has the Ninth Circuit denied intervention to a third party in *any* ESA case under

7   these circumstances.  To the extent that the Ninth Circuit has spoken at all on intervention in an ESA

8   context, it has *granted* intervention by a business interest in both the merits and remedy phases of an

9   ESA case.  In *Southwest Center for Biological Diversity v. Berg*, the Ninth Circuit, evaluating the

10  "significantly protectable interest" prong of the intervention criteria, stated that "the lawsuit would

11  affect the use of real property owned by the intervenor by requiring the defendant to change the

12  terms of permits it issues to the would-be intervenor, which permits regulate the use of that real

13  property.  These interests are squarely in the class of interests traditionally protected by law."  268

14  F.3d at 819, 820 (citing *Sierra Club v. EPA*, 995 F.2d at 1483).[13]

15         In summary, no Ninth Circuit opinion has held that putative analogies between NEPA and

16  ESA would justify extending the circuit's NEPA doctrine to cases brought under the ESA.  The

17  Ninth Circuit's NEPA doctrine does not, and should not be interpreted or expanded to, deny CLA

18  and RISE the right to intervene in both the merits and the remedy phases of this case where the

19  Complaint seeks to deprive their members of valuable property interests in their pesticide

20  registrations.

21  **II.    PERMISSIVE INTERVENTION SHOULD BE GRANTED**

22         At the very least, permissive intervention should be granted.  Permissive intervention should

23  be granted because CLA and RISE members are obviously affected by litigation aimed at

24  suspending the pesticide registrations they hold.

25  _____

    [13]     The Eastern District of California rejected an attempt to bar CBD, as an intervenor, from the
26  merits phase of an ESA case, noting that NEPA and the ESA have generated two completely
    different lines of intervention cases: "This court is no more free to apply *Churchill Farms* [a NEPA
27  intervention case] to ESA cases, then [sic] it is to apply the law of a contrary out of Circuit line of
    cases in preference to Ninth Circuit doctrine."  *Home Builders Ass'n of North. California v.*
28  *Williams,* Civ. S-04-345 at 9 (E.D. Cal. Apr. 9, 2004) (appended at Ex. D).

An applicant seeking to intervene permissively under Rule 24(b)(2) must show that: (1) its application is timely; and (2) its claim or defense and the main action have a question of law or fact in common.  The Ninth Circuit has explained that:

> Unlike Rule 24(a), a "significant protectable interest" is not required by Rule 24(b) for intervention; all that is necessary for permissive intervention is that intervenor's "claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b).  Rule 24(b) "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation."  *SEC v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 459, 60 S. Ct. 1044, 84 L. Ed. 1293 (1940).

*Kootenai Tribe*, 313 F.3d at 1108.

In *Kootenai Tribe*, the Ninth Circuit held that private environmental groups lacked the significant protectable interest necessary to intervene as of right in a suit under NEPA in defense of a U.S. Forest Service rule.  The court did, however, affirm a grant of permissive intervention because those same groups satisfied the terms of Rule 24(b)(2).  *Id.* at 1110-11.  The Ninth Circuit agreed with the district court that permissive intervention was appropriate because "the magnitude of this case is such that both Applicants' intervention will contribute to the equitable resolution of the case." *Id.* at 1111.

*Kootenai Tribe* supports permissive intervention in this case.  To begin with, CLA and RISE have satisfied the plain language of Rule 24(b)(2).  As shown above, this application is timely and not prejudicial to any party.  Moreover, if CLA and RISE are allowed to participate as Intervenor-Defendants, their defenses will respond to the issues urged by CBD.  Thus, there is a complete commonality between Plaintiffs' claims and Proposed Intervenor's defenses.  CLA and RISE would structure its participation to foster a more-informed decision by this Court.

Equally important to the Court's exercise of discretion, this case, like *Kootenai Tribe*, has far-reaching implications for the Proposed Intervenors.  Here, the legal integrity of the licenses CLA and RISE members hold is at stake.  Moreover, as the representative of the directly affected industry, CLA's and RISE's participation will "contribute to the equitable resolution" of these cases.  It is in the interest of justice to allow all affected interests to participate in these cases.  *See Kootenai Tribe*, 313 F.3d at 1110-11; *Kleissler*, 157 F.3d at 971.  Therefore, permissive intervention should be granted.

1

**CONCLUSION**

2

For the foregoing reasons, CropLife America and RISE respectfully urge that they be granted

3

Intervenor-Defendant status.

4

Respectfully submitted,

5

6

7

Steven P. Rice (Cal. Bar No. 094321)        CROWELL & MORING LLP
CROWELL & MORING LLP
3 Park Plaza                          By:    _____/s/_____
20th Floor                                   Steven P. Quarles (D.C. Bar No. 351668)

8

Irvine, CA 92614-8505                        squarles@crowell.com
Telephone:  (949) 263-8400                   J. Michael Klise (D.C. Bar No. 412420; *pro hac*

9

Facsimile:  (949) 263-8414                   *vice* application pending)
srice@crowell.com                            jmklise@crowell.com

10

Thomas R. Lundquist (D.C. Bar No. 968123)
tlundquist@crowell.com

11

CROWELL & MORING LLP
1001 Pennsylvania Ave., NW

12

Washington, D.C. 20004-2595
Telephone:  (202) 624-2629

13

Facsimile:  (202) 628-5116

14

15

Attorneys for Proposed Intervenors CropLife America and RISE

16

Dated:  September 28, 2007

17

18

19

20

21

22

23

24

25

26

27

28