1  Thomas W. Stoever, Jr. (Cal. Bar No. 150056)
   ARNOLD & PORTER LLP
2  370 Seventeenth Street, Suite 4500
   Denver, Colorado 80202-1370
3  Telephone: (303) 863-1000
   Facsimile: (303) 832-0428
4  thomas.stoever@aporter.com

5  Attorney for Proposed Intervenor-Defendant
   Reckitt Benckiser Inc.

6

7

8              IN THE UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                  SAN FRANCISCO DIVISION

11

12
   **Center for Biological Diversity,** a non-profit  )        Case No. 07-cv-02794-JCS
13  organization,                                     )
                                                      )
14               Plaintiff,                           )    **MOTION AND MEMORANDUM OF**
                                                      )    **POINTS AND AUTHORITIES IN**
15         v.                                         )    **SUPPORT OF RECKITT BENCKISER**
                                                      )    **INC'S MOTION TO INTERVENE**
16  **Environmental Protection Agency**, and          )
    **Stephen Johnson**, Administrator, U.S. EPA      )    Date:    November 9, 2007
17                                                    )    Time:    9:30 a.m.
                 Defendants,                          )    Place:   Courtroom A, 15th Floor
18                                                    )    Judge:   Magistrate Judge Joseph C. Spero
                 and                                  )
19                                                    )
    **Reckitt Benckiser Inc.**,                       )
20                                                    )
                 Proposed Intervenor-Defendant.       )
21  _____ )

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2

**Page**

3

NOTICE TO ALL PARTIES AND THEIR COUNSEL OF RECORD ............................................. 1

4

POINTS AND AUTHORITIES .............................................................................................. 1

5

I.    INTRODUCTION ............................................................................................. 1

6

II.   FACTUAL AND LEGAL BACKGROUND ........................................................... 2

7

    A.    Intervenor Reckitt Benckiser ................................................................ 2

8

    B.    Endangered Species Act ....................................................................... 3

9

    C.    Federal Insecticide, Fungicide, and Rodenticide Act .................................. 4

10

III.  ARGUMENT .................................................................................................... 5

11

    A.    Reckitt Is Entitled To Intervene As Of Right. ......................................... 5

12

        1.    Reckitt's Motion To Intervene Is Timely. ....................................... 6

13

        2.    Reckitt Has A Significant Protectable Interest In The Subject
             Matter Of This Litigation. ......................................................... 7

14

15

        3.    Reckitt's Ability To Protect Its Interest Will Be Impaired If It Is
             Unable To Intervene. ............................................................. 12

16

        4.    The Other Parties Do Not Adequately Represent Reckitt's
             Interests. ............................................................................ 12

17

18

    B.    Alternatively, Permissive Intervention Should Be Granted. ..................... 14

19

IV.   CONCLUSION ................................................................................................ 15

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

4

**CASES**

5    *Audubon Society of Portland v. U.S. Fish and Wildlife Service,*
      No. 04-670-KI, 2004 WL 2026429 (D. Or. Sept. 10, 2004)..................................... 14

6    *California ex rel. Lockyer v. United States,*
7      450 F.3d 436 (9th Cir. 2006) ..................................................................................... 8

8    *Canatella v. California,*
      404 F.3d 1106 (9th Cir. 2005) ................................................................................... 6

9    *Center For Biological Diversity v. Leavitt,*
10     No. C-02-1580, 2004 WL 2940597 (N.D. Cal. Dec. 20, 2004)............................... 11

11   *Churchill County v. Babbitt,*
      150 F.3d 1072 (9th Cir. 1998) ................................................................................. 11

12   *Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Dep't of Interior,*
13     100 F.3d 837 (10th Cir. 1996) ................................................................................. 12

14   *Conservation Law Found. v. Mosbacher,*
      966 F.2d 39 (1st Cir. 1992).......................................................................................... 9

15   *County of Fresno v. Andrus,*
16     622 F.2d 436 (9th Cir. 1980) ................................................................................. 6, 8

17   *Donnelly v. Glickman,*
      159 F.3d 405 (9th Cir. 1998) ..................................................................................... 7

18   *Douglas County v. Babbitt,*
19     48 F.3d 1495 (9th Cir. 1995) ..................................................................................... 4

20   *Eyak Preservation Council v. U.S. Forest Service,*
      No. A03-180CV, 2003 WL 24085349 (D. Alaska Dec. 9, 2003) ........................... 15

21   *Feller v. Brock,*
22     802 F.2d 722 (4th Cir. 1986) ................................................................................... 13

23   *Forest Conservation Council v. U.S. Forest Service,*
      66 F.3d 1489 (9th Cir. 1995) ................................................................................... 12

24   *Fund For Animals, Inc. v. Norton,*
25     322 F.3d 728 (D.C. Cir. 2003)................................................................................. 12

26   *Greenpeace Found. v. Daley,*
      122 F. Supp. 2d 1110 (D. Haw. 2000)....................................................................... 6

27   *Home Builders Ass'n of North. Calif. v. Williams,*
      Civ. No. 2-04-345, Order (E.D. Cal. Apr. 9, 2004) ............................................... 11

28

*Idaho Farm Bureau Fed'n v. Babbitt,*
    58 F.3d 1392 (9th Cir. 1995) ........................................................................ 11

*Kleissler v. U.S. Forest Serv.,*
    157 F.3d 964 (3d Cir. 1998) ......................................................................... 13

