# Exhibit 4

Case 3:07-cv-02794-JCS    Document 21-5    Filed 10/01/2007    Page 1 of 19

**FILED**

APR - 9 2004

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
             DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HOME BUILDERS ASS'N OF
NORTHERN CALIFORNIA, et al.,

        NO. CIV. S-04-345 LKK/GGH

    Plaintiffs,

    v.

        O R D E R

STEVEN A. WILLIAMS, Director
of the United States Fish and
Wildlife Service, et al.,

    Defendants.
_____/

    Plaintiffs filed this action seeking review of a final agency action by the U.S. Fish and Wildlife Service ("FWS") determining that the California tiger salamanders ("CTS") located in Santa Barbara and Sonoma Counties are a valid "distinct population segment" and endangered within the meaning of the Endangered Species Act, 16 U.S.C. §§ 1531 et seq. ("ESA").

    The matter is before me on a motion to intervene brought by the Center for Biological Diversity ("Center") and the

Environmental Defense Center ("EDC"). I decide the motion based on the papers and pleadings filed herein and after oral argument.

## I.

### INTRODUCTION

The Center and the EDC are public interest organizations whose central concern is protection of the environment. See Decl. of Karen M. Kraus ("Kraus Decl"). After years of unsuccessfully advocating for the protection of the Sonoma County and Santa Barbara County California Tiger Salamander (County CTS), the movants filed multiple suits against the FWS pursuant to the ESA seeking the listing of the CTS as a threatened or endangered species under the statute. As a result of these efforts, the FWS designated the County CTS as Distinct Population Segments ("DPS"), pursuant to 61 Fed. Reg. 4722 (Feb. 7, 1996) ("DPS Policy"), and listed them as endangered as provided by § 4 of the ESA, 16 U.S.C. § 1533. Id. In addition, the FWS was ordered to designate critical habitat for the two sets of CTS. Id. at 5; See 16 U.S.C. § 1533(a)(3).

On February 19, 2004, a broad coalition of public agencies, home builders, and agricultural and labor interests filed this action to vacate the listing of the County CTS as endangered species. The Center and the EDC seek to intervene, as of right, as defendants in this action. See Fed. R. Civ. P. 4(a).[1]

---

[1] In the alternative the Center and EDC seek permissive intervention. See Fed. R. Civ. P. 24(b). Because I determine that they are entitled to intervention as of right, I do not consider this basis for intervention.

2

Plaintiffs do not oppose the intervention of the Center and EDC as to the remedies in the case, but oppose intervention as to the merits and "other pre-remedies" phases of the case. See Pl's Partial Opp'n to Mot. Counsel for defendants take no position on this motion.

## II.

**STANDARDS FOR INTERVENTION UNDER FED. R. CIV. P. 24(a)(2)**

Rule 24(a)(2) directs the district court to grant intervention if "(1) the applicant's motion is timely; (2) the applicant has asserted an interest relating to the property or transaction which is the subject of the action; (3) the applicant is so situated that without intervention the disposition may, as a practical matter, impair or impede its ability to protect that interest; and (4) the applicant's interest is not adequately represented by the existing parties." Portland Audubon Society v. Hodel, 866 F.2d 302, 308 (9th Cir. 1989); United States v. State of Oregon, 913 F.2d 576, 587 (9th Cir. 1990).

The Ninth Circuit has consistently held, often in the specific context of environmental disputes, that "Rule 24 is broadly construed in favor of intervention." United States v. Washington, 86 F.3d 1499, 1503 (9th cir. 1996); Donnelly v. Glickman, 159 F.3d 405, 409 (9th Cir. 1998) ("In determining whether intervention is appropriate, we are guided primarily by practical and equitable considerations. We generally interpret the requirements broadly in favor of intervention.") "Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, proposed

3

complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." Southwest Center for Biological Diversity v. Berg, 268 F.3d 810, 820 (9th Cir. 2001). The test should be applied with an eye on practical consideration. United States v. Stringfellow, 783 F.2d 821, 826 (9th Cir. 1986) (citing Fed. R. Civ.P.24(a)(2) advisory note ("if an [applicant] would be substantially affected in a practical sense by the determination made in an action, [the applicant] should, as a general rule, be entitled to intervene . . . .")).

