Justin Augustine (CA Bar No. 235561)
Center for Biological Diversity
1095 Market St., Suite 511
San Francisco, CA 94103
Tel: (415) 436-9682 x302
Fax: (415) 436-9683
jaugustine@biologicaldiversity.org

John Buse (CA Bar No. 163156)
Center for Biological Diversity
5656 S. Dorchester Ave. No. 3
Chicago, IL  60637
Tel: (323) 533-4416
Fax:  (610) 885-2187
jbuse@biologicaldiversity.org

Michael Graf (CA Bar No. 136172)
Law Offices of Michael W. Graf
227 Behrens Street
El Cerrito, California  94530
Tel:  (510) 525-7222
Fax: (510) 525-1208
mwgraf@aol.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **Center for Biological Diversity,** a non-profit organization, | Case No.:  C-07-2794-JCS |
| Plaintiff, | **PLAINITFF'S COMBINED OPPOSITION TO MOTIONS TO INTERVENE** |
| v. | **Hearing Date: Friday, Nov. 2, 2007** |
| **Environmental Protection Agency**, and **Stephen Johnson,** Administrator, U.S. EPA | **Time: 9:30 a.m.**<br>**Courtroom A, 15th Floor** |
| Defendants. | **Magistrate Judge Joseph C. Spero** |

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................ 1

LEGAL BACKGROUND .............................................................................................................. 1

STANDARD OF REVIEW ............................................................................................................ 4

ARGUMENT .................................................................................................................................. 5

    A.    Proposed Intervenors Do Not Meet the Requirements for Intervention as of Right ...................... 5

        1.    Proposed Intervenors Lack a Significant Protectable Interest in the Liability Phase of this Case ................................................................................................................................... 5

        2.    Proposed Intervenors are Adequately Represented by Existing Parties in the Liability Phase of this Case ............................................................................................................... 9

    B.    The Court Should Not Grant Permissive Intervention in the Liability Phase of this Case ........... 11

CONCLUSION ............................................................................................................................. 13

TABLE OF AUTHORITIES

**Cases**

*Arakaki v. Cayetano*,
  324 F.3d 1078 (9th Cir. 2003) ................................................................................ 10, 11

*Churchill County v. Babbitt*,
  150 F.3d 1072 (9th Cir. 1998) ................................................................................ 5, 6, 7, 9

*CBD v. Whitman*,
  C 02-1580 (N.D. Cal 2002) ................................................................................ 7

*Donnelly v. Glickman*,
  159 F.3d 405 (9th Cir. 1998) ................................................................................ 5, 12

*Forest Conservation Council v. U.S. Forest Service*,
  66 F.3d 1489 (9th Cir. 1995) ................................................................................ 6

*Forest Guardians v. Johanns*,
  450 F.3d 455 (9th Cir. 2006) ................................................................................ 2

*Forest Guardians v. U.S. Forest Service*,
  CV 00-612 TUC RCC (GEE) (D. Az. June 6, 2001) ............................................. 6, 7, 9, 12

*Hells Canyon Preservation Council v. U.S. Forest Service*,
  CV 00-755-HU (D. Or. Dec. 18, 2000) ................................................................. 7, 9, 11

*High Sierra Hikers Assn. v. Powell*,
  C-00-1239-EDL, slip order (N.D. Cal. July 24, 2000) ........................................... 7

*Kootenai Tribe of Idaho v. Veneman*,
  313 F.3d 1094 (9th Cir. 2002) ................................................................................ 9, 12

*Northwest Forest Resource Council v. Glickman*,
  82 F.3d 825 (9th Cir. 1996) ................................................................................ 5

*Orange v. Air Cal.*,
  799 F.2d 535 (9th Cir. 1986) ................................................................................ 12

*Oregon Natural Res. Council v. Allen*,
  476 F.3d 1031 (9th Cir. 2007) ................................................................................ 2

*Oregon Environmental Council v. Oregon Department of Environmental Quality*,
   775 F. Supp. 353 (D. Or. 1991) .................................................................................. 11

*Oregon Natural Desert Assoc. v. Shuford*,
   2006 U.S. Dist. LEXIS 64452 (D. Or. 2006) .............................................................. 9, 12

*Pacific Rivers Council v. Thomas*,
   30 F.3d 1050 (9th Cir. 1994) ...................................................................................... 3, 4

*Petrol Stops Northwest v. Continental Oil Co.*,
   647 F.2d 1005 (9th Cir. 1981) ........................................................................................ 5

*Sagebrush Rebellion, Inc. v. Watt*,
   713 F.2d 525 (9th Cir. 1983) ....................................................................................... 10

