```
___ FILED    ___ LODGED
___ RECEIVED ___ COPY

    JUN - 6 2001

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY
```

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Forest Guardians; et al., | No. CIV 00-612 TUC RCC (GEE) |
| Plaintiffs, | |
| vs. | **ORDER** |
| U. S. Forest Service; et al., | |
| Defendants. | |
| and | |
| Arizona Cattle Growers' Association, | |
| Applicant-in-Intervention. | |

    Pending before the court is a motion to intervene filed by the Arizona Cattle Growers' Association (ACGA) on April 10, 2001. [#28][1] The plaintiffs filed a response on May 14, 2001, and the ACGA filed a reply on May 21, 2001.

    The plaintiffs in this action filed suit against the United States Forest Service and the Secretary of Agriculture alleging they violated the Endangered Species Act, 16 U.S.C. § 1536(a)(2), when they failed to implement certain grazing standards and failed to reinitiate consultation with the United States Fish and Wildlife Service to insure their forest management activities would not adversely affect the Mexican spotted owl. The ACGA

---

[1] Clerk's record number.

1  moves that this court allow it to intervene. [#28] It seeks intervention of right and, in the
2  alternative, permissive intervention. *Id.*
3　　　The case has been referred to Magistrate Judge Edmonds for all pretrial proceedings
4  pursuant to 28 U.S.C. § 636(b)(1)(A). A motion to intervene is nondispositive and may be
5  ruled upon directly by the Magistrate Judge. *Yorkshire v. IRS*, 26 F.3d 942 (9th Cir.), *cert.*
6  *denied*, 513 U.S. 989 (1994); *United States v. Certain Real Property & Premises*, 751
7  F.Supp. 1060 (E.D.N.Y.1989). The motion shall be granted in part.
8
9　　　Factual and Procedural Background
10　　　The Mexican spotted owl (*Strix occidentialis lucida*) was listed as a threatened species
11  pursuant to the Endangered Species Act (ESA), 16 U.S.C. § 1531, et seq., in 1993.
12  (Complaint, p. 9.) In December of 1995, the United States Fish and Wildlife Service (FWS)
13  published a Recovery Plan for the owl. *Id.* According to the plan, grazing threatens the
14  owl's survival because it reduces the amount of available prey, alters natural fire patterns,
15  degrades riparian areas, and impairs plant growth. *Id.*
16　　　In 1996, in response to the Recovery Plan, the U. S. Forest Service adopted
17  amendments to their Forest Plans for all eleven national forests in the southwest region. *Id.*,
18  p. 10. These amendments require the Forest Service to monitor forage use by livestock in
19  "key forage monitoring areas" and ensure that livestock do not exceed "forage utilization
20  standards" during the growing season. *Id.* In late 1996, the Forest Service consulted with
21  the FWS to ensure their forest management practices would not adversely affect the owl. *Id.*,
22  p. 11. The FWS issued two biological opinions which concluded that the Forest Service
23  would be in compliance with the ESA provided they followed the grazing standards outlined
24  in the 1996 Forest Plan amendments. *Id.*, p. 12.
25　　　On October 30, 2000, the plaintiffs filed the instant action for declaratory and
26  injunctive relief alleging the Forest Service violated the ESA by failing to implement the
27  grazing standards in the 1996 Forest Plan amendments as anticipated in the biological
28

- 2 -

1  opinions issued by the FWS. *Id.*, pp. 15-16. The plaintiffs further allege the Forest Service's
2  failure to act in conformance with the biological opinions requires it to reinitiate consultation
3  with the FWS, and the Forest Service's failure to reinitiate this consultation violates the ESA.
4  *Id.*

5      The plaintiffs seek a declaratory judgment that the Forest Service is in violation of the
6  ESA. *Id.*, p. 16. They further seek an injunction ordering the defendants to reinitiate
7  consultation with the FWS regarding the affect of grazing on the Mexican spotted owl and
8  "[t]o the extent that the Forest Service allows continued grazing on any allotments in the
9  southwest region, award injunctive relief requiring the Forest Service to follow the
10 management measures required and assumed in the Biological Opinions throughout the
11 southwest region, including the terms of the 1996 Forest Plan grazing amendments." *Id.*

12     The defendants filed their answer on January 2, 2001. [#7] On April 2, 2001, the
13 plaintiffs filed their motion for summary judgment. The defendants are scheduled to file
14 their response to the motion by July 1, 2001 and their own dispositive motions by August 1,
15 2001. [#30]

16     On April 10, 2001, the Arizona Cattle Growers' Association (ACGA) filed the instant
17 motion to intervene. [#28] It seeks intervention of right and, in the alternative, permissive
18 intervention. *Id.* The plaintiffs filed a response on May 14, 2001, and the ACGA filed a
19 reply on May 21, 2001.

