FILED
JUL 24 2000
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HIGH SIERRA HIKERS ASSN. et al.,

    Plaintiffs,

v.

BRADLEY POWELL, et al.,

    Defendants.

No. C-00-01239-EDL

<u>ORDER GRANTING IN PART AND DENYING IN PART APPLICANTS' MOTION TO INTERVENE AS OF RIGHT</u>

I.   Introduction

On April 1, 2000, Plaintiffs, comprised of nonprofit wilderness advocacy groups, initiated this suit seeking declaratory and injunctive relief.[1] Plaintiffs allege that the United States Forest Service ("USFS") violated the National Environmental Policy Act ("NEPA"), the National Forest Management Act ("NFMA"), and the Wilderness Act. See Complaint at p. 16. Plaintiffs also brought a separate claim under the Administrative Procedures Act ("APA") alleging that the USFS's violations of the NEPA, NFMA, and the Wilderness Act constitute agency action that is arbitrary and capricious. Id.

On May 12, 2000, eleven entities and two trade associations (collectively referred to as "Applicants"), filed an application to intervene as of right in this action under Federal Rule of Civil Procedure ("FRCP") 24(a)(2) ("Motion").[2] On June 1, 2000, Plaintiffs filed an opposition to

---

[1] On April 1, 2000, Plaintiffs filed a Notice of Related Case that this action is related to an action that had been previously decided in this judicial district. See Docket No. 3. On May 12, 2000, Judge Claudia Wilken, the judge assigned to the earlier filed case, determined that this case was not related to High Sierra Hikers Association v. Kennedy, Case No. 94-3570 CW. See Docket No. 7.

[2] The following is a list of the Applicants (beginning with the two trade associations): (1) National Forest Recreation Association, (2) High Sierra Packers Association, (3) Yosemite Trails Pack Station, (4) Minarets Pack Station, (5) D&F Pack Station, (6) High Sierra Pack Station, (7) Mammoth Lakes Pack Outfit, (8) McGee Creek Pack Station, (9) Frontier Pack Trains; Reds/Agnew Meadows Pack

Exhibit ___C___
Page _____

Applicants' Motion ("Opposition"). On June 15, 2000, Applicants filed a reply ("Reply"). Defendants neither oppose or support the Motion. The parties and Applicants consented to the jurisdiction of a magistrate judge for all proceedings in this case. See Docket Nos. 9, 13, 20.

On June 22, 2000, prior to a hearing in this matter, the Court issued an order regarding Churchill County v. Babbitt, 150 F.3d 1072 (9th Cir. 1998), amended by 158 F.3d 491 (9th Cir. 1998), which the parties had not cited. See Docket No. 22. Counsel were cautioned to be prepared to address its significance at the hearing. Id.

The matter was heard on June 27, 2000.[3] Having considered all of the written submissions and oral argument, and for the reasons that follow, the Court GRANTS the Applicants' Motion to Intervene in part.

## II. Background

Plaintiffs allege that the USFS has failed to perform nondiscretionary tasks, implement required management standards, limit or regulate commercial uses of the Ansel Adams and John Muir Wilderness Areas in the Inyo and Sierra National Forests. See Complaint at ¶¶ 43-53. Plaintiffs also allege that USFS has "illegally issued special use permits and other instruments allowing commercial uses" without complying with the standards set forth in the NEPA, NFMA, the Wilderness Act and the APA. See Opposition at 2; see also Complaint at ¶¶ 43-53. Plaintiffs seek an injunction compelling USFS to limit uses that are inconsistent with those statutes. See Opposition at 2.

Eleven Applicants who operate commercial pack stations in the Ansel Adams and John Muir Wilderness Areas in the Inyo and Sierra National Forests seek to intervene as of right in this action.[4] Applicants operate their packer facilities by virtue of special use permits ("SUPs") issued by the

---

Train, (10) Rock Creek Pack Station, Berners' Pack Outfits, (11) Bishop Pack Outfitters; (12) Cottonwood Pack Station, (13) Glacier Pack Train.

[3] The Court deemed the matter submitted at the conclusion of the hearing. Applicants later filed an application for leave to file a post-hearing brief. On July 6, 2000, the Court denied Applicants request. See Docket No. 28 (July 6, 2000 Order).

