FILED

AUG - 6 2002

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

United States District Court
For the Northern District of California

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, | No. C 02-1580 CW |
| Plaintiff, | ORDER DENYING MOTION FOR LEAVE TO INTERVENE AS DEFENDANTS |
| v. | |
| CHRISTIE WHITMAN, Administrator, Environmental Protection Agency, et al., | |
| Defendants, | |
| and | |
| CALIFORNIA PLANT HEALTH ASSOCIATION, CROPLIFE AMERICA, AMERICAN FOREST & PAPER ASSOCIATION, and OREGONIANS FOR FOOD AND SHELTER, | |
| Proposed Intervenors. | |

Pursuant to Federal Rule of Civil Procedure 24, Applicants California Plant Health Association (CPHA), CropLife America (CLA), American Forest & Paper Association (AF&PA) and Oregonians for Food and Shelter (OFS) (collectively, Applicants) move to intervene as defendants in this action. The motion is opposed by Plaintiff Center for Biological Diversity (CBD). Defendant Christie Whitman, sued by CBD in her capacity as Administrator of the Environmental

United States District Court

For the Northern District of California

1  Protection Agency (EPA), has not taken a position in support of or

2  in opposition to the motion.  Having considered all of the papers

3  filed by the parties, the Court denies without prejudice

4  Applicants' motion for leave to intervene.

5                              BACKGROUND

6  I.    Underlying Action

7       The Federal Insecticide, Fungicide and Rodenticide Act (FIFRA)

8  authorizes the Administrator of the EPA to approve the registration

9  of pesticides.  7 U.S.C. § 136a(c)(5).  EPA approval of a pesticide

10  indicates the EPA's determination that the pesticide "will perform

11  its intended function without unreasonable adverse effects on the

12  environment."  7 U.S.C. § 136a(c)(5)(C).

13       CBD's claims in this action arise from the EPA's registration

14  of pesticides that allegedly jeopardize the continued existence of

15  the California red-legged frog, listed as a threatened species

16  under § 4 of the Endangered Species Act (ESA), 16 U.S.C. §1533.

17  61 Fed. Reg. 25,813 (May 23, 1996).  The Draft Recovery Plan that

18  led to the listing of the frog as a threatened species attributed

19  the species' decline in part to "contaminants," including

20  pesticides, used in agriculture.  See Pl.'s First Amended Complaint

21  (FAC) at 9, ¶¶ 33, 35.  Other studies also suggest a link between

22  the use of pesticides in agriculture and the decline of this

23  species.  See id. at 9-10, ¶¶ 35, 36.  In its original complaint,

24  filed April 2, 2002, CBD did not specify the pesticide

25  registrations that it opposes.  In its FAC, filed with the Court on

26  July 3, 2002, CBD names fifty pesticides and indicates that more

27  than 200 others have been registered by the EPA and used in areas

28                                  2

United States District Court

For the Northern District of California

1    that may affect the frog.    See id. at 10-19, ¶¶ 37-87.

2         In its original complaint, CBD alleged four violations of the

3    ESA arising from the EPA's registration of these pesticides under

4    FIFRA.    First, CBD alleged a violation of § 7(a)(2) of the ESA, 16

5    U.S.C. § 1536(a)(2), which requires federal agencies, "in

6    consultation with" the Secretary of the Interior or of Commerce,[1]

7    to "insure that any action authorized, funded or carried out by

8    such agency . . . is not likely to jeopardize the continued

9    existence of any endangered species or threatened species."

10   Second, CBD alleged a violation of § 7(a)(1) of the ESA, 16 U.S.C.

11   § 1536(a)(1), which requires federal agencies, again in

12   consultation with the appropriate Secretary, to "utilize their

13   authorities in furtherance of the purposes" of the ESA.    Third, CBD

14   alleged a violation of § 7(d) of the ESA, 16 U.S.C. § 1536(d),

15   which provides,

16           After initiation of consultation required under subsection
             (a)(2) of this section, the Federal agency and the permit or
17           license applicant shall not make any irreversible or
             irretrievable commitment of resources with respect to the
18           agency action which has the effect of foreclosing the
             formulation or implementation of any reasonable and prudent
19           alternative measures which would not violate subsection
             (a)(2) of this section [i.e., jeopardize the continued
20           existence of endangered or threatened species].

21   Fourth, CBD alleged a violation of § 9 of the ESA, 16 U.S.C.

22   § 1538, which makes it illegal for any person to "take" any

23   endangered species.    In its FAC, CBD omits the last of these

24   _____

25        [1]   The Secretary of the Interior is to be consulted regarding
     terrestrial ESA-listed species, including the California red-legged
26   frog.    The Secretary of the Interior's ESA consultation role has
     been delegated to the Fish and Wildlife Service.    50 C.F.R.
27   § 402.01(b).