*Kootenai Tribe v. Veneman*,
    313 F.3d 1094 (9th Cir. 2002) ...................................................................... 14

*League of United Latin Am. Citizens v. Wilson,*
    131 F.3d 1297 (9th Cir. 1997) ........................................................................ 6

*Merrell v. Thomas,*
    807 F.2d 776 (9th Cir. 1986) .......................................................................... 4

*Nader v. Ray,*
    363 F. Supp. 946 (D.D.C. 1973) ..................................................................... 8

*New York Public Interest Research Group, Inc. v. Regents Of Univ. Of State Of New York,*
    516 F.2d 350 (2d Cir. 1975) ......................................................................... 10

*Nikon Corp. v. ASM Lithography B.V.,*
    222 F.R.D. 647 (N.D. Cal. 2004).................................................................. 6, 7

*NRDC v. EPA,*
    99 F.R.D. 607 (D.D.C. 1983)...................................................................... 9, 12

*NRDC v. EPA,*
    Civ. No. RDB-03-2444, Memorandum Opinion (D. Md. Dec. 1, 2003)......... 9, 12, 13

*NRDC v. NRC,*
    578 F.2d 1341 (10th Cir. 1978) ...................................................................... 8

*Pac. Gas and Elec. Co. v. Lynch,*
    216 F. Supp. 2d 1016 (N.D. Cal. 2002) ........................................................... 6

*PETA v. Babbitt,*
    151 F.R.D. 6 (D.D.C. 1993)............................................................................ 8

*Pyramid Lake Paiute Tribe of Indians v. U.S. Dep't  of Navy,*
    898 F.2d 1410 (9th Cir. 1990) ........................................................................ 3

*Scott v. Williams,*
    924 F. 2d 56 (4th Cir. 1991) ........................................................................... 8

*Sierra Club v. EPA,*
    995 F.2d 1478 (9th Cir. 1993) ........................................................................ 8

*Sierra Club v. Espy*,
    18 F.3d 1202 (5th Cir. 1994) .................................................................. 9, 10, 12

*Sierra Club v. Glickman,*
    82 F.3d 106 (5th Cir. Tex. 1996) .................................................................... 9

*Sw. Ctr. For Biological Diversity v. Berg,*
    268 F.3d 810 (9th Cir. 2001) ...................................................................... 5, 6

*Trbovich v. United Mine Worker,*
  404 U.S. 5280 (1972) ............................................................................................................... 12

*United States ex rel. McGough v. Covington Techs.,*
  967 F.2d 1391 (9th Cir. 1992) ................................................................................................... 7

*United States ex. rel. Joslin v. Cmty. Home Health of Md., Inc.,*
  984 F. Supp. 374 (D. Md. 1997) ................................................................................................ 8

*United States v. Alisal Water Corp.,*
  370 F.3d 915 (9th Cir. 2004) ................................................................................................... 10

*United States v. City of Los Angeles,*
  288 F.3d 391 (9th Cir. 2002) .................................................................................................... 8

**STATUTES**

16 U.S.C. § 1536 ................................................................................................................... 1, 3, 4

50 C.F.R. §§ 402.13, 402.14 .......................................................................................................... 3

50 C.F.R. Parts 402, 424 ................................................................................................................. 3

7 U.S.C. § 136a ............................................................................................................................. 4

7 U.S.C. § 136a-1 .......................................................................................................................... 5

7 U.S.C. § 136d ............................................................................................................................. 9

**OTHER AUTHORITIES**

William W. Schwarzer, et al., *California Practice Guide: Federal Civil Procedure Before Trial*
  § 7:191 ...................................................................................................................................... 7

1

## NOTICE TO ALL PARTIES AND THEIR COUNSEL OF RECORD

2      Notice is hereby given that on November 9, 2007 at 9:30 a.m., or as soon as this matter

3  may be heard, in the Courtroom of the Honorable Joseph C. Spero (Courtroom A, 15th Floor),

4  Reckitt Benckiser Inc's ("Reckitt's") motion to intervene in this action under Rule 24 of the

5  Federal Rules of Civil Procedure ("Rule 24") will be heard.

6      Reckitt seeks leave to intervene as of right to protect its property interests in its

7  government-issued registrations for brodifacoum, difethialone, and warfarin, and alternatively

8  seeks permissive intervention.

## POINTS AND AUTHORITIES

9

### I.    INTRODUCTION

10

11      Pursuant to Rule 24 of the Federal Rules of Civil Procedure, Reckitt respectfully moves

12  the Court for an order granting Reckitt intervention as of right under Rule 24(a)(2), or

13  alternatively permissive intervention under Rule 24(b), so that Reckitt may protect its interests in

14  its rodenticide product registrations.  These registrations are licenses issued to Reckitt by the

15  United States Environmental Protection Agency ("EPA") under the Federal Insecticide,

16  Fungicide, and Rodenticide Act ("FIFRA") so that Reckitt can sell products that contain three of

17  the rodenticides at issue in this case, brodifacoum, difethialone, and warfarin, for residential use

18  in the United States.  Snyder Decl. ¶¶ 7-9 (attached as Exhibit 1).