### III.

### INTERVENTION AS OF RIGHT

**A. TIMELINESS OF MOTION TO INTERVENE**

Three factors inform the determination of whether a motion to intervene is timely: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." United States ex rel. McGough v. Covington Technologies Co., 967 F.2d 1391, 1394 (9th Cir. 1992). There can be no doubt that the motion is timely. It was filed approximately two weeks after the case was filed.[2]

////

////

---

[2] The court has not considered the substance of the claims in the Amended Complaint, and no motions as to those claims have yet been filed. Thus, there is no prejudice to the plaintiffs or to the other parties in the litigation. See Northwest Forest Resource Council v. Glickman, 82 F.3d 825, 837 (9th Cir. 1996).

B.  **INTEREST RELATING TO THE PROPERTY OR TRANSACTION WHICH IS THE SUBJECT OF THE ACTION**

The plaintiffs contend that the FWS failed to substantively and procedurally comply with the ESA and Administrative Procedure Act, 5 U.S.C. § 706, when it identified the County CTS as distinct population segments and listed them as endangered species. The Center and EDC must demonstrate a "significantly protectable interest" in those issues to support their intervention. Forest Conservation Council, 66 F.3d at 1493.

It is established in this circuit that public interest groups are entitled, as a matter of right, to intervene in an ESA action challenging the legality of a measure they have supported. Idaho Farm Bureau Federation v. Babbitt, 58 F.3d 1392 (9th Cir. 1995). As in the present case, the plaintiffs in Idaho Farm Bureau challenged the FWS's adoption of a final rule listing an endangered species pursuant to § 4 of the ESA. Two environmental organizations moved to intervene as a matter of right. The Ninth Circuit concluded that the organizations had a protectable interest relating to the subject of the case because they had been "active in the process FWS went through to list the Springs Snail as an endangered species" and had "filed a suit to compel FWS to make a final decision on the proposed listing." 58 F.3d at 1397-98.

The history of the listing challenged here demonstrates that the Center and EDC have met their burden of showing an interest in the subject of this litigation under the Idaho Farm Bureau standard. Indeed, it appears likely that without their efforts the

5

1  FWS would not have listed the County CTS as endangered species.

2  The movants' efforts began in 1992, when the FWS received a
3  petition to list the California tiger salamander as endangered
4  throughout its range in California.[3] After the FWS failed to take
5  action, the EDC filed suit against FWS pursuant to the ESA. Kraus
6  Decl. at 3. The suit was dismissed after the FWS agreed to publish
7  a finding on the CTS by January of 1994. Id. In April, 1994, the
8  Service published a finding that listing of the CTS throughout its
9  range in California was "Warranted but Precluded" by higher
10 priority actions.[4] Id.; 59 Fed. Reg. 18353. Subsequent FWS
11 inaction resulted in the EDC filing three suits, in 1994, 1997, and
12 1999. Id. at 3-4.

13 In August, 1993, the FWS received a petition to list the
14 County CTS on an emergency basis.[5] In response, the Service listed
15 only the Santa Barbara CTS on an emergency basis in January, 2000.
16 See 65 Fed. Reg. 3095. In June, 2001, the Center petitioned the

---

[3] Section 4 sets forth a detailed process by which the FWS adds to the list of threatened and endangered species. See 16 U.S.C. § 1533. The listing process can begin either by citizen petition or by internal FWS processes. In most cases, the process begins when a petition for listing is received by the FWS. See 16 U.S.C. § 1533(b)(3)(A).

[4] The only instance in which the FWS may lawfully delay protecting a species for which listing is warranted is if the FWS finds that listing is "warranted but precluded by other higher listing priorities." 16 U.S.C. § 1533(b)(3)(B).

[5] The FWS is required, when warranted, to issue an emergency regulation to prevent an "emergency posing a significant risk to the well being of any species." 16 U.S.C. § 1533(b)(7). Such an emergency regulation remains in effect for up to 240 days, at which time the FWS must issue a final rule to continue the protection. Id.