*Sierra Club v. EPA*,
   995 F.2d 1478 (9th Cir. 1993) ..................................................................................... 6, 8

*Sierra Club v. Marsh*,
   816 F.2d 1376 (9th Cir. 1987) ........................................................................................ 4

*Southwest Center for Biological Diversity v. Berg*,
   268 F.3d 810 (9th Cir. 2001) .......................................................................................... 8

*Southwest Center for Biological Diversity v. U.S. Forest Service*,
   82 F.Supp. 2d 1070 (D. Ariz. 2000) ..................................................................... 7, 8, 9, 11

*Tennessee Valley Authority v. Hill*,
   437 U.S. 153 (1978) ........................................................................................................ 1

*Thomas v. Peterson*,
   753 F.2d 754 (9th Cir. 1985) .......................................................................................... 3

*Turtle Island Restoration Network v. Nat'l Marine Fisheries Serv.*,
   340 F.3d 969 (9th Cir. 2003) .......................................................................................... 3

*Western Watersheds Project v. U.S. Forest Service*,
   2005 U.S. Dist. LEXIS 34486 (D. Idaho 2005) .............................................................. 9

*Wetlands Action Network v. U.S. Army Corps of Engineers*,
   222 F.3d 1105 (9th Cir. 2000) ................................................................................. 1, 6, 7

1 **Statutes**

2 16 U.S.C. § 1536(a)(2) ................................................................................................................ passim

3 16 U.S.C. § 1536(b) .............................................................................................................................. 4

4 16 U.S.C. § 1536(c)(1) .......................................................................................................................... 2

5 **Regulations**

6 50 C.F.R. § 402.01(b) ........................................................................................................................... 2

7 50 C.F.R. § 402.02 ........................................................................................................................... 3, 4

8 50 C.F.R. § 402.12 ................................................................................................................................ 3

9 50 C.F.R. § 402.12(a) ........................................................................................................................... 3

10 50 C.F.R. § 402.12(d)(2) ...................................................................................................................... 2

11 50 C.F.R. § 402.13 ............................................................................................................................... 3

12 50 C.F.R. § 402.13(a) ........................................................................................................................... 3

13 50 C.F.R. § 402.14 ............................................................................................................................... 3

14 50 C.F.R. § 402.14(a) ........................................................................................................................... 2

15 50 C.F.R. § 402.14(b) ........................................................................................................................... 3

16 50 C.F.R. § 402.16 ............................................................................................................................... 4

17 50 C.F.R. Part 402 ................................................................................................................................ 1

18

19

20

21

22

23

24

25

26

27

28

# INTRODUCTION

Plaintiff Center for Biological Diversity submits this combined opposition brief to the two motions to intervene filed by CropLife America and RISE ("CropLife"), and by Reckitt Benckiser ("Benckiser") (collectively, "Proposed Intervenors") in the liability phase of this case. Plaintiff does not oppose their intervention in the remedial phase.

The Defendant in this case is a federal agency: the United States Environmental Protection Agency ("EPA"). Plaintiff alleges that the EPA is violating the Endangered Species Act ("ESA"), Section 7(a)(2), and its implementing regulations, by (a) failing to initiate and reinitiate consultation with the U.S. Fish and Wildlife Service ("FWS") and (b) failing to insure through consultation that the registration of certain pesticides is not likely to jeopardize the continued existence of eleven endangered and threatened species or destroy or adversely modify designated critical habitat. *See* 16 U.S.C. §§ 1536(a)(2); 50 C.F.R. Part 402.

The section of the ESA at issue in this case, section 7(a)(2), regulates the actions of the federal government, and *only* the federal government can be held liable under Section 7(a)(2). As a result, the federal government is the only proper defendant in the liability phase of this case, and the Proposed Intervenors should not be allowed to intervene and present argument as to whether or not the EPA has complied with its mandatory duties and obligations under Section 7(a)(2). *See, e.g., Wetlands Action Network v. U.S. Army Corps of Engineers*, 222 F.3d 1105, 1114 (9th Cir. 2000).

Moreover, any interests that Proposed Intervenors may have in this action at the liability phase are adequately represented by the Federal Defendant. Therefore, Proposed Intervenors do not meet all of the requirements for intervention as of right in the liability phase.

Further, because the participation of Proposed Intervenors would be redundant and would not serve judicial economy, the Court should deny permissive intervention in the liability phase of this case.