20

21     The Instant Motion
22     The ACGA is a non-profit corporation formed to represent the interests of Arizona
23 ranchers. (Petitioner's motion, p. 2.) It presently has 850 members, many of whom hold
24 permits and leases to graze livestock on National Forest Land in Arizona. *Id.* The ACGA
25 argues it is entitled to intervene as a matter of right pursuant to Rule 24(a)(2). *Id.*, p. 8.
26     The ACGA argues first that its motion is timely because no discovery has occurred
27 and the matter "is in its infancy." *Id.*, p. 9. It further maintains it has a significantly
28

-3-

1  protectable interest in the subject matter of the action. *Id.*, pp. 9-10. If the court finds

2  allotments have been overgrazed or overstocked, members of the ACGA might be adversely

3  affected by the court's injunctive relief. *Id.* Moreover, the ACGA argues it has a protectable

4  interest in the management and administration of grazing on National Forest Lands. *Id.*

5  According to the ACGA, disposition of the action will impair its ability to protect its

6  members' grazing interests. *Id.*, pp. 10-12. Finally, it asserts the present defendants may not

7  adequately represent the interests of the ACGA and its members. *Id.*, pp. 12-15.

8  In the alternative, the ACGA argues the court should allow it permissive intervention.

9  *Id.*, pp. 15-16. It maintains it will address questions of law or fact in common with the main

10  action. *Id.* Intervention in the instant action, it argues, will not unduly delay or prejudice the

11  adjudication of the rights of the original parties. *Id.*

12

13  The Response

14  The plaintiffs argue the ACGA should not be permitted to intervene. (Plaintiffs'

15  response.) According to the plaintiffs, the motion is not timely because intervention would

16  delay the resolution of their motion for summary judgment. *Id.*, pp. 2-3.

17  Moreover, the plaintiffs argue ACGA has not demonstrated a protectable interest in

18  the subject of the action because they have not identified which members hold grazing

19  permits which might be affected by the litigation. *Id.*, pp. 4-5. Assuming this showing can

20  be made, the ACGA still has no protectable interest in the subject of the action because the

21  instant action involves the duty of the Forest Service to comply with the ESA. *Id.*, pp 5-7.

22  The ACGA has no interest in the ultimate issue of liability in this case. *Id.* At most, the

23  plaintiffs concede the ACGA might have an interest in the remedial portion of the case. *Id.*,

24  pp. 7-9.

25  The plaintiffs assert the action does not impair the interests of the ACGA's members.

26  *Id.*, pp. 9-10. Moreover, the current defendants will adequately represent the interest of

27  ACGA. *Id.*, pp. 10-12.

28

- 4 -

Finally, the plaintiffs argue ACGA should not be allowed to intervene permissively. *Id.*, pp. 13-14. The economic interests of its members do not bear upon the issue of whether or not the Forest Service is in compliance with the ESA. *Id.* The defendants will adequately represent the members' interests, and intervention may prolong or unduly delay the litigation. *Id.*

### The Reply

The ACGA disputes the plaintiff's assertion that the motion is not timely. (Reply, pp. 1-5.) They explain they are unable to identify which members have a personal stake in the litigation because the plaintiffs have not specifically identified which allotments are out of compliance. *Id.*, pp. 5-6. They reassert an interest in the subject matter of the suit. *Id.*, pp. 7-11.

### Discussion

"To intervene as of right under FED.R.CIV.P. 24(a) the applicant must claim an interest the protection of which may, as a practical matter, be impaired or impeded if the lawsuit proceeds without him." *Forest Conservation Council v. United States Forest Service*, 66 F.3d 1489, 1493 (9th Cir.1995). The Ninth Circuit applies a four-part test:

> (1) the motion must be timely; (2) the applicant must claim a 'significantly protectable' interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action."