[4] The other two Applicants who seek to intervene are trade associations that have members that operate commercial pack stations.

USFS, many of which are for long terms, as much as twenty years. Id. As holders of these SUPs, the Applicants allege that they are governed by USFS's management plans "which control the daily operation of their businesses," including the number of livestock, services and days of operations that they can provide. Id. In addition, USFS has authorized Applicants, in accordance with their SUPs, to issue "wilderness permits" to the general public, a prerequisite to the public's entry into a wilderness area. Id. The permits issued by Applicants are part of the total quota of permits that the USFS may issue. Id. Applicants contend that Plaintiffs seek to limit or even eliminate the activities of the Applicants, reducing the wilderness permits that USFS can provide to packers. Id. Applicants claim that the relief sought by Plaintiffs would impair their property, contract, and economic interests, perhaps even completely shutting down their commercial pack operations. See Id. at 2:1-2.[5] They therefore move to intervene.

## II.     Legal Analysis

### A.     Standing

At the hearing, for the first time, Plaintiffs challenged the representational standing of two Applicants on the basis that they are not commercial packers, but trade associations (i.e., the National Forest Recreation Association ("NFRA") and the High Sierra Packers Association ("HSPA")). The Court addresses this belated challenge only because it is jurisdictional.

The test for representational standing of an organization was enunciated in Hunt v. Washington Apple Advertising Comm'n, 432 U.S. 333, 343 (1976). Hunt requires that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) either the claim asserted or the relief requested requires the participation of individual members in the lawsuit." Members of the NFRA and HSPA include eight of the Applicants herein, each of whom have standing to sue.[6] Second, both NFRA

---

[5] Applicants contend that their pack stations represent substantial capital investment and annual maintenance expense. Id. at 3. For example, pack stations may have storage buildings, bunkhouses, personnel facilities, sheds, vehicles, stock truck and trailers, gear, livestock, and infrastructure for heat, electricity and water. Id.

[6] The NFRA's members include at least four Applicants: Frontier Pack Train, High Sierra Pack Station, Red Meadow Pack Station, and Yosemite Trails Pack Station, Inc. See www.nfra.org. Similarly, the HSPA's members include at least four Applicants: Yosemite Trails Pack Station; Minarets Pack Station, D&F Pack Station; High Sierra Pack Station. See www.highsierrapackers.org.

3

and HSPA seek to prevent Plaintiffs' interference with the services that its members provide to those packers in the Inyo and Sierra National Forests. See Lake Mohave Boat Owners Association v. National Park Service, 78 F.3d 1360, 1366 (9th Cir. 1995). Third, even if the members did not seek to intervene individually, individualized proof from the members is not needed where, as here, declaratory and injunctive relief is sought rather than monetary damages. See Associated General Contractors of America v. Metropolitan Water District, 159 F.3d 1178, 1181 (9th Cir. 1998). The Court is satisfied that both trade associations meet the jurisdictional test for representational standing.

### B. Standard of Review

The district court's ruling on a motion of intervention as of right is reviewed *de novo*, except for the question of timeliness which is reviewed for an abuse of discretion. Id.; see also Idaho Farm Bureau Fed'n v. Babbitt, 58 F.3d 1392, 1397 (9th Cir. 1995). Although a district court's *denial* of a motion for intervention as of right is an appealable final decision, if intervention as of right is granted but is *limited* to participation in the remedial phase of the action, the order cannot be appealed prior to a final judgment on the merits. Churchill County v. Babbitt, 150 F.3d 1072, 1082 (9th Cir. 1998) (citing United States v. City of Oakland, 958 F.2d 300, 302 (9th Cir. 1992) and Stringfellow v. Concerned Neighbors in Action, 480 U.S. 370 (1987)).

### C. Elements For Intervention as of Right

To intervene as of right under Federal Rule of Procedure 24(a)(2), an applicant must claim an interest, the protection of which may, as a practical matter, be impaired or impeded if the lawsuit proceeds without it. Forest Conservation Council v. United States Forest Serv., 66 F.3d 1489, 1493 (9th Cir. 1995).[7] The Ninth Circuit applies a four-part test under this rule. An applicant must show that: (1) the motion is timely; (2) that it has a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) its interest

---

[7] Federal. Rule of Procedure 24(a) states: "Upon timely application anyone shall be permitted to intervene in an action . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

4

may not be adequately represented by the parties to the action. Id. The Ninth Circuit is guided "primarily by practical and equitable considerations" and generally interprets the rule broadly in favor of intervention. Donnelly v. Glickman, 159 F.3d 405, 408 (9th Cir. 1998).