28                                    3

1  claims, so that it currently brings three claims, all under § 7 of

2  the ESA.

3       CBD requests declaratory and injunctive relief, including

4  (1) a declaration that the EPA is violating the above-listed

5  provisions of the ESA, see Pl.'s FAC at 21, ¶ 1-3; (2) an order to

6  the EPA to begin formal consultation, pursuant to 16 U.S.C. § 1536

7  and 50 C.F.R. § 402.01 et seq., with the Fish and Wildlife Service

8  (FWS) on the effects of pesticide registration on the frogs and

9  their habitats, see Pl.'s FAC at 21, ¶ 4; (3) an order to the EPA

10 not to register or re-register any pesticide that may affect the

11 frogs until after such consultation has been completed, see id. at

12 21, ¶ 5; (4) an order to the EPA to suspend registration of new

13 pesticides that may affect the frogs until after such consultation

14 has been completed, see id. at 21, ¶ 6; and (5) an order to the EPA

15 to consult with the FWS to determine how best to utilize EPA

16 programs and authorities to promote the conservation of the frogs,

17 see id. at 22, ¶ 2.

18      On June 3, 2002, Whitman filed an answer.  CBD's FAC followed

19 on July 3, 2002.

20 II.  Applicants for Intervention

21      By motion filed with the Court on June 13, 2002, CPHA, CLA,

22 AF&PA and OFS seek to intervene as defendants in this action.

23 Applicants seek to intervene as of right, under Federal Rule of

24 Civil Procedure 24(a)(2), or, in the alternative, permissively,

25 under Federal Rule of Civil Procedure 24(b)(2).

26      CPHA is a trade association based in California.  Members of

27 CPHA make, distribute, sell and use agricultural products,

28                                  4

United States District Court
For the Northern District of California

1    including pesticides registered under FIFRA.

2        CLA is a trade association based in Washington, D.C.  CLA

3    represents manufacturers, formulators and distributors of crop

4    protection and pesticide products.  Some CLA member companies are

5    responsible for the registration of these products under FIFRA.

6        AF&PA, also based in Washington, D.C., is the national trade

7    association representing the forest, pulp, paperboard and wood

8    products industries.  AF&PA members grow, harvest and process wood

9    and wood fiber; manufacture pulp, paper and paperboard products

10    from virgin and recovered fiber; produce solid wood products; and

11    import and export unmanufactured wood products.  AF&PA's membership

12    also includes companies that conduct logging on private lands, as

13    well as companies that regularly bid on timber sales contracts with

14    agencies such as the United States Forest Service.

15        OFS, based in Salem, Oregon, is a not-for-profit organization

16    representing individuals, businesses, commodity groups and grower

17    organizations.  OFS was established to represent the needs of all

18    "pesticide user communities" in Oregon.  Witt Dec. ¶ 2.  OFS is

19    funded by its members, which include major pesticide registrants.

20                              LEGAL STANDARD

21        To intervene as a matter of right under Federal Rule of

22    Procedure 24(a)(2), an applicant must claim an interest the

23    protection of which may, as a practical matter, be impaired or

24    impeded if the lawsuit proceeds without the applicant.  Forest

25    Conservation Council v. United States Forest Serv., 66 F.3d 1489,

26    1493 (9th Cir. 1995).  The Ninth Circuit applies a four-part test

27    to motions under Rule 24(a):

28
                                    5

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

(1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately protected by the parties to the action.

Id. (quoting Sierra Club v. EPA, 995 F.2d 1478, 1481 (9th Cir. 1993) (citation omitted)).

The Ninth Circuit interprets Rule 24(a) broadly in favor of intervention. Id. In evaluating a motion to intervene under Rule 24(a), a district court is required "to take all well-pleaded, nonconclusory allegations in the motion . . . as true absent sham, frivolity or other objections." Southwest Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 820 (9th Cir. 2001).[2]

A court may also at its discretion permit intervention "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b)(2). In exercising its discretion, a court is to "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Id.

DISCUSSION

The Ninth Circuit has developed a special approach to intervention as of right in actions brought under the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 et seq.[3] CBD

---

[2] Plaintiff CBD was formerly known as the Southwest Center for Biological Diversity.

[3] NEPA requires federal agencies to produce environmental impact statements when proposing to engage in actions that will significantly affect the human environment. 42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1501.4.

6

United States District Court

For the Northern District of California

1    argues that this approach applies to the present action; Applicants

2    argue that it does not.  If CBD is correct, Applicants'

3    intervention in the suit must be limited, even if Applicants

4    otherwise satisfy the requirements of Federal Rule of Civil

5    Procedure 24.  The following discussion addresses this issue after

6    analyzing Applicants' motion under Rule 24.