19      Reckitt's property rights in its licenses are threatened by this action, which seeks an

20  injunction prohibiting or reversing EPA authorization of certain uses of specific pesticides,

21  including the active ingredients included in Reckitt's rodenticides.  Plaintiff's suit alleges that

22  EPA failed to initiate and reinitiate consultation with the United States Fish and Wildlife Service

23  ("FWS") under § 7(a)(2) of the Endangered Species Act ("ESA"), 16 U.S.C. § 1536(a)(2), and

24  failed to ensure through consultation that the registration and reregistration of pesticides does not

25  jeopardize the continued existence of or destroy or adversely modify designated critical habitat

26  of eleven identified endangered and threatened species in the San Francisco Bay Area ("Bay

27  Area"), also in violation of 16 U.S.C. § 1536(a)(2).  Compl. ¶¶ 125-31.  Center for Biological

28  Diversity ("CBD") seeks declaratory and injunctive relief, including an injunction prohibiting

"uses of the identified pesticides in the San Francisco Bay watershed until the consultation process has been completed and EPA has brought its pesticide registrations into compliance with the ESA[,] § 7(a)(2)." *Id.*, Prayer for Relief ¶¶ 1-5. As an end-product registration holder, Reckitt has unique interests that are directly threatened by this lawsuit.

A Declaration in support of this motion is attached pursuant to Civil L.R. 7-5. A proposed Order, Answer, Corporate Disclosure Certificate, Entry of Appearance, and Consent to Proceed Before A United States Magistrate Judge are filed together with this motion pursuant to Civil L.R. 7-2 and Rule 24 and for ease of intervention. Counsel for Reckitt has conferred with counsel for both CBD and the EPA. Counsel for the EPA has advised that the agency takes no position on this motion. Counsel for the Center of Biological Diversity has advised that his client opposes intervention in the merits phase, but would not object to intervention in the remedy phase. However, intervention in all phases of the litigation is supported by the case law and is essential in order for Reckitt to adequately protect its interests in this litigation.[1]

## II.     FACTUAL AND LEGAL BACKGROUND

### A.     Intervenor Reckitt Benckiser

Reckitt is a manufacturer and distributor of household use and personal care products. Included in these products is the d-CON® brand of rodenticides, which contain or have contained active ingredients that are the subject of this litigation, brodifacoum and warfarin.[2] Snyder Decl. ¶ 7. Reckitt has spent approximately $1,000,000 to obtain and maintain its registrations to use these rodenticides in its products. *Id.* ¶ 13. Reckitt's sales of these products in California exceed $4 million annually. *Id.* ¶ 17. Nationally Reckitt's sales of such products rise into the tens of millions of dollars. *Id.* ¶ 18. Reckitt's distribution chain is such that it would be difficult and expensive for Reckitt to discontinue sales in either the Bay Area or California

---

[1] Reckitt is aware that CropLife America ("CLA") and RISE (Responsible Industry For A Sound Environment) have filed a motion to intervene in this matter. To the extent CLA and RISE make arguments that are not presented in this brief, they are adopted as if set forth herein. Furthermore, if the Court would like to move up the date for argument on this motion to November 2, 2007, the date upon which CLA and RISE's motion is currently set, Reckitt has no objection.

[2] Reckitt is developing a product that includes difethialone.

alone. *Id.* ¶ 17. Indeed, an order directing the EPA to suspend or to prohibit distribution and uses of these rodenticides in the Bay Area would have the effect of prohibiting Reckitt from selling its products over a wide area of the country. *Id.* ¶¶ 17-21. Thus, the registrations are valuable property rights.

In addition, Reckitt has spent millions of dollars to test and prepare new products for registration with the EPA. The Agency's process for registering these new products – which are similar in composition, content and application to Reckitt's existing products – will be affected by the outcome of this lawsuit. *Id.* ¶ 19-20.

### B.     Endangered Species Act

The ESA establishes a framework for protecting threatened or endangered species. Section 7(a)(1) of the ESA requires federal agencies to, "in consultation with and with the assistance of the Secretary [of the Interior], utilize their authorities in furtherance of the purposes of [the ESA] by carrying out programs for the conservation of endangered species and threatened species." 16 U.S.C. § 1536(a)(1). Agencies retain substantial discretion to determine how best to fulfill this obligation. *Pyramid Lake Paiute Tribe of Indians v. U.S. Dep't of Navy*, 898 F.2d 1410, 1418 (9th Cir. 1990).

Section 7(a)(2) of the ESA establishes a procedural consultation mechanism between the action agency (*e.g.*, EPA) and FWS or the National Marine Fisheries Service (depending on the species and their location) that is designed to ensure that federal agency actions are "not likely to jeopardize the continued existence of any endangered species or threatened species" or result in the destruction or adverse modification of designated critical habitat. 16 U.S.C. § 1536(a)(2); 50 C.F.R. Parts 402, 424. This mechanism includes both formal and informal consultation. 50 C.F.R. §§ 402.13, 402.14. Where a proposed agency action is "not likely to adversely affect any listed species or critical habitat," much more limited consultation is required. 50 C.F.R. §§ 402.13, 402.14(b). Finally, in fulfilling the requirements of Section 7(a)(2), each agency is charged with using "the best scientific and commercial data available." 16 U.S.C. § 1536(a)(2); 50 C.F.R. Parts 402, 424.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## C.    Federal Insecticide, Fungicide, and Rodenticide Act