6

Service to list the Sonoma County CTS on an emergency basis. When the Service failed to take any action on this petition, the Center once again sued the Service to compel it to take action to protect both the Sonoma County CTS and the CTS throughout its remaining range in California. See Center for Biological Diversity v. U.S. Fish and Wildlife Service, C-02-0558 WHA (N.D. Cal.)). The parties came to a settlement, resulting in a consent decree, by virtue of which the Service listed the Sonoma County CTS on an emergency basis in July, 2002, and finaled the listing in March, 2003. See 67 Fed. Reg. 47726; 68 Fed. Reg. 13497.

Another suit was filed by the proposed intervenors to compel the FWS to designate critical habitat for the Santa Barbara and Sonoma County CTS.[6] On August 6, 2003, the District Court granted the EDC and Center's motion for summary judgment and ordered the Service to issue a proposal to designate critical habitat for the Santa Barbara CTS no later than January 15, 2004, and a final rule no later than November 15, 2004.

Given this history, it seems apparent that, but for the lawsuits, it is unlikely that FWS would have taken any action to protect the County CTS under the ESA, the very activity challenged in this action.

Despite the above, plaintiffs maintain that the movants' participation should be limited to the remedies phase of the

---

[6] Under the ESA, FWS is required to designate critical habitat for a species at the time it is listed, or within a limited extension of time. See 16 U.S.C. §§ 1533(a)(3) and (b)(6)(C).

7

litigation, and denied as to the merits issues. As I now explain, the plaintiff's contention is not well-taken.

Plaintiffs rely on Churchill County v. Babbitt, 150 F.3d 1072, 1082-83 (9th Cir. 1998), for the proposition that only the federal government can be a defendant in the merits phase of cases such as this. According to the plaintiffs, "[u]nder a long line of Ninth Circuit and district court decisions, the dividing line is clear: non-federal entities cannot be granted intervention on ESA merits issues, but only on remedy issues." Pl's Partial Opp'n Br. at 3 (citing, inter alia, Southwest Center for Biological Diversity v. U.S. Forest Service, 82 F. Supp.2d 1070, 1074 (D. Az. 2000)).

In Churchill County, the Ninth Circuit held that in a National Environmental Policy Act (NEPA) case, no private party has a right to intervene as a party defendant "during the merits phase" "because NEPA requires action only by the government, [and] only the government can be liable under [that statute]." 150 F.3d at 1082. The plaintiffs assert that, like NEPA, §§ 3 and 4 of the ESA (16 U.S.C. §§ 1532 and 1533), which govern designating a species as endangered, require action only by the government; accordingly, they maintain that Churchill County's reasoning compels a similar result here.

The plaintiffs do not deny that Idaho Farm Bureau is indistinguishable from the issue at bar, yet they contend that this court should not follow Idaho Farm Bureau because the logic of Churchill County precludes the court from granting the Center and EDC full intervention. Pl's Partial Opp'n Br. at 5:5-6.

Plaintiffs, if effect, suggest that Idaho Farm Bureau was overruled *sub silentio* by Churchill County. They note that Idaho Farm Bureau was decided before Churchill Farms, and thus they contend the limitations on intervention noted in the later case, were developed subsequent to Idaho Farm Bureau. They conclude that given the chronology, this court is required to apply the reasoning of the later case. To support their contention that Idaho Farm Bureau is not binding precedent, plaintiffs cite to dictum that "[i]t is of course contrary to all traditions of our jurisprudence to consider the law on [a] point conclusively resolved by broad language in cases where the issue was not presented or even envisioned." R.A.V. v. City of St. Paul, 505 U.S. 377, 382 n.5 (1992). Despite Justice Scalia's observation, however, plaintiffs' argument does not lie, since its premise is faulty.

    The plaintiffs' argument simply ignores the fact that there are two lines of cases, one addressing intervention in NEPA cases, the other in ESA cases. This court is no more free to apply Churchill Farms to ESA cases, then it is to apply the law of a contrary out of Circuit line of cases in preference to Ninth Circuit doctrine.