# LEGAL BACKGROUND

The Endangered Species Act "is the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tennessee Valley Authority ("TVA") v. Hill*, 437 U.S. 153, 180 (1978). The Supreme Court's review of the Act's "language, history, and structure" convinced the Court "beyond a doubt" that "Congress intended endangered species to be afforded the


highest of priorities." *Id*. at 174. As the Court found, "Congress has spoken in the plainest of words, making it abundantly clear that the balance has been struck in favor of affording endangered species the highest of priorities, thereby adopting a policy which [Congress] described as 'institutionalized caution.'" *Id*. at 194 (quoting H.R. Rep. No. 93-412, at 4-5 (1973)). "[T]he plain intent of Congress in enacting this statute was to halt and reverse the trend toward species extinction, whatever the cost," *id*. at 184, and this precautionary approach to preserving species "is reflected not only in the stated policies of the Act, but in literally every section of the statute." *Id*. at 194.

The ESA vests primary responsibility for administering and enforcing the statute with the Secretaries of Commerce and Interior, who have delegated responsibility to the National Marine Fisheries Service ("NMFS") and FWS, respectively. 50 C.F.R. § 402.01(b). NMFS has primary responsibility for administering the ESA with regards to most marine species, as well as anadromous fish such as salmon, while FWS has responsibility for terrestrial species.

In order to fulfill the substantive purposes of the ESA, Federal agencies are required to engage in consultation with NMFS or FWS to "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the adverse modification of habitat of such species . . . determined . . . to be critical . . . ." 16 U.S.C. § 1536(a)(2) (Section 7 consultation). Section 7 consultation must be initiated for "any action [that] *may affect* listed species or critical habitat." 50 C.F.R. § 402.14(a) (emphasis added). Moreover, the ESA states that when the FWS advises the action agency that an endangered species "may be present" in the action area, the action exceeds the "may affect" threshold and "such agency shall conduct a biological assessment" to determine whether any species is "likely to be affected by such action." 16 U.S.C. § 1536(c)(1); *accord* 50 C.F.R. § 402.12(d)(2); *see also Oregon Natural Res. Council v. Allen*, 476 F.3d 1031 (9th Cir. 2007) ("Under § 7, if any listed (or proposed listed) species may be present in the area of the proposed action, the federal agency (the 'action agency') must conduct a biological assessment in order to determine the likely effect of its proposed action on the species."); *Forest Guardians v. Johanns*, 450 F.3d 455, 457 (9th Cir. 2006) ("First, the agency contemplating the action must request information from the appropriate federal wildlife service regarding 'whether any species which is listed or proposed to be listed may be present in the area of such proposed action.'"

(citing 16 U.S.C. § 1536(c)(1))); *Pacific Rivers Council v. Thomas*, 30 F.3d 1050, 1054 (9th Cir. 1994) (Forest Service Land Resource Management Plans "'may affect' protected salmon because the plans set forth criteria for harvesting resources within the salmon's habitat").

Agency "action" is defined broadly in the ESA's implementing regulations so that Section 7's "insure" mandate is satisfied:

> <u>all</u> activities or programs of <u>any kind</u> authorized, funded, or carried out, in whole or in part, by Federal agencies in the United States or upon the high seas. Examples include, but are not limited to: (a) actions intended to conserve listed species or their habitat; (b) the promulgation of regulations; (c) the granting of licenses, contracts, leases, easements, rights-of-way, permits, or grants-in-aid; or (d) actions <u>directly or indirectly</u> causing modifications to the land, water, or air.

50 C.F.R. § 402.02. (emphasis added); s*ee also Turtle Island Restoration Network v. Nat'l Marine Fisheries Serv.*, 340 F.3d 969, 974 (9th Cir. 2003) (recognizing that Congress intended "agency action" to be interpreted broadly). Similarly, "action area" is defined as "*all* areas to be affected directly or indirectly by the Federal action and not merely the immediate area involved in the action." 50 C.F.R. § 402.02 (emphasis added).

When a proposed action "may affect" a protected species, consultation must occur *and be completed* before the federal action may take place. *Pacific Rivers*, 30 F.3d at 1056; *Thomas v. Peterson*, 753 F.2d 754, 764-65 (9th Cir. 1985). Only if it can be determined that the proposed action will have no effect on a listed species can the consultation process be avoided. *Pacific Rivers*, 30 F.3d at 1054 n. 8.

A "may affect" determination triggers the action agency's duty to prepare a biological assessment, which determines whether the activity is "likely to adversely affect" the listed species. *See* 50 C.F.R. § 402.14; 50 C.F.R. § 402.12; s*ee also Turtle Island Restoration Network v. Nat'l Marine Fisheries Serv.*, 340 F.3d at 974. If so, formal consultation must be initiated. 50 C.F.R. § 402.12(a). If the biological assessment concludes that the activity "is not likely to adversely affect" the listed species, the consultation process is over if the FWS or NMFS concurs in the assessment. 50 C.F.R. § 402.13(a). However, if the FWS or NMFS disagrees with the "not likely to adversely affect" determination, formal consultation will be required. 50 C.F.R. § 402.13(a); 50 C.F.R. § 402.14(b).