*Id.* The rule is interpreted broadly in favor of intervention. *Id.*

Permissive intervention is authorized by Rule 24(b) which reads in pertinent part as follows:

> Upon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall

-5-

consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

FED.R.CIV.P. "An applicant who seeks permissive intervention must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Donnelly v. Glickman*, 159 F.3d 405, 411 (9th Cir.1998). "In determining whether a motion for intervention is timely, a court must consider three factors: (1) the state of the proceeding at which an applicant seeks to intervene; (2) the prejudice to the other parties; and (3) the reason for and length of the delay." *San Jose Mercury News, Inc. v. U.S. District Court-Northen District (San Jose)*, 187 F.3d 1096, 1100-01 (9th Cir.1999).

The instant case consists of two phases. First, the court must decide the issue of liability. If the court finds for the plaintiffs, the question of injunctive relief will then be addressed. These two aspects of the case affect different interests and must be considered separately.

The ACGA may not intervene as of right in the liability phase of the action. It has no protectable interest in the whether or not the Forest Service is complying with its duties pursuant to the ESA. *Forest Conservation Council*, 66 F.3d at 1494, 1499 (State and county had no protectable interest in whether Forest Service violated the National Environmental Policy Act or the National Forest Management Act.); *Southwest Center for Biological Diversity v. United States Forest Service*, 82 F.Supp.2d 1070, 1072-74 (D.Ariz.2000) (Cattle Growers had no protectable interest in whether the Forest Service violated the ESA.). The plaintiffs claim the Forest Service failed to implement the grazing standards anticipated in the biological opinions issued by the FWS and thereafter failed to reinitiate consultation, all in violation of its duties under the ESA. "Because only the Forest Service can 'comply' with th[ese] dut[ies], only the Forest Service can and should be a defendant for the liability phase of the litigation." *Southwest Center for Biological Diversity*, 82 F.Supp.2d at 1074 (Arizona

- 6 -

Cattle Growers' Association could not intervene in liability portion of suit alleging the Forest Service violated the ESA when it failed to consult with the FWS prior to issuance of certain livestock grazing permits.) "No entity other than the Forest Service has a stronger incentive or greater informational ability to challenge this claim." *Id.* The ACGA's interest in the instant case, if it exists at all, is limited to the remedial portion of the case. The court must consider whether it should be permitted to intervene at that stage.

The ACGA's argument for intervention as of right at the remedial state is undercut by the organization's inability to specifically determine whether or not its members are using any of the grazing allotments which are alleged to be out of compliance. This inability adversely affects its burden to prove it has a "significantly protectable" interest relating to the subject of the action. Moreover, even if the ACGA could identify which member's allotments were allegedly out of compliance, there is no guarantee that the court would find these particular allotments to be out of compliance at the liability stage. The question of whether the ACGA has a significantly protectable interest is problematic. The court, however, need not reach this question. The ACGA shall be granted permissive intervention.

The ACGA meets all threshold requirements for permissive intervention. *See Donnelly v. Glickman*, 159 F.3d 405, 411 (9th Cir.1998). It intends to address questions of law or fact relevant to the remedial phase of litigation. It represents the interests of cattle growers in so far as their freedom to graze may be affected by any injunctive relief that this court may grant. Moreover, the court's subject matter jurisdiction pursuant to 28 U.S.C. § 1331 is not affected by the addition of the ACGA.

Finally, the motion is timely. *See San Jose Mercury News, Inc. v. U.S. District Court-Northen District (San Jose)*, 187 F.3d 1096, 1100-01 (9th Cir.1999). The ACGA will be permitted to intervene only in the remedial portion of the action when, and if, that phase is reached. The current parties therefore will not be delayed in the resolution of their substantive motions. The ACGA will be permitted to intervene pursuant to Rule 24(b) in

-7-

light of its expertise and interest in this action and in accordance with the Ninth Circuit's broad interpretation of the rule in favor of intervention. Accordingly,

IT IS ORDERED that the motion to intervene filed by the Arizona Cattle Growers' Association (ACGA) on April 10, 2001, is GRANTED IN PART. [#28] The ACGA may not intervene in the liability phase of the action. It may submit an amicus memorandum if it so desires. When, and if, the court considers granting injunctive relief, the ACGA will be allowed to intervene at that stage.

DATED this 6th day of June, 2001.

GLENDA E. EDMONDS
UNITED STATES MAGISTRATE JUDGE

- 8 -