### 1. Timeliness

Applicants moved to intervene before Defendants filed an answer and before any motions were filed in the action. The timeliness of Applicants' motion is not contested. See Plaintiffs' Opposition at 3:13 (timeliness is "not at issue"); see also Applicants' Motion at 6. The timeliness requirement has been satisfied. See United States v. Covington Technologies Co., 967 F. 2d 1391, 1394 (9th Cir. 1992).

### 2. Significant Legally Protectable Interest Relating to the Subject of the Action

The essence of this action is whether the USFS has complied with the NEPA, NFMA, and the Wilderness Act. Stated differently, the subject of this action is governmental compliance.

The Ninth Circuit's "rule that the federal government is the only proper defendant in an action to compel compliance" under NEPA and NFMA controls here. Churchill County v. Babbitt, 150 F.3d 1072 (9th Cir. 1998) (citing Forest Conservation Council, 66 F.3d at 1499 n.11) ("[a]ppellants cannot claim any interest that relates to the issue of the Forest Service's liability under NEPA and NFMA."). The Ninth Circuit bars intervention when "a lawsuit seeks compliance with a law for which only the federal government can be held responsible." Southwest Center for Biological Diversity v. United States Forest Service, 82 F. Supp. 2d 1070 (D. Az. 2000).

It follows that if no one but the federal government can be a defendant, then a party seeking to intervene in a NEPA and NFMA suit against the federal government cannot be heard to claim a "significantly protectable interest" that relates to whether the *government* complied with NEPA or NFMA. See Churchill County v. Babbitt, 150 F.3d at 1082; Forest Conservation Council, v. United States Forest Service, 66 F.3d at 1499 and n. 11. Accordingly, Applicants are not entitled to intervene as a matter of right in the phase of these proceedings addressing the government's compliance with the procedural requirements of the NEPA or NFMA.

The same rationale limiting intervention to the relief stage that applies to NEPA and NFMA actions applies to USFS's alleged failure to comply with the Wilderness Act and the APA. Churchill County v. Babbitt, 150 F.3d at 1082; Forest Conservation Council, 66 F.3d at 1499 and n. 11.

1  A private party cannot "comply" with the Wilderness Act or the APA; rather, both statutes regulate
2  agency action. Id. 66 F.3d at 1499 n.11. The Wilderness Act, 16 U.S.C. §1133(b), prescribes
3  restrictions on "each agency administering any area designated as a wilderness place," holding such
4  agencies "responsible for preserving the wilderness character of the area" in accordance with the
5  Act. The APA "prescribes the standards for reviewing agency action." Staacke v. United States
6  Secretary of Labor, 841 F.2d 278 (1988); see also 5 U.S.C. §702 et al. Therefore, Applicants also
7  lack significant protectable interests in whether the government complied with the Wilderness Act
8  and APA and may not intervene with respect to the merits of these claims. See Churchill County v.
9  Babbitt, 150 F.3d at 1082; Forest Conservation Council v. United States Forest Service, 66 F.3d at
10 1499 and n.11.

11      Applicants argue that their SUPs, like the water permits in the Sierra Club v. United States
12 EPA, 995 F.2d 1478 (9th Cir. 1993), are "significantly protectable interests that relate to the property
13 in this action." See Reply at 3:18-9. Sierra Club, however, was an action under the Clean Water
14 Act, a statute that the Ninth Circuit found directly regulates private parties, as well as state and local
15 governments; thus, the applicant (City of Phoenix) was directly regulated and had duties under the
16 statute at issue in the litigation. Id. Applicants' reliance on Sierra Club is misplaced. Sierra Club
17 reaffirms the rule that having an interest in the federal government's compliance is not a sufficient
18 "significant protectable interest;" rather, to intervene in all aspects of the case, an applicant-
19 intervenor must establish a legally cognizable interests of its *own* in the subject of the action. Sierra
20 Club, 995 F.2d at 1482.