7    I.    Intervention Under Rule 24

8          A.    Intervention as of Right Under Rule 24(a)(2)

9               1.    Timeliness

10         The most important consideration in evaluating the timeliness

11   of a motion to intervene is whether any delay in moving for

12   intervention may prejudice existing parties; as long as prejudice

13   is not likely to result from the timing of the motion, courts

14   interpret the timeliness requirement liberally.  See, e.g.,

15   Cummings v. United States, 704 F.2d 437, 439 (9th Cir. 1983)

16   (motion to intervene timely even though made after interrogatories

17   and two weeks before date set for close of discovery).

18         In the present case, no dispositive motions have yet been

19   filed.  Although Whitman has filed an answer to CBD's original

20   complaint, CBD filed its FAC on July 3, 2002, and Whitman has not

21   yet filed an answer to the FAC.  Moreover, CBD does not contest the

22   timeliness of Applicants' motion.  Under these circumstances, the

23   Court concludes that Applicants' motion to intervene satisfies the

24   timeliness requirement.

25               2.    Protectable Interests

26         As noted above, under Rule 24(a)(2), an applicant may

27   intervene as of right when the applicant "claims an interest

28                                    7

United States District Court

For the Northern District of California

1  relating to the property or transaction which is the subject of the

2  action."  The interest asserted need not be a "specific legal or

3  equitable interest," but it must be "significantly protectable."

4  Portland Audubon Soc'y v. Hodel, 866 F.2d 302, 309 (9th Cir. 1989),

5  cert. denied, 492 U.S. 911 (1989) (citations omitted).

6       Interests the Ninth Circuit has held sufficient to support

7  intervention as of right include a city's interest in preventing

8  modification of water permits held under the Clean Water Act,

9  Sierra Club, 995 F.2d at 1482; a State's interest in preventing

10 action on federal lands that could impair the State's legal duty to

11 manage its own adjacent lands, Forest Conservation Council, 66 F.3d

12 at 1497; a power company's interest in preventing federal action

13 that could hinder construction of a power plant and the company's

14 duty to ensure a water supply, Churchill County v. Babbitt, 150

15 F.3d 1072, 1084 (9th Cir. 1998), as amended by 158 F.3d 491 (9th

16 Cir. 1998); and a city's interests in taxing and regulating

17 contested land, Scotts Valley Band of Pomo Indians of Sugar Bowl

18 Rancheria v. United States, 921 F.2d 924, 927-28 (9th Cir. 1990).

19 In contrast, the Ninth Circuit held that timber companies' economic

20 interest in ensuring an ongoing supply of timber was not a

21 "protectable" interest sufficient for intervention as of right when

22 those companies did not assert existing contracts for the timber in

23 question.  Portland Audubon, 866 F.2d at 309; see also Sierra Club,

24 995 F.2d at 1482.

25      Applicants assert a number of interests relating to CBD's

26 claims and prayers for relief.  Applicants contend that they have

27 Fifth Amendment property rights in the registrations that some of

28                                  8

United States District Court

For the Northern District of California

1  their members currently "hold, or would in the normal course apply

2  for." Apps.' Motion to Intervene at 9, 10. Applicants also assert

3  a more general economic interest in preventing any change in the

4  EPA's pesticide registration process. Applicants note that were

5  CBD to be granted the relief it seeks, registration of pesticides

6  would become more difficult and costly, reducing the supply of

7  pesticides on the market and adversely affecting Applicants' long-

8  term economic interests. Id. at 9. Finally, in their motion,

9  Applicants assert an interest in avoiding the adverse precedent of

10  a judgment requiring the EPA to expand its pesticide registration

11  procedures. Id. at 10-11. CPHA, CLA and OFS assert this interest

12  with more particularity in their affidavits. See Beckley Dec. ¶ 7,

13  Nelson Dec. ¶ 6, Witt Dec. ¶ 7. AF&PA does not assert this

14  interest individually.

15       CBD maintains that Applicants' nonspecific assertions

16  regarding their members' property rights are conclusory and cannot

17  form the basis for intervention as of right under Rule 24(a)(2).

18  Pl.'s Opposition at 9. CBD is correct that conclusory allegations

19  are insufficient for intervention under Rule 24(a)(2). Berg, 268

20  F.3d at 820. CBD is also correct that Applicants "have not

21  indicated that any pesticide registration highlighted in the First

22  Amended Complaint is held by any of their component organizations

23  or members" and that the Ninth Circuit has held that generally

24  asserted expected harms are not sufficiently protectable to support

25  intervention as of right. Pl.'s Opposition at 9; see also, e.g.,

26  Sierra Club, 995 F.2d at 1482; Portland Audubon, 866 F.2d at 309.

27  However, Applicants could not have been expected to name in their

28                                              9

United States District Court
For the Northern District of California

1  motion pesticides CBD identified for the first time in its FAC,
2  which CBD filed after Applicants filed their motion to intervene.
3  On the other hand, in their reply to CBD's opposition, Applicants
4  did not make any more specific assertions regarding their property
5  interests in pesticides.  Instead, Applicants asserted that it is
6  self-evident that companies manufacturing and selling "virtually
7  all of the active compounds used in crop protection products" hold
8  such property interests.  Apps.' Reply at 7 (emphasis in original).
9  This assertion is no less general or conclusory than Applicants'
10 earlier assertion of their interests.  The Court concludes that
11 Applicants have not asserted protectable Fifth Amendment property
12 interests in pesticide registrations.