No pesticide may be sold or used in the United States without a registration issued by EPA pursuant to FIFRA.  7 U.S.C. § 136a(a).  Before a pesticide may be registered, EPA must determine, based upon contemporary science and safety standards, that the pesticide "will perform its intended function without unreasonable adverse effects on the environment." *Id.* § 136a(c)(5)(C).  EPA's requirements for registering a pesticide are so extensive that the Ninth Circuit has repeatedly held that the environmental impact analysis normally required under the National Environmental Policy Act ("NEPA") for federal actions "significantly affecting the quality of human environment" are not needed for pesticides registered under FIFRA.  *See, e.g., Douglas County v. Babbitt*, 48 F.3d 1495, 1502 (9th Cir. 1995) (noting that "NEPA did not apply when the EPA registered pesticides under the Federal Insecticide, Fungicide, and Rodenticide Act"); *Merrell v. Thomas*, 807 F.2d 776, 779-80 (9th Cir. 1986) (holding that "analysis in support of registration currently [is] an adequate substitute for an [Environmental Impact Statement] in the FIFRA context" and that to "apply NEPA to FIFRA's registration process would sabotage the delicate machinery that Congress designed to register new pesticides").

In 1988 Congress amended FIFRA to require the "reregistration" of most older pesticides, including the rodenticides at issue in this lawsuit.  Section 4 of FIFRA establishes a comprehensive reregistration process to ensure that older pesticides continue to meet FIFRA's requirements, applying the most up to date science, and that the products will not cause "unreasonable adverse effects on the environment."  7 U.S.C. § 136a-1(a); *see also* 7 U.S.C. § 136(a)(c)(5).  In 2006, EPA initiated a new program called registration review to implement requirements of amendments to FIFRA enacted in 1996 requiring EPA to re-evaluate all pesticides on a regular basis.  71 Fed. Reg. 45,719 (Aug. 9, 2006).

During both the initial registration and in the reregistration process, EPA requires the submission of test data that must meet contemporary scientific standards to enable the Agency to evaluate whether the pesticide might pose a risk to any form of wildlife, including endangered species, in any area of the United States where the product may be used.  After performing its reregistration assessment, EPA presents the results in a document referred to as a Reregistration

Eligibility Decision ("RED"), which states the Agency's findings and the criteria which must be met by a registrant for reregistering the pesticide. 7 U.S.C. § 136a-1(g)(2)(C) and (D).

In accordance with its reregistration requirements under section 4 of FIFRA, in 1991 EPA issued an RED for warfarin. EPA issued an RED for brodifacoum and difethialone in 1997. Subsequently the EPA developed a Comparative Ecological Risk Assessment for Nine Rodenticides, which included warfarin, brodifacoum, and difethialone, to further evaluate the possible risks to non-target birds and mammals posed by the rodenticide products. The EPA has completed its review of the data pertinent to the active ingredients found in the rodenticides sold by Reckitt and at issue in this litigation. In its January 17, 2007 Proposed Risk Mitigation Decision For Nine Rodenticides (attached as Exhibit 2), the Agency indicated that it has commenced consultation with the Services concerning the rodenticides that are mentioned in the Complaint. This consultation process is ongoing.

III.    **ARGUMENT**

A.    **Reckitt Is Entitled To Intervene As Of Right.**

The Ninth Circuit has articulated a four-part test under Rule 24(a)[3] to determine whether intervention as of right is appropriate: (1) the application to intervene must be timely; (2) the applicant must have a "significant protectable" interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit. *See Sw. Ctr. For Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001) (granting intervention to industry associations in ESA case). In applying this test for intervention as of right, the Ninth Circuit is guided primarily by practical and equitable considerations, and

---

[3] Rule 24(a) reads, in relevant part:

> Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

1  Rule 24(a) is liberally construed in favor of intervention.  *Id.* at 818.  In addition, the Ninth

2  Circuit has stated a strong policy of granting intervention to "as many apparently concerned

3  persons as is compatible with efficiency and due process."  *County of Fresno v. Andrus*, 622 F.2d

4  436, 438 (9th Cir. 1980).

5       Reckitt satisfies each of the four parts of the Ninth Circuit test.  Thus, Reckitt should be

6  granted intervention as of right in this case.

7                    **1.      Reckitt's Motion To Intervene Is Timely.**

8       The "threshold factor" – timeliness – is an equitable and "flexible" concept left to this

9  Court's discretion.  *Canatella v. California*, 404 F.3d 1106, 1113 (9th Cir. 2005).  A

10  determination of timeliness entails review of three factors: "(1) the stage of the proceeding at

11  which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for the

12  length of the delay."  *Sanford v. Memberworks, Inc.*, 483 F.3d 956, 965 (9th Cir. 2007) (citation

13  omitted).

14       *First,* an evaluation of "the stage of the proceeding" involves a pragmatic inquiry into

15  whether "the district court has substantively – and substantially – engaged the issues."  *League of*

16  *United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1303 (9th Cir. 1997).  In *Nikon Corp. v.*

17  *ASM Lithography B.V.*, 222 F.R.D. 647, 649 (N.D. Cal. 2004), this Court ruled that a motion to

18  intervene was timely when made "during the discovery phase of this protracted litigation, a

19  period well before the court has addressed any of the parties' . . . dispositive motions."