    The contention that Churchill Farms governs because it is a later development in intervention jurisprudence is unjustified. The limitation on intervention in NEPA actions addressed there was premised on a well-developed principle recognized as early as 1989 in Portland Audubon, 866 F.2d at 308-310 (9th Cir. 1989); see also Forest Conservation Council v. United States Forest Serv., 66 F.3d

9

1489, 1490 fn. 11 (9th Cir. 1995) (restating rule that in a lawsuit to compel compliance with NEPA, only the federal government can be a defendant); <u>Sierra Club v. United States Envtl. Protection Agency</u>, 995 F.2d 1478, 1485 (9th Cir. 1993) ("Since NEPA requires only action by the government, no private party can comply with NEPA. It is for that reason that in a lawsuit to compel compliance with NEPA, no one but the federal government can be a defendant."); <u>Portland Audubon Soc'y v. Hodel</u>, 866 F.2d 302, 309 (9th Cir. 1989)("The district court correctly . . . [held] that the intervenors lack an adequate interest relating to the plaintiffs' NEPA claims where NEPA provides . . . . no "protectable" interest justifying intervention as of right.")). Clearly, if this were a NEPA action, the Center and EDC intervention would be limited to the remedies phase. Here, however, I am bound by other Ninth Circuit precedent.

As explained in <u>Idaho Farm Bureau</u>, a separate line of cases exists in which the Ninth Circuit has consistently held that in ESA cases, public interest groups are entitled, as a matter of right, to intervene in suits challenging the legality of government action which those groups have actively supported through lobbying or litigation. As one Ninth Circuit panel explained, the "common thread" in these cases is that intervention is properly granted where the proposed intervenors "were directly involved in the enactment of the law or in the administrative proceedings out of which the litigation arose." <u>Northwest Forest</u>

////

Resource Council v. Glickman, 82 F.3d 825, 837 (9th Cir. 1996)[7] (citing Sagebrush Rebellion, Inc. v. Watt, 713 F.2d 525, 527 (9th Cir. 1983), aff'd 790 F.2d 760 (9th Cir. 1986) (granting the National Audubon Society's motion to intervene because it had participated in proceedings to create a wildlife sanctuary that plaintiffs challenged in the case); Washington State Bldg. and Constr. Trades Council v. Spellman, 684 F.2d 627, 630 (9th Cir. 1982) cert. denied; Don't Waste Washington v. Washington, 461 U.S. 913 (1983) (holding that public interest group had sufficient interest to intervene as of right in challenge to initiative because it had sponsored the initiative)). Contrary to plaintiffs' contention, the Idaho Farm Bureau line of cases did not precede the Churchill County cases, but developed concurrently.

Moreover, as late as 2001, the Ninth Circuit declined to extend the NEPA line of cases to the ESA. In Southwest Center for Biological Diversity v. Berg, 268 F.3d 810 (9th Cir. 2001), the circuit reversed the denial of proposed intervenors in an ESA § 10

---

[7] The plaintiffs in that case challenged the government's action under Section 2001(k)(1) of the 1995 Emergency Supplemental Appropriations for Disaster Relief and Rescissions Act, Pub.L. No. 104-16, 109 Stat. 240 (1995). Under that section, the Secretaries of Agriculture and Interior were required to release "all timber sale contracts offered or awarded before the Acts' enactment in any unit of the National Forest System." Northwest Forest Resource Council, 82 F.3d 825 (9th Cir. 1996) (internal citations omitted). As in NEPA actions, only the government had an obligation to act under that section and thus was the only party which could be held liable. The reason given by the court in denying the environmental groups intervention, however, was that the groups had not been involved in the enactment of the challenged law or relevant administrative proceedings, and not because only the federal government could be a defendant.