During the course of consultation, FWS may "suggest modifications" to the action to "avoid the likelihood of adverse effects" to the listed species. 50 C.F.R. § 402.13. At the completion of consultation FWS issues a Biological Opinion ("BO") that determines if the agency action is likely to jeopardize the species or adversely modify its critical habitat. *See* 50 C.F.R. § 402.02. If so, the agency may not proceed with any program, permit, or decision that would jeopardize a species' survival unless the BO specifies reasonable and prudent alternatives that will avoid jeopardy and allow the agency to proceed with the action. 16 U.S.C. § 1536(b); s*ee also Sierra Club v. Marsh*, 816 F.2d 1376, 1384-86 (9th Cir. 1987) (enjoining highway construction because agency could not meet burden of absolute assurance that mitigation required to avoid jeopardy was possible).

An agency's duty to "insure" that its actions are not likely to jeopardize listed species is continuing, and "where discretionary Federal involvement or control over the action has been retained or is authorized by law," the agency must in certain circumstances undergo consultation even after the action has been initiated. 50 C.F.R. § 402.16. One such circumstance is when "a new species is listed . . . that may be affected by the identified action." *Id.*; *see also Pacific Rivers*, 30 F.3d at 1056 (upholding lower court finding that an ongoing agency action that was initiated before a species listing and therefore did not undergo initial consultation was nonetheless subject to reinitiation of consultation once the species was listed.) Although procedural, consultation is the backbone of the ESA. As the Ninth Circuit recognized, "[o]nly by requiring substantial compliance with the act's procedures can we effectuate" congressional intent to protect species. *Sierra Club*, 816 F.2d at 1384.

## STANDARD OF REVIEW

The Ninth Circuit has adopted a four-part test to determine whether to grant intervention as of right pursuant to Fed. R. Civ. P. 24(a). Intervention may be granted only if: (1) the application is timely; (2) the applicants have a significant protectable interest; (3) the applicants are so situated that disposition of the action may, as a practical matter, impair or impede their ability to protect that interest; and (4) the applicants' interests are inadequately represented by the existing parties. *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996). "The burden is on [the applicants] to demonstrate that the conditions for intervention . . . [are] satisfied." *Petrol Stops Northwest v. Continental Oil Co.*, 647 F.2d 1005, 1010, n.5 (9th Cir. 1981).

A court may allow permissive intervention under Fed. R. Civ. P. 24(b) if the applicant demonstrates that: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims. *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). Even if those requirements are satisfied, a court still may deny a motion for permissive intervention where "the intervention will unduly delay the main action or will unfairly prejudice the existing parties." *Id*.

Plaintiff's complaint seeks declaratory and injunctive relief. Declaratory relief and any determination as to an appropriate remedy are two distinct elements of this litigation, and must be considered separately when evaluating Proposed Intervenors' motions. *See Donnelly v. Glickman*, 159 F.3d at 410 ("Although the proposed intervenors lack an interest in the liability phase of plaintiffs' action, in theory they still could intervene in the remedial phase of the action."); *Churchill County v. Babbitt*, 150 F.3d 1072, 1083, *as amended by* 158 F.3d 491 (9th Cir. 1998) ("[T]he district court did not err by limiting its intervention only to the remedial phase" where the applicant had no interest in the liability phase of the action.); *Forest Conservation Council v. U.S. Forest Service*, 66 F.3d 1489, 1499 (9th Cir. 1995) (The applicants "are entitled to intervene as of right under Fed. R. Civ. P. 24(a)(2) in the portion of the proceedings addressing the injunctive relief sought by plaintiffs.").[1]

## ARGUMENT

Proposed Intervenors fail to meet their burden to establish the second, third, and fourth parts of the test for intervention as of right in the liability phase of this case.

**A. Proposed Intervenors Do Not Meet the Requirements for Intervention as of Right**

    **1. Proposed Intervenors Lack a Significant Protectable Interest in the Liability Phase of this Case**

To gain intervention in this proceeding, Proposed Intervenors must demonstrate that they have a "significantly protectable" interest relating to the subject of this lawsuit. *Sierra Club v. EPA*, 995 F.2d

---

[1] *See also* Declaration of Michael Graf ("Graf Decl."), Ex. A (*Forest Guardians v. U.S. Forest Service*, CV 00-612 TUC RCC (GEE) (D. Az. June 6, 2001)), p. 6 ("The instant case consists of two phases. First, the court must decide the issue of liability. If the court finds for the plaintiffs, the question of injunctive relief will then be addressed. These two aspects of the case affect different interests and must be considered separately.")