21      At the hearing, for the first time, Applicants directed the Court's attention to the Ninth
22 Circuit's decision in Fund For Animals, Inc. v. Lujan, Jr., 962 F.2d 1391 (9th Cir. 1992).
23 Applicants argue that Lujan stands for the proposition that NEPA does not apply only to the federal
24 government and, therefore, Applicants may be proper parties.[8]

25      Lujan is inapplicable to the facts of this case. In dicta, the Lujan court debated whether an
26 injunction could lie against a "non-federal actor" -- a state defendant -- for a NEPA violation. The
27 Lujan court left open the possibility that a *state* defendant may be enjoined under NEPA if "federal
28

---

[8] The Court cautions the parties not to raise new arguments or cite new authority not previously contained in its briefs for the first time at oral argument.

6

and state projects are sufficiently interrelated to constitute a single 'federal action'." Id. at 1397. Here, the Applicants are not state defendants, nor have they made a showing that their activities are so "federalized" or constitute such a major "federal action" that their activities would require NEPA evaluation. Even assuming that they could make such a showing, Lujan ultimately held that a state defendant was not a proper party and to enjoin it under NEPA would be "inequitable." Id. at 1398. Lujan does not reach the issue of whether a state or a private defendant could intervene as a matter of right in the liability phase of a NEPA action, and its holding that the state was not a proper party under NEPA is entirely consistent with the Ninth Circuit's earlier decisions in Churchill County v. Babbitt and Forest Conservation Council.

Accordingly, the Court denies Applicants' motion to intervene as defendants in the liability phase of the action. Churchill County v. Babbitt, 150 F.3d at 1082.

### 3. Practical Impairment

Forest Conservation Council court held that even if an applicant is unable to show a protectable interest in whether the federal government complied with its procedural duties, the applicant may still be able to demonstrate an interest in defending against the issuance of a broad injunction. Forest Conservation Council, 66 F.3d at 1495. In other words, a non-party "may have a sufficient interest for some issues in a case but not others, and the court may limit intervention accordingly." Id. (citing United States v. South Florida Water Management Dist., 922 F.2d 704, 707, n. 4 (11th Cir. 1991)).

Here, Appellants have demonstrated that the injunction sought by plaintiffs poses a "tangible threat" to their contracts with USFS that would directly, immediately and harmfully affect their legally protected interest should a broad injunction issue. Forest Conservation Council, 66 F.3d at 1495. Disposition of the remedy portion of this action will, as a practical matter, impair or impede Applicants ability to protect their interests. Therefore, Applicants have a right to intervene only in the injunctive phase of the action only on the question of the scope of any injunction. Id.

### 4. Inadequate Representation

The applicant-intervenor's burden in showing inadequate representation is minimal: it is sufficient to show that representation *may* be inadequate. Id. at 1498 (citing Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972)) (emphasis added). In determining whether

1  Defendants will adequately represent Applicants, the question is whether Defendants are capable of
2  making *all* of Applicants' arguments or whether Defendants might neglect asserting some of
3  Applicants' interests, including those that are economic. Sagebrush Rebellion, Inc. v. Watt, 713
4  F.2d 525, 528 (9th Cir. 1983).

5  "Inadequate representation is most likely to be found when the applicant asserts a personal
6  interest that does not belong to the general public." Forest Conservation Council, 66 F.3d at 1499.
7  Here, the government will represent the broad public interest, while Applicants' concern extends to
8  their own financial well being. Appellants have satisfied the minimal showing required that
9  Defendants may not adequately represent their interests in defending against the issuance of a broad
10 injunction. Appellants should be allowed to present evidence to assist the court in fashioning the
11 appropriate scope if any injunctive relief is granted.

12 **III.  Conclusion**

13 Applicants' Motion to Intervene is GRANTED with respect to the portion of the proceedings
14 addressing the injunctive relief sought by Plaintiffs, but DENIED as to the merits phase of the
15 litigation under NEPA, NFMA, the Wilderness Act and APA. The Court also GRANTS Applicants
16 permission to file an amicus curiae brief with regard to the merits of Plaintiffs' NEPA, NFMA,
17 Wilderness Act, and APA claims.

19 IT IS SO ORDERED.

22 Dated: June 24, 2000

23 ELIZABETH D. LAPORTE
   United States Magistrate Judge

25 copies faxed to all parties of record and
   applicants

8