13      CBD cites Portland Audubon, 866 F.2d at 309, for the
14 proposition that purely economic interests, such as the long-term
15 interests Applicants assert in a streamlined process of pesticide
16 registration, are by definition not protectable.[4]  Pl.'s Opposition
17 at 9.  CBD mischaracterizes Portland Audubon.  In Portland Audubon,
18 the Ninth Circuit refused to permit timber companies to intervene
19 because those companies' interests in timber sales were purely
20 hypothetical, not simply because the interests were economic.  866
21 F.2d at 309; see also Berg, 268 F.3d at 819-23 (holding that
22 interests in specific development projects shown to be "in the

---

24      [4]  CBD also argues that Applicants' long-term interests in
25 preventing changes in the current process of pesticide registration
   cannot be substantially protectable because those interests depend
26 on the EPA's continued violation of the ESA.  This argument is
   unconvincing, because it assumes an answer to a question that has
27 yet to be adjudicated: whether the EPA's procedures for registering
   pesticides under FIFRA violate the ESA.

28                              10

United States District Court

For the Northern District of California

1 pipeline" for approval were protectable interests sufficient to
2 support intervention as of right); Forest Conservation Council, 66
3 F.3d at 1494 (citing cases in which economic interests were held to
4 be significantly protectable).  Portland Audubon nevertheless
5 applies to the present motion, because Applicants have asserted no
6 concrete, protectable economic interests in the current system of
7 pesticide registration.

8      Interests such as the property and economic interests
9 discussed above might be impaired either directly, through
10 disposition of the present action, or less directly, through the
11 generation of adverse precedent that could impede applicants'
12 ability to protect existing interests through legal action.  See
13 Sierra Club, 995 F.2d at 1486.  Therefore, the interest in avoiding
14 adverse precedent that CPHA, CLA and OFS assert is not, in fact, an
15 interest distinct from those discussed above.  Rather, this is an
16 interest in avoiding impairment of Applicants' ability to protect
17 their current interests.  Accordingly, Applicants' asserted
18 interest in avoiding adverse precedent is addressed below in
19 connection with impairment of their interests.

20      The presentation of protectable interests is a requirement for
21 intervention as of right in the Ninth Circuit.  See Forest
22 Conservation Council, 66 F.3d at 1493.  Because Applicants have not
23 yet asserted any protectable interests, they may not intervene as
24 of right, even if they satisfy the remaining two prongs of the
25 Ninth Circuit's test for intervention as of right.  See id.

26           3.   Impairment of Ability to Protect Interests
27      As noted above, Rule 24(a)(2) allows intervention as of right

28                                11

United States District Court

For the Northern District of California

1  when "disposition of the action may as a practical matter impair or

2  impede the applicant's ability to protect" its asserted interests.

3  See also Forest Conservation Council, 66 F.3d at 1493.

4      Applicants' ability to protect the economic and property

5  interests discussed above could be impaired by disposition of this

6  action.    FIFRA forbids the sale of unregistered pesticides.    7

7  U.S.C. § 136a(a).    If the Court were to enjoin the EPA to suspend

8  existing registrations and to cease issuing new registrations

9  during its consultation with the FWS, Applicants' members who sell

10 pesticides would have to suspend the sale of pesticides whose

11 registrations were affected.    This might impair those members'

12 ability to protect their property interests in the pesticides as

13 well as their economic interests under existing and pending

14 contracts.

15     The Ninth Circuit has held that stare decisis effects qualify

16 as impairment of interests for purposes of Rule 24(a) analysis.

17 Sierra Club, 995 F.2d at 1496; United States v. Oregon, 839 F.2d

18 635, 638 (9th Cir. 1988).    Applicants' ability to protect the

19 economic and property interests discussed above could be impaired

20 by judicial determination that EPA registration of pesticides

21 triggers a need for consultation under the ESA and/or that existing

22 registrations should be suspended pending such consultation.

23     CBD argues that because Applicants could always challenge the

24 outcome of the present action in a separate suit, Applicants'

25 interests could not be impaired by the disposition of this action.