20  Intervention was held to be timely even though the parties had established a litigation calendar,

21  filed potentially dispositive motions, and "participat[ed] in the construction of dozens of claim

22  terms."  *Id.*  Because the court had not engaged the "real substance" of the litigation, this Court

23  held that the motion to intervene was timely.  *Id.*; *see also Pac. Gas and Elec. Co. v. Lynch*, 216

24  F. Supp. 2d 1016, 1025 (N.D. Cal. 2002) (granting a motion for intervention that was made

25  before discovery began, and before the court made any substantive rulings); *Greenpeace Found.*

26  *v. Daley*, 122 F. Supp. 2d 1110, 1114 (D. Haw. 2000) (granting an intervention motion filed after

27  the plaintiffs had served discovery requests and filed a motion for a preliminary injunction).

28

1    This case is in the early stages of litigation. In fact, this case has not even progressed as

2    far as the *Nikon Corp.* case had when intervention as of right was granted. Not only is the entire

3    case a little more than four months old, but no scheduling order has been issued. Given the

4    nascent stage of the case and the fact that this Court has not yet begun to engage the "real

5    substance" of the litigation, Reckitt's motion is timely.

6        *Second,* that Reckitt's motion to intervene has been filed so early in the proceedings

7    assures that the other parties will not suffer any "serious prejudice" as the result of the

8    intervention. *United States ex rel. McGough v. Covington Techs.*, 967 F.2d 1391, 1395 (9th Cir.

9    1992); *see also* William W. Schwarzer, et al., *California Practice Guide: Federal Civil*

10    *Procedure Before Trial* § 7:191 ("The question is whether existing parties may be prejudiced by

11    the delay in moving to intervene . . . not whether the intervention itself will cause the nature,

12    duration, or disposition of the lawsuit to change . . . .") (quotation omitted). A scheduling order

13    has not yet been entered and the parties updated joint case management statement is not due until

14    October 19, 2007. Granting Reckitt's motion to intervene would leave the parties in the same

15    position they would have been in the absence of Reckitt's motion. *See Covington Techs. Co.*,

16    967 F.2d at 1395 (concluding that there is no prejudice where the parties' "position following

17    intervention is essentially the same as it would have been had the [party seeking intervention]

18    intervened earlier").

19        *Third*, there has been no delay in the filing of Reckitt's motion, so the final factor does

20    not come into consideration in this case. Reckitt's motion comes before the Court has been

21    substantively involved in this case.

22        All three of the factors set out in *Sanford* are satisfied. Thus, Reckitt's motion to

23    intervene satisfies the timeliness prong of the Rule 24(a) analysis.

24        **2.    Reckitt Has A Significant Protectable Interest In The
               Subject Matter Of This Litigation.**

25        In the Ninth Circuit, "[a]n applicant [for intervention] has a 'significant protectable

26    interest' in an action if (1) it asserts an interest that is protected under some law, and (2) there is

27    a 'relationship' between its legally protected interest and the plaintiff's claims." *Donnelly v.*

28    *Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). This "interest test" does not require the intervenor

1    to assert a specific legal or equitable interest, but is "primarily a practical guide to disposing of

2    lawsuits by involving as many apparently concerned persons as is compatible with efficiency and

3    due process." *County of Fresno*, 622 F.2d at 438 (internal citation omitted).  Furthermore, the

4    relationship between the asserted interest and the pending action need not be a legal or formal

5    one, as "a party has a sufficient interest for intervention purposes if it will suffer a *practical*

6    *impairment* of its interests as a result of the pending litigation." *California ex rel. Lockyer v.*

7    *United States*, 450 F.3d 436, 441 (9th Cir. 2006) (emphasis added); *see also United States v. City*

8    *of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002) ("The relationship requirement is met if the

9    resolution of the plaintiff's claims actually will affect the applicant.") (quotation omitted).

10          Reckitt's interest in protecting its rodenticide registrations is a "significant protectable

11   interest."  The registrations are licenses issued to Reckitt by EPA under FIFRA, without which

12   Reckitt may not distribute its d-Con® rodenticides in the United States.  *See* 7 U.S.C. § 136a(a).

13   Both the Ninth Circuit and numerous other courts have held that a holder of government-issued

14   licenses has a sufficient interest in protecting those licenses to warrant intervention.  *See, e.g.,*

15   *Sierra Club v. EPA*, 995 F.2d 1478, 1482-83 (9th Cir. 1993) (holder of a water quality permit

16   had a "legally protectable interest" in the validity of its discharge permit and could intervene as

17   of right because the relief sought would require the EPA to make the permit more restrictive);

18   *NRDC v. NRC*, 578 F.2d 1341, 1344 (10th Cir. 1978) (holders of licenses to operate uranium

19   mills had sufficient interest to intervene as of right in a suit seeking to prevent the U.S. Nuclear

20   Regulatory Commission from issuing such licenses without preparing an environmental impact

21   statement); *United States ex. rel. Joslin v. Cmty. Home Health of Md., Inc.*, 984 F. Supp. 374,

22   379 (D. Md. 1997) (citing *Scott v. Williams*, 924 F. 2d 56, 58 (4th Cir. 1991), and stating that

23   "courts have uniformly held that the holder of a license has a property right protected by the

24   appropriate Federal Due Process Clause"); *PETA v. Babbitt*, 151 F.R.D. 6, 8 (D.D.C. 1993)

25   (holder of a captive-bred wildlife permit had a sufficient interest to intervene as of right in a

26   lawsuit seeking the invalidation of such permits); *Nader v. Ray*, 363 F. Supp. 946, 953 (D.D.C.