11

challenge to the FWS's approval of a habitat conservation plan and issuance of an incidental take permit. The Court concluded that the private associations had a protectable interest warranting intervention as of right in all phases of that case. 268 F.3d at 818-821.[8]

Indeed, in first announcing the NEPA intervention rule, the Circuit acknowledged that ESA cases produce a different result and explained the distinction between the cases.[9] The Ninth Circuit

---

[8] Plaintiffs cite to two district court cases, Southwest Center for Biological Diversity v. U.S. Forest Service, 82 F.Supp.2d 1070 (D. Az. 2000), and Center for Biological Diversity v. Whitman, No. C 02-1580 CW (N.D. Cal., Order dated Aug. 5, 2002), suggesting they demonstrate a trend within the circuit to apply the limitations on intervention in the NEPA line of cases to other statutes. With the greatest of respect for my colleagues, trends, if they exist, cannot overcome binding authority. I note, moreover, that the purported trend is hardly universal. Recently, Judge Beck granted the Center for Biological Diversity's motion to intervene as of right in Kern County Farm Bureau, et. al., v. Anne Badgely, et. al., Civ. F 02-5376 AWI/DLB (E.D. Cal., Beck, Mag. J.) Order dated Aug. 26, 2003) (Exh. G to Siegel Decl., Docket # 12). That case, like this one, involved claims challenging the listing of an endangered species pursuant to §4 of the ESA.

[9] Portland Audubon Soc rejected the intervenors' argument that its holding, denying intervention to private parties in NEPA actions, was inconsistent with cases which allowed complete intervention, stating that:
"[i]n Sagebrush Rebellion, Inc. v. Watt, 713 F.2d 525, 526-28 (9th Cir. 1983), we found that the intervenor environmental groups, which had asserted 'environmental, conservation and wildlife interests,' had an adequate interest in the litigation to intervene on behalf of the defendant government officials where the plaintiffs had challenged the government's attempt to create a bird preserve."
866 F.2d at 309.
Simply put, that distinction, justifying the departure from the ESA rule in NEPA cases, requires application of the rule in the instant matter.
Moreover, while the distinction relied on in Portland Audubon Society may be viewed as cryptic, a rationale for the ESA cases is

12

has not overruled <u>Idaho Farm Bureau</u>, and, accordingly, this court is bound to follow its holding. <u>Hart v. Massanari</u>, 266 F.3d 1151, 1171 (9th Cir. 2001) ("[o]nce a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself sitting en banc, or by the Supreme Court.").

I conclude that, under compulsion of binding authority, as well as practical considerations(<u>see</u> §§ C and D immediately below), the Center and the EDC have a protectable interest sufficient to participate in all phases of this action.

## C. INTERESTS SIGNIFICANTLY IMPAIRED

I now examine whether, absent the EDC's and the Center's intervention, their interests in the County CTS will be significantly impaired. Rule 24(a)'s "impairment" requirement addresses whether, as a practical matter, a denial of intervention would impede a prospective intervenor's ability to protect its interests in the subject of the action. As the Advisory Committee Notes for the 1966 amendments to Rule 24(a) explain, "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." Fed. R. Civ. P. 24 Advisory Committee's Note to 1966 Amendments.

---

readily at hand. Under the ESA, a private party may petition for listing, providing information justifying the proposed action. <u>See</u> n.3. As the initiator of the action, such a private party has a more direct and immediate interest than those who comment on proposed action under NEPA.

13

1     Courts have repeatedly found sufficient impairment to allow
2 intervention as of right for environmental groups in suits such as
3 this. In <u>Idaho Farm Bureau</u>, itself, the Ninth Circuit held that
4 a disposition of the action in favor of plaintiffs resulting in the
5 delisting of the species at issue, "would impair [intervenor's]
6 ability to protect their interest in the Springs Snail and its
7 habitat." 58 F.3d at 1398. Likewise, in <u>Coalition of Arizona/New
8 Mexico Counties for Stable Economic Growth</u>, the Tenth Circuit held
9 that intervenor's interest in the protection of the Mexican
10 spotted-owl would, "as a practical matter," be impaired by a ruling
11 in favor of the plaintiffs to delist the owl "by the stare decisis
12 effect of the district court's decision, not to mention the direct
13 effect of a possible permanent injunction." 100 F.3d 837, 844
14 (10th Cir. 1996).
15     In this case, as in those noted above, the delisting of the
16 County CTS as an endangered DPS will have the practical effect of
17 impairing the proposed intervenors' ability to protect them.
18 Accordingly, the Center and EDC satisfy the third requirement of
19 intervention as of right.
20 **D. ADEQUACY OF REPRESENTATION BY THE FWS**
21     The Center and the EDC have also sufficiently demonstrated a
22 possibility of inadequate representation of their interests by
23 defendants. Although, under Rule 24(a), the applicant bears the
24 burden of showing that the existing parties inadequately represent
25 its interests, the Supreme Court has explained that this burden is
26 "minimal." <u>Trbovich v. United Mine Workers</u>, 404 U.S. 528, 538 n.10