1478, 1481 (9th Cir. 1993). Proposed Intervenors allege that they have "significantly protectable" interests in this action because they have registered pesticides that could be affected by this litigation. However, that fact does not mean that Proposed Intervenors have a significant protectable interest *in the liability phase* of this action—only at the remedy stage are the Proposed Intervenors' interests even potentially implicated. Therefore, their motions to intervene as of right in the liability phase of this case must be denied.

The Ninth Circuit has held that a private entity cannot intervene in the merits of an environmental lawsuit where the claims are against a federal agency and *only* the federal agency can comply with the law. *See, e.g., Wetlands Action Network v. U.S. Army Corps of Engineers*, *supra,* 222 F.3d at 1114 (upholding district court's denial of intervention to the recipient of a permit in a NEPA action); *Churchill County v. Babbitt*, 150 F.3d at 1082-1083 (same). As the Ninth Circuit has explained:

> As a general rule, "the federal government is the only proper defendant in an action to compel compliance with NEPA." *Churchill County v. Babbitt*, 150 F.3d 1072, 1082, *as amended by* 158 F.3d 491 (9th Cir. 1998); *see also Forest Conservation Council*, 66 F.3d at 1499; *Sierra Club*, 995 F.2d at 1485; *Portland Audubon Society v. Hodel*, 866 F.2d 302, 309 (9th Cir. 1989). "The rationale for our rule is that, because NEPA requires action only by the government, only the government can be liable under NEPA." *Churchill County*, 150 F.3d at 1082. Because a private party can not violate NEPA, it can not be a defendant in a NEPA compliance action. *Id*.

*Wetlands Action Network*, 222 F.3d at 1114.

While this precedent has largely been established in cases brought pursuant to NEPA, courts have extended the reasoning to other environmental statutes, including the ESA, where the sole issue at bar is government compliance with the law. *See, e.g., Southwest Center for Biological Diversity v. U.S. Forest Service* ("*Southwest Center v. USFS*"), 82 F. Supp. 2d 1070, 1074 (D. Ariz. 2000); Graf Decl., Ex. A (*Forest Guardians v. U.S. Forest Service*, CV 00-612 TUC RCC (GEE) (D. Az. June 6, 2001)), p. 6 (holding that proposed intervenor could not intervene as of right in liability phase because it has "*no protectable interest in whether or not the [agency] is complying with its duties pursuant to the ESA*") (emphasis added); Graf Decl. Ex. B (*Hells Canyon Preservation Council v. U.S. Forest Service*, CV 00-755-HU (D. Or. Dec. 18, 2000)), p. 14 (recognizing that "claims for violation of Section 7 of the ESA involve only compliance by the agency at issue"); Graf Decl. Ex. C (*High Sierra Hikers Assn. v. Powell*, C-00-1239-EDL, slip order (N.D. Cal. July 24, 2000), pg. 5 ("The same rationale limiting intervention to

the relief stage that applies to NEPA and [National Forest Management Act] actions applies to [the United States Forest Service's] alleged failure to comply with the Wilderness Act and the APA.").

In *Southwest Center v. USFS*, the court rejected similar arguments to those made by Proposed Intervenors in this case that they should be allowed to participate in the liability phase of an ESA Section 7(a)(2) case:

> In addition to following clear Ninth Circuit precedent, Magistrate Judge Carruth's structuring limited intervention makes great practical sense. The heart of this legal battle is whether the Forest Service has performed its duty to consult [under section 7(a)(2) of the ESA] in connection with the issuance of certain grazing permits. Because only the Forest Service can "comply" with this duty, only the Forest Service can and should be a defendant for the liability phase of the litigation. *See Churchill County*, 150 F.3d at 1082.
>
> No entity other than the Forest Service has a stronger incentive or greater informational ability to challenge this claim. *See Forest Guardians*, 188 F.R.D. at 395 (noting that Bureau of Land Management "is in the best position to present a compliance argument").