26 It is true that, as CBD asserts, "[m]ere inconvenience caused by

27 . . . having to file a separate proceeding is not sufficient

28                                    12

impairment to justify intervention as of right." Pl.'s Opposition
at 10 (citing Blake v. Pallan, 554 F.2d 947, 954 (9th Cir. 1977)).
But this reasoning does not apply to the present case. Applicants
are asserting not that their ability to protect their interests
will be impaired by inconvenience but that their ability to protect
their interests will be impaired by adverse stare decisis effects.
This type of impairment of interests satisfies the requirements of
Rule 24(a)(2). See Sierra Club, 995 F.2d at 1496; United States v.
Oregon, 839 F.2d at 638-39.

4.   Adequacy of Representation

The party moving to intervene "bears the burden of
demonstrating that the existing parties may not adequately
represent its interest," but this burden is "'minimal,' and the
applicant need only show that representation of its interests by
existing parties 'may be' inadequate." Berg, 268 F.3d at 822-23
(citations omitted). Where the party seeking to intervene and an
existing party have the same "ultimate objective," a court is to
presume adequacy of representation. Id. at 824. However, this
presumption is rebuttable; in evaluating adequacy of
representation, a court is also to consider (1) whether an existing
party's interests in the action are such that the existing party
will "undoubtedly make all the intervenor's arguments"; (2) whether
the existing party "is capable and willing to make such arguments";
and (3) whether the intervenor "would offer any necessary elements
to the proceedings that other parties would neglect." Forest
Conservation Council, 66 F.3d at 1498-99.

Applicants argue that Whitman's interests do not coincide

United States District Court
For the Northern District of California

United States District Cour.
For the Northern District of California

1   exactly with their own and that their inclusion in the case will

2   "promote the interests of fairness and a more informed decision by

3   the Court."  Apps.' Motion at 13.  CBD argues that Whitman already

4   represents the interests of the public at large, including the

5   interests of Applicants.  Pl.'s Opposition at 12.

6       Applicants and Whitman do appear to share the same ultimate

7   objectives, namely, determination that EPA registration of

8   pesticides does not violate the ESA, that consultation is not

9   required and that pesticide registrations should not be suspended.

10  See Berg, 268 F.3d at 824.  However, Whitman may not share

11  Applicants' likely interests in protecting specific pesticide

12  registrations, existing contractual duties or existing economic

13  interests.   See Forest Conservation Council, 66 F.3d at 1499

14  (noting that the broad public interest does not always coincide

15  with particular parties' individual interests).  Because of this

16  potential disparity, it is not clear that Whitman "undoubtedly"

17  would make all of Applicants' arguments or be "willing" to make

18  those arguments.  Id. at 1498-99; see also Apps.' Motion at 12.

19      The Court concludes that Applicants have shown that Whitman

20  may not adequately represent their interests.  However, because

21  Applicants have not asserted specific protectable interests, they

22  have not satisfied the requirements of Rule 24(a)(2), and the Court

23  cannot grant Applicants intervention as of right.  If any

24  Applicants do have specific protectable interests, they may assert

25  them in support of a renewed motion to intervene, which the Court

26  will decide on the papers.

27

28

                                14

**United States District Court**
For the Northern District of California

1         B.   Permissive Intervention Under Rule 24(b)(2)

2         Under Federal Rule of Civil Procedure 24(b)(2), the Court may

3    permit intervention if the applicant presents a claim or defense

4    that has a question of law or fact in common with the main action.

5    However, satisfaction of this requirement "does not automatically

6    entitle an applicant to intervene." Venegas v. Skaggs, 867 F.2d

7    527, 530 (9th Cir. 1989).  A court must also "consider whether the

8    intervention will unduly delay or prejudice the adjudication of the

9    rights of the original parties." Fed. R. Civ. P. 24(b)(2).  In

10   addressing this question, a court may consider (1) whether undue

11   delay or prejudice to existing parties will result from the

12   intervention, (2) whether the applicants' interests are adequately

13   represented by existing parties and (3) the interests of judicial

14   economy.  Venegas, 867 F.2d at 530-31.

15        Applicants satisfy the threshold test for permissive

16   intervention under Rule 24(b)(2).  In their proposed answer,

17   Applicants present four affirmative defenses that are functionally

18   identical to the first, third, fourth and fifth affirmative

19   defenses advanced by Whitman in her answer. See Apps.' Proposed

20   Answer at 5; Def.'s Answer at 10.  Applicants therefore present

21   several defenses involving questions of law in common with

22   questions raised in the underlying action.

23        CBD argues, however, that Applicants' inclusion in the action

24   would prejudice existing parties and cause delay, because

25   Applicants "have indicated that they intend to inject numerous new

26   issues and claims into the case." Pl.'s Opposition at 14.