27   1973) (holders of nuclear facility licenses issued by the Atomic Energy Commission had a

28   sufficient property interest to intervene as of right in an action challenging the validity of certain

---

Motion And Memorandum Of Points And
Authorities In Support Of Reckitt Benckiser
Inc's Motion To Intervene                    -8-

1    AEC equipment acceptance criteria and seeking an injunction to terminate the use of certain

2    nuclear reactors).[4]  This line of cases makes clear that Reckitt's registrations to use brodifacoum,

3    difethialone, and warfarin in its products are significant protectable interests for purposes of

4    intervention.

5            Additionally, Reckitt's registrations are statutorily protected and may not be revoked

6    without due process, such as an adjudicatory hearing.  Because the registration of a pesticide,

7    like the approval of a drug, requires an investment in research and product safety and efficacy

8    testing, Congress provided that once a pesticide registration is issued, it may be revoked or

9    suspended only after a hearing at which the registrant's right to due process is guaranteed

10    through cross examination of the evidence and independent review by the National Academy of

11    Sciences.  *See* FIFRA §§ 6(b), 7(d); 7 U.S.C. § 136d(b), 136d(d).  Plaintiff's requested relief (an

12    injunction prohibiting EPA from authorizing the use of brodifacoum, difethialone, and warfarin)

13    would have the effect of suspending or revoking Reckitt's registrations in a significant market

14    without the due process protections to which Reckitt is entitled.  Where third party litigation has

15    the potential of directly affecting a pesticide registration in this manner, the license holder has

16    significant protectable interests, both substantive and procedural, sufficient to warrant

17    intervention as of right.  *See NRDC v. EPA*, 99 F.R.D. 607, 609 (D.D.C. 1983) (holding that

18    pesticide manufacturers had a "substantial and direct interest" and were entitled to intervene as

19    of right in litigation challenging EPA's regulatory process under FIFRA and preliminary

20    decisions that the manufacturers' pesticide products merited continued registration); *NRDC v.*

21    *EPA*, Civ. No. RDB-03-2444, Memorandum Opinion at 4-5 (D. Md. Dec. 1, 2003) (attached as

22    Exhibit 3) (granting pesticide registration holders' motion to intervene in an ESA lawsuit seeking

23    to require the EPA to consult with the Fish and Wildlife Service regarding pesticide

24    ─────────────────
      [4] *See also Sierra Club v. Glickman*, 82 F.3d 106 (5th Cir. Tex. 1996) (per curiam) (a trade
25    association of farmers allowed to intervene in a suit to cut off federal subsidies to those who
      pumped water from an aquifer); *Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994) (existing
26    timber contracts of members sufficient protectable property interest to allow timber purchaser
      associations to intervene as of right); *Conservation Law Found. v. Mosbacher*, 966 F.2d 39, 41
27    (1st Cir. 1992) (intervention permitted to representatives of commercial fisheries on the
      reasoning that the regulatory plan agreed upon by the government agency and the plaintiffs was
28    ultimately aimed at reducing overfishing).

1  registrations).  In sum, the injunction sought by Plaintiff would cause a "practical impairment" to

2  Reckitt's interests such that intervention should be granted as of right.

3      Reckitt's interest in protecting its registrations is particularly compelling given the

4  resources Reckitt has devoted to obtaining and maintaining its registrations and the income

5  derived from sales of Reckitt's products containing the rodenticides at issue.  Snyder Decl.

6  ¶¶ 10-15.  As noted above, Reckitt has spent $1,000,000 to obtain and maintain its registrations.

7  *Id.* ¶ 13.  Reckitt's sales of the d-Con® products in California are estimated at $4 million

8  annually.  *Id.* ¶ 17.  As a practical matter, the effects of an injunction would not be limited to the

9  Bay Area.  It would impact Reckitt's sales in California and nationwide, given Reckitt's inability

10  to control distribution of its products with such precision.  *Id.* ¶¶ 10, 17-21.

11      Moreover, Reckitt has interests that go beyond these rodenticides.  This litigation could

12  have an impact on how the EPA registers rodenticides for use in the Bay Area, California, and

13  throughout the country.  Changes in EPA policy regarding the process for registering new

14  products with new active ingredients or reregistering products with brodifacoum, difethialone, or

15  warfarin will effect the time and resources Reckitt must devote to this process.  *Id.* ¶¶ 19-21.

16  This in turn will have an economic effect on Reckitt.  Thus, Reckitt has a concrete economic

17  interest in its registrations, and this interest will be directly impacted by the proposed injunction

18  sought by the Plaintiff.  *See United States v. Alisal Water Corp.*, 370 F.3d 915, 919-20 (9th Cir.

19  2004) (noting a non-speculative economic interest can be sufficient to support a right of

20  intervention where it is "concrete and related to the underlying subject matter of the action").

21  This protectable interest is sufficient to satisfy this prong of Rule 24(a).  *See Sierra Club v. Espy*,

22  18 F.3d 1202, 1207 (5th Cir. 1994) (holding members' economic interest in existing timber

23  contracts was a sufficient protectable property interest to allow timber purchaser associations to

24  intervene as of right); *New York Public Interest Research Group, Inc. v. Regents Of Univ. Of

25  State Of New York*, 516 F.2d 350, 352 (2d Cir. 1975) (holding pharmacists' economic interest in

26  upholding regulation banning advertising of prescription drug prices was a sufficient interest to

27  warrant intervention as of right).