(1972). "[T]he Rule is satisfied if the applicant shows that the representation of his interest 'may be' inadequate."

As discussed, the Center and EDC sued the FWS multiple times before the listings challenged here were established. That suffices. See, e.g., Idaho Farm Bureau Federation, at 1398 ("FWS was unlikely to argue on behalf of [applicants], the very organizations that compelled FWS to make a final decision by filing a lawsuit. FWS would not have adequately represented [applicant]'s interests."); County of Fresno v. Andrus, 622 F.2d 436, 439 (9th Cir. 1980) ("[T]here is further reason to doubt that the Department [of the Interior] will fully protect [the applicant's] interest . . . in light of the fact that the Department began its rulemaking only reluctantly after [the applicant] brought a law suit against it.").

Given the FWS's history of inaction and delay in listing the County CTS, it may well be that the FWS will not make all of the arguments that would be made by the Center and EDC. See Forest Conservation Council v. United States Forest Service, 66 F.3d at 1498-99 (Defendant U.S. Forest Service could not be expected to make all the arguments of proposed intervenors). There are also substantive legal ESA issues upon which the Center and the Service have disagreed in litigation in the past, and which could arise in this litigation. Ptrs' Br. in Supp. of Mot. at 10. Overall, the test of whether the Service may not represent the Center and EDC's interest is met in this instance, where it can be said that the
////

FWS's representation "may be" inadequate.[10]

## IV.
## CONCLUSION

Petitioners' motion to intervene pursuant to Fed. R. Civ. P. 24(a) is GRANTED.

IT IS SO ORDERED.

DATED: April 8, 2004.

*/s/ Lawrence K. Karlton*
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[10] The plaintiffs suggest that movants' interests can be preserved by granting them amicus status. Because I have determined that they are entitled to intervention as a matter of right, extended discussion is not necessary. I note, however, that if evidence needs to be taken, such status would not permit the intervenors to introduce evidence, or cross-examine witnesses. Moreover, even if the matter is resolved on the administrative record, such status would not preserve their right to appeal.

16

mm1

United States District Court
for the
Eastern District of California
April 9, 2004

\* \* CERTIFICATE OF SERVICE \* \*

2:04-cv-00345

Home Builders Assoc

  v.

Williams

---

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on April 9, 2004, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office, or, pursuant to prior authorization by counsel, via facsimile.

    Steven P. Rice                              AR/LKK
    Crowell and Moring
    3 Park Plaza, 20th Floor
    Irvine, CA  92614-8505

    Steven P Quarles
    PRO HAC VICE
    Crowell and Moring
    1001 Pennsylvania Avenue NW
    Washington, DC  20004-2595

    J Michael Klise
    PRO HAC VICE
    Crowell and Moring LLP
    1001 Pennsylvania Avenue North West
    Washington, DC  20004

    Bridget Kennedy McNeil
    Department of Justice
    Wildlife and Marine Resources Section
    PO Box 7369
    Washington, DC  20044-7369

    Kassia Rhoades Siegel
    Center for Biological Diversity
    54870 Pine Crest Avenue

Idyllwild, CA  92549

Karen Marie Kraus
Environmental Defense Center
906 Garden Street
Santa Barbara, CA  93101

Jack L. Wagner, Clerk

BY: _____
Deputy Clerk