82 F. Supp. 2d at 1074.

Finally, in a very similar action involving Plaintiff's challenge to EPA's failure to consult on the impacts of pesticides on the red-legged frog, *CBD v. Whitman,* C 02-1580 (N.D. CA, Aug. 6 2002), this court ruled that Crop Life and other pesticide manufacturers did *not* have a right to intervene on the *merits phase* of Plaintiff's Section 7(a)(2) claims based on the analogy between NEPA and the consultation requirements of the ESA:

> CBD's argument that the Ninth Circuit's NEPA rule should be applied to actions brought under § 7 of the ESA is supported by some of the language of § 7. 16 U.S.C., § 1536.....Section 7(a)(2) ...requires federal agencies to ensure that their actions do not "jeopardize the continued existence of" endangered or threatened species or their critical habitats.....A private party could not be sued under either of these provisions, because a private party could not violate either provision.....If CBD's complaint included only claims arising under subsection 7(a) of the ESA, the reasoning underlying the Ninth Circuit's NEPA rule would appear to apply to the present action and bar Applicants' intervention in its merits phase.

*See* Graf Decl., Ex. D, p. 21:9-26.

This action presents the same issues. Because only the EPA can comply with ESA section 7(a)(2) duties, only the EPA can and should be a defendant in the liability phase of this litigation. While the ESA does contain provisions that govern the activities of other government

agencies and private parties when their actions may impact listed species or designated critical habitat, those provisions of the ESA are not at issue in this action whatsoever.

Proposed Intervenors rely on *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001) but in that case the issue of whether a private party can intervene in the liability phase of an environmental case in which only a federal agency can be liable was not before the court. Instead, *Berg* involved a direct challenge to the Fish and Wildlife Service's approval of a habitat conservation plan and incidental take permit under *Section 9* of the ESA. Section 9, however, applies to private parties, not just the federal government. *Id.* at 816-817. Here, Plaintiff's ESA challenge is not based on Section 9, but on Federal Defendants' failure to comply with ESA Section 7(a)(2). Moreover, unlike the situation in *Berg,* the requirement that EPA comply with Section 7(a)(2) does not invalidate any beneficial right, such as the authority to "take" listed species, conferred on Proposed Intervenors.

Similarly, in *Sierra Club v. EPA*, on which Proposed Intervenors also rely, the court granted intervention to the City of Phoenix in a Clean Water Act case where the plaintiffs sought changes to two Clean Water Act permits issued to the City of Phoenix for its wastewater treatment plants. *Id.* at 1480-81,1485. The *Sierra Club* court explicitly noted that "the Clean Water Act does not principally regulate the EPA. It regulates private parties and state and local governments, such as the City of Phoenix." Here, on the other hand, section 7(a)(2) *only* regulates federal agencies, not private parties, and therefore it makes sense to bifurcate the liability and remedial phases as many other courts have done, and only allow the Proposed Intervenors to be part of the remedial phase.

In discussing their "interests" in this case, Proposed Intervenors refer to the Center's request for injunctive relief. *See e.g.,* Croplife Memo at 10:11-13 ( "[T]he injunction sought by Plaintiff essentially would revoke or void Intervenor's registrations and prohibit use of their pesticides in the San Francisco Bay watershed . . . ."); *Id.* at 12:12-13 "EPA does not have the same economic stake in opposing an injunction against pesticide registrations.;" *Id.* at 12:25-27 ("Should settlement negotiations commence, the federal agency Defendants and the private sector stakeholders could well have different perspectives on items to be included in any settlement.") Reckitt Memo at 3:1-3 ("An order directing EPA to suspend or prohibit distribution would have the effect of prohibiting Reckitt from selling its product."); *Id.* at

13:26-28 ("The injunctive relief that Plaintiff seeks, if successful, would have a direct, immediate, and harmful effect upon Reckitt's business, including on Reckitt's ability to market and sell it products.") Plaintiff's complaint requests the Court to grant appropriate injunctive relief, pending EPA's compliance with the law, in order to prevent undue harm to the environment and Plaintiff's interests. At this time it is unknown whether or which injunctive relief might be appropriate, or whether such relief may "impair or impede" the interests of Proposed Intervenors. As stated above, Plaintiffs do not oppose the limited intervention of Proposed Intervenors at the remedial stage of this case because that is when the Proposed Intervenors interests may actually be affected.