27   Applicants, in reply, observe that CBD is unable to identify any of

28                           15

United States District Court

For the Northern District of California

1  these new issues or claims and assert that CBD's argument is

2  "refute[d]" by language in Applicants' motion, in which Applicants

3  represent that as intervenors they would "respond to the issues of

4  law urged by CBD."  Apps.' Reply at 10.

5      As noted above, the Court concludes that Applicants' apparent

6  interests likely will not be represented fully by existing parties.

7  This suggests that, as CBD contends, Applicants will present to the

8  Court facts and legal arguments beyond those likely to be presented

9  by existing parties.  Even if Applicants present these facts and

10  arguments only in response to legal issues presented by CBD, their

11  presence in the action will cause delay.  CBD's inability to

12  specify the facts and issues Applicants might add to the action

13  does not indicate that Applicants will not cause delay or

14  prejudice; it simply indicates that CBD cannot yet determine what

15  Applicants plan to show or argue, partly because, as discussed

16  above, Applicants have identified the interests they seek to

17  protect only in general terms.

18      Given the necessarily time-sensitive nature of this

19  environmental action, the fact that delay would certainly result

20  from Applicants' intervention weighs against their participation in

21  this suit.  See ManaSota-88 v. Tidwell, 896 F.2d 1318, 1323 (11th

22  Cir. 1990) (holding that in time-sensitive environmental suits, the

23  delay that would be caused by the participation of intervenors

24  establishes prejudice sufficient to justify denial of permissive

25  intervention); see also Oregon Envtl. Council v. Oregon Dep't of

26  Envtl. Quality, 775 F. Supp. 353, 360 (D. Ariz. 1991) (citing

27  ManaSota-88 and denying permissive intervention).  For this reason,

28                          16

United States District Court

For the Northern District of California

1  the Court declines to permit Applicants' intervention.

2  II.   Ninth Circuit Law on Intervention in NEPA Actions

3       As noted above, the Ninth Circuit has developed a special
4  approach to intervention in actions brought under NEPA, 42 U.S.C.
5  § 4321 et seq.   Although the Court has concluded that Applicants
6  may not intervene either as of right or permissively at this time,
7  Applicants may be able to move for intervention successfully in the
8  future.   Should this occur, the Ninth Circuit's approach to
9  intervention in NEPA actions may become applicable to the present
10 action.   The following discussion analyzes this question.

11      The Ninth Circuit's approach involves dividing NEPA actions
12 into two phases: a merits phase, during which the court determines
13 whether the government was required to comply with NEPA and whether
14 it failed to do so; and a remedial phase, during which the court
15 determines the appropriate remedy for any violation.   See, e.g.,
16 Wetlands Action Network v. Babbitt, 222 F.3d 1105, 1113-14 (9th
17 Cir. 2000).   The Ninth Circuit has repeatedly held that, because
18 only the federal government can comply with NEPA, private parties
19 cannot intervene as defendants in the merits phase of this type of
20 action.   Id.; see also Churchill County, 150 F.3d at 1082; Forest
21 Conservation Council, 66 F.3d at 1499; Portland Audubon, 866 F.2d
22 at 309.   However, because private interests can be impaired by
23 injunctions ordering governmental compliance with NEPA, the Ninth
24 Circuit has held that private parties may intervene as of right in
25 the remedial phase of NEPA actions, provided the applicants
26 otherwise meet the requirements of Rule 24(a)(2).   See, e.g.,
27 Wetlands Action Network, 222 F.3d at 1114.

28                              17

United States District Court

For the Northern District of California

1    CBD argues that this approach applies to its claims under § 7

2    of the ESA, so that the Court must limit any intervention by

3    Applicants to the remedial phase of the current action.  Pl.'s

4    Opposition at 7.  CBD maintains that, like NEPA, § 7 of the ESA is

5    by its terms applicable only to governmental entities.  Id.

6        Applicants contend that CBD draws a false analogy between NEPA

7    and the ESA.  Applicants point out that portions of the ESA apply

8    to private parties as well as to the government; for instance,

9    § 7(d) of the ESA, 16 U.S.C. § 1536(d), prohibits the irreversible

10   commitment of resources by "permit or license applicant[s]" as well

11   as by federal agencies.  Apps.' Reply at 4.  Therefore, Applicants

12   argue, the rationale behind the Ninth Circuit's NEPA rule that only

13   the government can be the defendant in a NEPA action does not

14   justify extension of the rule to actions brought under the ESA.

15       A.   Application of Relevant Case Law

16       CBD notes that one district court in the Ninth Circuit, in

17   addressing a motion to intervene brought by a business association

18   in an ESA action, recently followed the Ninth Circuit's NEPA rule

19   and allowed intervention only in the remedial phase of the action.