28

1      Because Reckitt has shown that it has a significant protectable interest in the underlying

2  action, intervention should be granted under Rule 24(a) as to all phases of the litigation.  In

3  NEPA cases, the Ninth Circuit has limited intervention by private parties with an economic

4  interest in the outcome of the litigation to the remedy phase of the litigation.  *See Churchill*

5  *County v. Babbitt*, 150 F.3d 1072, 1083 (9th Cir. 1998).[5]  That limitation is not appropriate in

6  this case.  This action arises under the ESA.  The Ninth Circuit has repeatedly allowed private-

7  party intervention as of right in ESA cases in all phases of the litigation.  *See Berg*, 268 F.3d 810;

8  *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392 (9th Cir. 1995); *see generally Home Builders*

9  *Ass'n of North. Cal. v. Williams*, Civ. No. 2-04-345, Order at 7-12 (E.D. Cal. Apr. 9, 2004)

10 (attached as Exhibit 4) (discussing the Ninth Circuit's distinction between intervention in NEPA

11 and ESA matters and allowing intervention of CBD and the Environmental Defense Center in

12 merits and remedy phase).  In *Berg*, the court concluded a contractor and several building

13 associations should be allowed to intervene in an action challenging a conservation plan under

14 the ESA because they had a "substantial interest as a third-party beneficiary of the assurances

15 and approval process set out in the [plan] that could be affected if the [plan] were invalidated."

16 268 F.3d at 820.

17     Just as the intervenors in *Berg* had ongoing development projects that were jeopardized

18 by invalidation of the incidental take permit at issue in that case, Reckitt is engaged in the sale

19 and distribution of rodenticides in accordance with its registrations under FIFRA, which will

20 effectively be eliminated if EPA was enjoined from authorizing uses of the identified pesticides

21 in the San Francisco Bay watershed.  In other words, "the injunctive relief sought by the

22 plaintiffs will have a direct, immediate, and harmful effec[t]" upon its interests.  *Forest*

---

[5] The Court should be aware that in another, similar case, a judge in this district refused to permit
intervention in the merits phase of the case, citing the Ninth Circuit rule in NEPA cases.  *Center
For Biological Diversity v. Leavitt*, No. C-02-1580, 2004 WL 2940597, at *1-2 (N.D. Cal. Dec.
20, 2004) (White, J.).  For the reasons set out herein, Reckitt believes that decision did not
accurately reflect the Ninth Circuit's guidance with respect to ESA cases.  In fact, in *Home
Builders Ass'n of North. Cal. v. Williams,* Civ. No. 2-04-345, Order at 7-12 (E.D. Cal. Apr. 9,
2004), the Eastern District of California held that the Ninth Circuit's jurisprudence regarding
intervention under the ESA was distinct from that under NEPA.  The court recognized that the
Ninth Circuit has "declined to extend the NEPA line of cases to the ESA."  *Id.* at 11.  Thus, the
court allowed CBD, the plaintiff in this case, to intervene in all phases of the litigation.

*Conservation Council v. U.S. Forest Service*, 66 F.3d 1489, 1494 (9th Cir. 1995).  Given these interests, intervention is appropriate, both at the merits and remedy stages.[6]

### 3.    Reckitt's Ability To Protect Its Interest Will Be Impaired If It Is Unable To Intervene.

As discussed above, Reckitt's ability to protect its interests will be impaired if it is not allowed to intervene.  "[I]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Berg*, 268 F.3d at 822 (quoting Fed. R. Civ. P. 24 Advisory Committee's notes).  Plaintiff seeks the suspension of Reckitt's (and others') registrations.  Reckitt cannot protect itself against this outcome without being granted status as a party intervenor in this proceeding.

Courts have agreed that intervention should be granted where these facts exist.  *See NRDC v. EPA*, Memorandum Opinion at 5-6; *see also Espy*, 18 F.3d at 1207.  Even the possibility that EPA's "preliminary decisions . . . relating to the intervenors' pesticide products would be set aside satisfies the practical impairment of interest requirement." *NRDC v. EPA*, 99 F.R.D. 607, 609 (D.D.C. 1983).  Given that denying Reckitt's motion to intervene would impair its ability to "protect [its] rights to manufacture and use [its rodenticides], either during or subsequent to the present litigation," the third factor is satisfied.  *NRDC v. EPA*, Memorandum Opinion at 6.

### 4.    The Other Parties Do Not Adequately Represent Reckitt's Interests.

The final requirement of Rule 24(a) is satisfied if the applicant shows that "representation of its interest by the existing parties 'may be' inadequate." *Berg*, 268 F.3d at 810 (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)).  The burden of showing inadequacy is minimal. *Id.*  The Ninth Circuit has directed that three factors should be considered in determining whether a proposed intervenor will be adequately represented: (1) whether the interest of a present party is such that it will undoubtedly make all the

---

[6] At least two other circuit courts have upheld such private party intervention as of right in ESA cases. *See Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Dep't of Interior*, 100 F.3d 837, 840-44 (10th Cir. 1996) (allowing intervention in ESA case based on finding party had a "legally protectable interest" under the statute); *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (same).

1   intervenor's arguments; (2) whether the present party is capable and willing to make such

2   arguments; and (3) whether the would-be intervenor would offer any necessary elements to the

3   proceedings that other parties would neglect. *Id.* at 822.