In sum, because Proposed Intervenors do not have a protectable interest regarding EPA's compliance with Section 7 of the ESA, their participation regarding Plaintiff's ESA claim should be limited to only the remedial phase of the case. *See Churchill County v. Babbitt,* 150 F.3d at 1082 (upholding district court's denial of intervention in merits phase of a NEPA case); *Oregon Natural Desert Assoc. v. Shuford*, 2006 U.S. Dist. LEXIS 64452, *20-21 (D. Or. 2006) (recognizing that in cases where plaintiffs allege "that the federal government has failed to comply with non-discretionary duties under federal statues like NEPA and FLMPA, the Ninth Circuit has established a rule limiting intervention of right to 'none but a federal defendant.'"), *quoting Kootenai Tribe of Idaho v. Veneman,* 313 F.3d 1094, 1108 (9th Cir. 2002); *Southwest Center v. USFS*, 82 F. Supp. 2d at 1074 (holding that the intervenors' participation in the litigation "is limited to the remedial phase, should that phase ultimately be reached."); Graf Decl. Ex. A (*Forest Guardians*), p. 8 (concluding that the proposed intervenor "may not intervene in the liability phase of the action," but "[w]hen, and if, the court considers granting injunctive relief, the [intervenor] will be allowed to intervene at that stage."); *Id.* Ex. B (*Hells Canyon Preservation Council*), p. 14-15 (allowing the county to intervene only "in the remedial portion of these proceedings.").

Proposed Intervenors also assert that they should be allowed in the liability phase of this case in order to "promote the interests of fairness and a more informed decision by the Court." Croplife Memo at 13. However, Proposed Intervenors fail to acknowledge that their presence in the liability phase of this case makes no sense in light of the fact that only the EPA can be held liable under section 7(a)(2) of the ESA. Therefore, not only would their presence be redundant, it would impede efficient resolution of

this case which would be unfair to Plaintiff. Indeed, allowing Proposed Intervenors into the case at the liability phase raises the possibility they may choose to block potential settlement options on liability, thereby leading to prolonged litigation and delaying resolution of the remedial issues in which Proposed Intervenors claim an actual and legally cognizable interest.

EPA is in the best position to defend its ESA section 7 duties. Proposed Intervenors' interests lie in the remedial phase of this suit, at which point all agree it is appropriate for them to have party status to protect those interests.

### 2. Proposed Intervenors are Adequately Represented by the EPA in the Liability Phase of this Case

Proposed Intervenors also fail to show that representation of their interests at the liability phase is not already adequately represented by EPA, the federal defendant with statutory authority over pesticide registrations.

The Ninth Circuit looks at three factors to determine whether an applicant's interests will be adequately represented by existing parties: (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). Where Proposed Intervenors and Federal Defendants both seek the same result, the Court should presume that Proposed Intervenors' interests are being adequately represented:

> The most important factor in determining the adequacy of representation is how the interest compares with the interests of existing parties. [] When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises. If the applicant's interest is identical to that of one of the present parties, a compelling showing should be required to demonstrate inadequate representation. []
>
> There is also an assumption of adequacy when the government and the applicant are on the same side. [] In the absence of a "very compelling showing to the contrary," it will be presumed that a state adequately represents its citizens when the applicant shares the same interest.

*Arakaki*, 324 F.3d at 1086 (internal citations omitted).

Proposed Intervenors' assertions, *see, e.g.,* Croplife Memo at 12-13, are insufficient to overcome the presumption that the government's representation will be adequate. Simply having a different perspective from the Federal Defendants is not enough to show that prospective intervenors are inadequately represented. *See Oregon Environmental Council v. Oregon Department of Environmental Quality*, 775 F. Supp. 353, 359 (D. Or. 1991) ("The interest of a putative intervenor is not inadequately represented by a party to a lawsuit simply because the party to the lawsuit has a motive to litigate that is different from the motive to litigate of the intervenor."); *Arakaki*, 324 F.3d at 1086 ("Where parties share the same ultimate objective, differences in litigation strategy do not normally justify intervention."). Here, Federal Defendants and Proposed Intervenors have the same objective in the liability phase of this case: to defend against Plaintiff's legal challenge that Federal Defendants' lack of Section 7(a)(2) consultation for ongoing pesticide impacts on certain listed species is contrary to the ESA. Because Proposed Intervenors and Federal Defendants have the same objective regarding liability, "a presumption of adequacy of representation arises." *Southwest Center for Biological Diversity*, 268 F.3d at 823. In short, as in *Hells Canyon Preservation Council* and *Southwest Center for Biological Diversity v. USFS*, "no entity other than Federal Defendants have a stronger incentive or greater informational ability to challenge Plaintiffs' legal claims." Graf Decl. Ex. B, p. 13, *quoting Southwest Center*, 82 F.Supp. 2d at 1074.

Moreover, in arguing that their interests will not be adequately represented, Proposed Intervenors necessarily focus on the remedy, not the liability, phase of the litigation. *See, e.g. ,*Croplife Memo at 12:12-13 ("EPA does not have the same economic stake in opposing an injunction against pesticide registrations"); *id*. p. 12:25-27 ("Should settlement negotiations commence, the federal agency Defendants and the private sector stakeholders could well have different perspectives on items to be included in any settlement."). Proposed Intervenors' interests in this case lie not in the requirements of the ESA and its regulations with which the EPA must comply, but in the question as to what activities could be enjoined *pending* the EPA's compliance. To the extent that Federal Defendants and Intervenors have different perspectives on the type of remedial "items to be included in a settlement," they certainly share the same perspective – and same interest – in defending the EPA from liability on Plaintiff's claims.