20   See Southwest Ctr. for Biological Diversity v. United States Forest

21   Serv., 82 F. Supp. 2d 1070, 1074 (D. Ariz. 2000).  The applicant

22   for intervention in Southwest Center for Biological Diversity was a

23   cattle growers' association whose members included holders of

24   federally issued grazing permits.  Id.  The court in that case

25   based its decision largely on the existence of analogous features

26   and functions in NEPA and the ESA, noting that both statutory

27   schemes require federal agencies "to perform an analysis of the

28                                    18

United States District Court

For the Northern District of California

1  environmental impact of proposed actions."[5]   Id.

2       The Ninth Circuit itself has acknowledged analogous features

3  of NEPA and § 7 of the ESA in a variety of other contexts.  See

4  Marbled Murrelet v. Babbitt, 83 F.3d 1068, 1075 (9th Cir. 1996)

5  (noting that "the standards for 'major federal action' [triggering

6  the need for an environmental impact statement] under NEPA and

7  'agency action' [triggering the need for consultation] under the

8  ESA are much the same"); Sierra Club v. Babbitt, 65 F.3d 1502, 1512

9  (9th Cir. 1995) (noting that "both of the statutes' procedural

10  requirements are triggered by a discretionary federal action");

11  Douglas County v. Babbitt, 48 F.3d 1495, 1503 (9th Cir. 1995)

12  (concluding that in ESA and NEPA Congress created two different

13  mechanisms for achieving analogous ends).

14       None of these Ninth Circuit opinions, however, addressed

15  whether the analogies between NEPA and the ESA would justify

16  extending the circuit's approach to intervention in NEPA actions to

17  cases brought under the ESA.  Applicants argue that, despite the

18  holding in Southwest Center for Biological Diversity, "there is no

19  Ninth Circuit bar to private party intervention on the merits in an

20  ESA § 7 case."  Apps.' Reply at 3 n.2.

21       In support of this contention, Applicants cite an unpublished

22

23       [5]  The court in Southwest Center for Biological Diversity
24  applied the Ninth Circuit's NEPA rule even though the plaintiff in
the case was bringing claims under § 9 of the ESA, which regulates
the conduct of private individuals, as well as under § 7.  82 F.
25  Supp. 2d at 1074.  The court justified this extension not by
reference to the Ninth Circuit's rationale for its NEPA rule but by
26  noting that the plaintiff had "only brought a claim against [a
governmental entity] and it is only that agency's actions that are
27  here subjected to legal challenge."   Id.

28                                    19

United States District Court

For the Northern District of California

1  opinion issued by another district court in the Ninth Circuit.

2  Apps.' Ex. E, <u>Southwestern Ctr. for Biological Diversity v.</u>

3  <u>Sprague</u>, No. C 98-2434 SC (N.D. Cal. Mar. 9, 1999).  In <u>Sprague</u>, a

4  community services district moved to intervene in an ESA action

5  seeking to compel the United States Forest Service (USFS) to

6  consult with the FWS regarding USFS issuance of use permits in

7  connection with certain lands.  <u>Id.</u> at 2.  The community services

8  district had previously held a permit allowing it to divert water

9  for drinking purposes from the area in controversy; following the

10 initiation of the lawsuit, the USFS suspended the district's

11 permit.  <u>Id.</u>  The court in <u>Sprague</u> found that the suspension of the

12 district's water use permit would have "severe negative effects" on

13 its community's water supply and granted the district's motion to

14 intervene in part.  <u>Id.</u> at 8.  However, the court limited the

15 district's participation to certain aspects of the merits phase of

16 the suit.  <u>Id.</u>  Moreover, the court based its decision on the

17 weight of the district's declared interests, not on the

18 inappropriateness of applying the Ninth Circuit's NEPA rule to an

19 action brought under ESA.  <u>See id.</u>  The court did not question the

20 validity of an earlier order in the same action, in which it had

21 allowed several cattlemen's associations to intervene in the

22 remedial phase of the action, but not its merits phase.  <u>See id.</u>

23 <u>Sprague</u> therefore does not represent a clear rejection of the

24 argument that the Ninth Circuit's NEPA rule should be applied to

25 actions brought under § 7 of the ESA.

26     On balance, relevant case law supports CBD's argument for

27 applying the Ninth Circuit's NEPA rule in ESA actions.  However,

28                                20

1  the rationale behind that rule is based on the text and purpose of

2  NEPA itself.  See Churchill County, 150 F.3d at 1082 ("The

3  rationale for our rule is that, because NEPA requires action only

4  by the government, only the government can be liable under NEPA").

5  Extension of the NEPA rule to ESA actions is justified only if the

6  rationale behind that rule applies as well to the text and purpose

7  of the ESA.