4        Courts have held that a government agency's duty to serve the broad public interest

5   generally precludes it from also adequately representing a particular group of citizens. *Feller v.*

6   *Brock*, 802 F.2d 722 (4th Cir. 1986) (finding Department of Labor could not adequately

7   represent the interests of apple pickers who sought intervention in a case threatening their

8   interests; *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 973-74 (3d Cir. 1998) ("[T]he

9   straightforward business interests asserted by intervenors may become lost in the thicket of

10  sometimes inconsistent governmental policies.").  Here, EPA is not charged by law with

11  representing Reckitt's interests and has a significantly broader concern than the narrow issue of

12  brodifacoum, difethialone, and warfarin regulation – namely, the general protection of the

13  environment.  Moreover, EPA has no financial stake in the continued use of Reckitt's

14  rodenticides and little incentive to protect that use.  *See NRDC v. EPA*, Memorandum Opinion at

15  6.  EPA therefore "cannot be expected to consistently safeguard [Reckitt's] narrow private

16  economic rights and interests concerning the registration" of the rodenticides.  *Id.* at 7.

17       Furthermore, Reckitt's interests are unique from those advanced by Proposed Intervenors

18  CropLife America ("CLA") and RISE (Responsible Industry For A Sound Environment).  CLA

19  and RISE are both trade associations that represent manufacturers, formulators, distributors,

20  producers, and/or suppliers of crop protection and pest control products.  *See* Notice of Motion

21  And Motion For Leave To Intervene As Defendant; Memorandum of Points And Authorities In

22  Support Thereof, Civ. No. 07-2794-JCS, at 5-6 (Sept. 28, 2007).  They therefore represent the

23  common interests of the manufacturers, formulators, distributors, producers, and/or suppliers

24  rather than representing all of the interests of any one of those individual entities.  Reckitt

25  represents its own interests in its end-use product registrations for several rodenticides at issue in

26  this litigation.  The injunctive relief that Plaintiff seeks, if successful, would have a direct,

27  immediate, and harmful effect upon Reckitt's business, including on Reckitt's ability to market

28  and sell its products in the San Francisco Bay Area ("Bay Area") and throughout the United

Motion And Memorandum Of Points And
Authorities In Support Of Reckitt Benckiser
Inc's Motion To Intervene                    -13-

States.  CLA and RISE sell no products (and only some of their members sell products to the public) so their interests are not similarly affected.  Therefore, neither the EPA nor the proposed intervening trade associations adequately represents Reckitt's economic interests.

In summary, Reckitt has satisfied all four of the criteria for intervention as of right on the Plaintiff's § 7(a)(2) claim.  Because Reckitt satisfies these requirements, intervention as of right should be granted as to both the merits and remedy phases.

### B.     Alternatively, Permissive Intervention Should Be Granted.

If the Court denies intervention of right, it should grant permissive intervention under Rule 24(b)(2).  "Rule 24(b)(2) provides that on timely application the court may allow an absentee to intervene 'when an applicant's claim or defense and the main action have a question of law or fact in common.'"  *Kootenai Tribe v. Veneman*, 313 F.3d 1094, 1110-11 (9th Cir. 2002) (quoting Fed. R. Civ. P. 24(b)(2)).  Where there is a common question of law or fact, "the requirement of the Rule has been satisfied and it is then discretionary with the court whether to allow intervention."  *Id.* at 1111.  In exercising this discretion, a court must consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."  Fed. R. Civ. P. 24(b)(2).  In this case, just as in *Kootenai Tribe*, there are common questions of law and fact.  Reckitt has an interest in the continued validity of the rodenticide registrations challenged in this action and wants to respond and provide "defenses" to Plaintiff's claims regarding the EPA's consultation process.  *See Kootenai Tribe*, 313 F.3d at 1110-1111.  Furthermore, because the case has only recently been filed and no scheduling order has yet been adopted, Reckitt will be able to participate in the litigation from the beginning and abide by any scheduling deadlines set by this Court.  Thus, such intervention will not cause any undue delay or prejudice.

Finally, the case law supports permissive intervention even where intervention as of right is denied.  *See id.* at 1111 (affirming permissive intervention in merits and remedial stages of *NEPA* case); *see also Audubon Society of Portland v. U.S. Fish and Wildlife Service*, No. 04-670-KI, 2004 WL 2026429, at *2 (D. Or. Sept. 10, 2004) (granting permissive intervention in merits and remedial stages of NEPA case without limitation); *Eyak Preservation Council v. U.S.*

*Forest Service*, No. A03-180CV, 2003 WL 24085349 at *1-2 (D. Alaska Dec. 9, 2003) (granting

intervention as of right in remedial phase and permissive intervention in merits stage of NEPA

case).  Thus, permissive intervention is also appropriate in this case.

**IV.     CONCLUSION**

      For the reasons set out above, Reckitt asks the Court to permit Reckitt to intervene in this

matter and to direct the clerk of the court to file the proposed answer submitted herewith.  A

proposed order is attached hereto.


Respectfully submitted this 1st day of October, 2007,


                                By:  ___/s/  Thomas W. Stoever, Jr._____
                                      Thomas W. Stoever, Jr.
                                      (Cal. Bar No. 150056)
                                      ARNOLD & PORTER LLP
                                      370 Seventeenth Street
                                      Suite 4500
                                      Denver, Colorado  80202-1370
                                      Telephone:  (303) 863-1000
                                      Facsimile:   (303) 832-0428

                                      Attorney for Proposed Intervenor-
                                      Defendant Reckitt Benckiser, Inc.

CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sends notification of such to counsel of record.

/s/  Thomas W. Stoever, Jr.