PLAINTIFF'S OPPOSITION TO MOTIONS TO INTERVENE                                    11
C-07-2794-JCS

1    In sum, while Proposed Intervenors have raised issues "which affect it in the remedial phase of the
2    litigation, [they have] not demonstrated that with respect to the liability portion of the proceedings, the
3    [Federal Defendants] will not adequately represent [its] interests." Graf Decl., Ex. A (*Hells Canyon*
4    *Preservation Council*), p. 13. Accordingly, the Court should find that Federal Defendants will
5    adequately represent Proposed Intervenors' interests in the liability portion of this case, and that
6    Proposed Intervenors should only be allowed to intervene in the remedial phase. *Id*.

**B. The Court Should Not Grant Permissive Intervention in the Liability Phase of this Case**

In the alternative, Proposed Intervenors argue for permissive intervention. *See* Croplife Memo. at 16-17; Beckitt Memo at 14-15. Because Proposed Intervenors have failed to demonstrate that permissive intervention is warranted, their motions should be denied. An applicant seeking permissive intervention must prove that it shares a common question of law or fact with the main action, that its motion is timely, and that the court has an independent basis for jurisdiction over their claims. *Donnelly v. Glickman*, 159 F.3d at 412. "Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." *Id.; citing Orange v. Air Cal.*, 799 F.2d 535, 539 (9th Cir. 1986) ("Permissive intervention is committed to the broad discretion of the district court.").

As set forth above, Proposed Intervenors' interests are in the remedial phase of this case, and their intervention should be limited to that phase. This case is not similar to *Kootenai Tribe of Idaho*, where the court granted permissive intervention to intervenors in the liability phase of the case because the government had largely failed to defend its own challenged rule. *See Kootenai Tribe*, 313 F.3d at 1111 ("In fact, the government declined to defend fully from the outset"), *id.* at 1104 ("the federal defendants did not appeal the invalidation of the Roadless Rule"). Here, there is no indication that Federal Defendants will not fully and aggressively defend themselves. It is therefore not clear, as it was in *Kootenai Tribe*, that "the presence of intervenors would assist the court in its orderly procedures leading to the resolution of this case." *Id.* at 1111.[2]

---

[2] Instead, as mentioned above, the opposite result is more likely in that Proposed Intervenors may determine that their best strategy is to prolong the liability determination for as long as possible in order to delay EPA's eventual compliance with Section 7(a)(2).

Plaintiffs and Federal Defendants can adequately and fully present argument concerning whether the Federal Defendants have violated Section 7 of the ESA, and the regulations at issue in this case. Proposed Intervenors' involvement should therefore be limited to only the appropriate injunctive relief. *See* Graf Decl., Ex. A (*Forest Guardians*), p. 7 (applicants granted permissive intervention "only in the remedial portion of the action when, and if, that phase is reached."); *Oregon Natural Desert Assoc. v. Shuford*, 2006 U.S. Dist. LEXIS 64452, *23 (denying permissive intervention in liability phase of litigation where only the defendant federal agency could be held liable and ordered to comply with the statutory provisions that were at issue in the case). In short, because the situation in *Kootenai Tribe* is not present here, Defendants should not be permitted to do through permissive intervention what they can not do through intervention as of right.

## CONCLUSION

For the above stated reasons, the Court should deny Proposed Intervenors' motions to intervene in the liability phase of this case. Plaintiffs, however, do not object to their involvement in the remedial phase of the litigation.

Respectfully submitted this 11th day of October, 2007,

/s/ Michael Graf
Michael Graf (CA Bar No. 136172)
Law Offices of Michael W. Graf
227 Behrens Street
El Cerrito, California 94530
Tel: (510) 525-7222
Fax: (510) 525-1208
mwgraf@aol.com

Justin Augustine (CA Bar No. 235561)
Center for Biological Diversity
1095 Market St., Suite 511
San Francisco, CA 94103
Tel: (415) 436-9682 x302
Fax: (415) 436-9683
jaugustine@biologicaldiversity.org

John Buse (CA Bar No. 163156)
Center for Biological Diversity
5656 S. Dorchester Ave. No. 3
Chicago, IL 60637
Tel: (323) 533-4416
Fax: (610) 885-2187
jbuse@biologicaldiversity.org

Attorneys for Plaintiffs