8      B.   Text of § 7 of the ESA

9      CBD's argument that the Ninth Circuit's NEPA rule should be

10  applied to actions brought under § 7 of the ESA is supported by

11  some of the language of § 7.  16 U.S.C. § 1536.  Section 7 is

12  titled "Interagency Cooperation," and most of the subdivisions of

13  § 7, including two of the subdivisions under which CBD sues

14  Whitman, plainly may be violated only by federal agencies.  Section

15  7(a)(1), 16 U.S.C. § 1536(a)(1), directs federal agencies to carry

16  out "affirmative consultation programs."  50 C.F.R. § 402.01(a).

17  Section 7(a)(2), 16 U.S.C. § 1536(a)(2), requires federal agencies

18  to ensure that their actions do not "jeopardize the continued

19  existence of" endangered or threatened species or their critical

20  habitats.  50 C.F.R. § 402.01(a).  A private party could not be

21  sued under either of these provisions, because a private party

22  could not violate either provision.  See Wetlands Action Network,

23  222 F.3d at 1114.  If CBD's complaint included only claims arising

24  under subsection 7(a) of the ESA, the reasoning underlying the

25  Ninth Circuit's NEPA rule would appear to apply to the present

26  action and bar Applicants' intervention in its merits phase.

27      Applicants note, however, that § 7(d) of the ESA, 16 U.S.C.

28                                21

United States District Court

For the Northern District of California

1  § 1536(d), applies to private parties as well as governmental

2  actors.   Section 7(d) forbids the irreversible commitment of

3  resources by permit or license applicants and federal agencies

4  after the initiation of consultation pursuant to § 7(a)(2).   A

5  private party has been named as a defendant in at least one suit

6  brought under § 7(d) of the ESA.  See Envtl. Protection Info. Ctr.,

7  Inc., v. Pacific Lumber Co., 67 F. Supp. 2d 1113, 1118 (N.D. Cal.

8  1999) (dismissing action as moot but noting that "section 7(d)

9  expressly applies to private actors . . . whose activities require

10 formal federal authorization").  See also 50 C.F.R. § 402.02

11 (defining "applicant" for purposes of the ESA).

12      Because a private party can be a defendant in an action

13 brought under § 7(d) of the ESA, the rationale underlying the Ninth

14 Circuit's rule regarding intervention in NEPA actions cannot apply

15 to actions brought under this subsection.  See Sierra Club, 995

16 F.2d at 1485 (applicant entitled to intervention as of right in

17 merits phase of action brought under the Clean Water Act, because

18 unlike NEPA, Clean Water Act regulates conduct of property owners).

19 The Court concludes that if Applicants were entitled to intervene

20 as of right, they would be entitled to intervene in the merits and

21 remedial phases of CBD's § 7(d) cause of action but only in the

22 remedial phase of CBD's two § 7(a) causes of action.

23      The above conclusion presumes that CBD has viable causes of

24 action under each of these provisions of § 7 of the ESA.  It is not

25 clear, however, that CBD has a viable cause of action under § 7(d),

26 which prohibits the irreversible commitment of resources "[a]fter

27 the initiation of consultation."  In the present action, CBD is

28                                  22

United States District Court

For the Northern District of California

1  seeking to have the EPA enjoined to begin consultation.   Should
2  Applicants file a renewed motion to intervene, they should address
3  whether CBD has a viable cause of action under § 7(d) in which to
4  intervene, and CBD shall respond.

5                              CONCLUSION

6       For the foregoing reasons Applicants' motion is DENIED without
7  prejudice.   The Court grants Applicants permission to participate
8  in the action as <u>amici curiae</u>.   <u>See</u> <u>Portland Audubon</u>, 866 F.2d at
9  309; <u>Churchill County</u>, 150 F.3d at 1083 n.1.

10

11  Dated:          AUG - 6 2002
                                         _____
12                                        CLAUDIA WILKEN
                                         United States District Judge
13

14

15  Copies mailed to counsel
    as noted on the following page
16

17

18

19

20

21

22

23

24

25

26

27

28                              23

C-02-1580 CW
Brendan Cummings
Center for Biological Diversity
P.O. Box 493
54870 Pine Crest Ave


Brent Plater
Center for Biological Diversity
2325 Carleton St. Suite B
Berkeley, CA 94704


Thomas N. Lippe
 Michael W. Graf
Law Offices of Thomas N. Lippe
One Market Plaza
Steuart Tower
San Francisco, CA 94105


 James A. Coda
Office of the US Attorney
450 Golden Gate Ave
San Francisco, CA 94102


Wayne D. Hettenbach
U.S. Department of Justice
Environmental & Natural Resources Div.
Wildlife and Marine Resources Section
Benjamin Franklin Station, P.O. Box 7369
Washington, DC 20044-7369


J. Michael Klise
Crowell & Moring
1001 Pennsylvania Ave., N.W.
Washington, D.C.   20004


Peter Ackerman
Crowell & Moring
2010 Main Street, Suite 1200
Irvine, CA  92614