J. Michael Klise (*pro hac vice*)
jmklise@crowell.com
Steven P. Quarles (D.C. Bar No. 351668)
squarles@crowell.com
Thomas R. Lundquist (D.C. Bar No. 968123)
tlundquist@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Ave., NW
Washington, D.C. 20004-2595
Telephone:  (202) 624-2629
Facsimile:  (202) 628-5116

Steven P. Rice (Cal. Bar No. 094321)
CROWELL & MORING LLP
3 Park Plaza
20th Floor
Irvine, CA 92614-8505
Telephone:  (949) 263-8400
Facsimile:  (949) 263-8414
srice@crowell.com

Attorneys for Proposed Intervenors

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>ENVIRONMENTAL PROTECTION AGENCY, et al.,<br><br>Defendants,<br><br>and<br><br>CROPLIFE AMERICA and RISE,<br><br>Applicants for Intervention. | No. C-07-2794-JCS<br><br>REPLY IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE AS DEFENDANTS<br><br>(Fed. R. Civ. P. 24)<br><br>Hearing Date:  Friday, Nov. 30, 2007<br>Time:  9:30 a.m.<br>Courtroom A, 15th Floor<br><br>Magistrate Judge Joseph C. Spero |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. iii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................... 1

    I.    FULL INTERVENTION OF RIGHT SHOULD BE GRANTED ........................ 1

    II.   PERMISSIVE INTERVENTION SHOULD BE GRANTED .............................. 7

CONCLUSION ........................................................................................................................ 9

# TABLE OF AUTHORITIES

**Cases**

*Animal Prot. Inst. v. Martin*, 241 F.R.D. 66 (D. Me. 2007) ................................................................. 2

*Animal Prot. Inst. v. Merriam*, 242 F.R.D. 524 (D. Minn. 2006) ......................................................... 2

*County of Fresno v. Andrus*, 622 F.2d 436 (9th Cir. 1980) .................................................................. 7

*Ctr. for Biological Diversity v. Whitman*, No. C 02-1580 (N.D. Cal. Aug. 6, 2002) ................................................................................................................................. 5, 6, 7

*Forest Guardians v. U.S. Forest Serv.*, No. CV 00-612 TUC RCC (GEE) (D. Ariz. June 6, 2001) ............................................................................................................. 5

*Hell's Canyon Preservation Council v. U.S. Forest Serv.*, No. CV 00-755-HU (D. Or. Dec. 18, 2000) ............................................................................................................. 5

*High Sierra Hikers v. Powell*, No. C-00-1239-EDL (N.D. Cal. July 24, 2000) ................................... 5

*Home Builders Ass'n of North. California v. Williams*, Civ. S-04-345 (E.D. Cal. Apr. 9, 2004) ............................................................................................................... 3

*Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094 (9th Cir. 2002) ............................................ 7, 8

*Natural Resources Defense Council v. EPA*, No. 1:03-cv-02444-RDB (D. Md. Dec. 1, 2003) ........................................................................................................................ 2, 7

*Sierra Club v. EPA*, 995 F.2d 1478 (9th Cir. 1993) .................................................................... 3, 6, 7

*South Yuba River Citizens League, et al. v. National Marine Fisheries Serv.*, No. Civ. S-06-2845 LKK/JFM, 2007 WL 3034887 (Oct. 16, 2007) ............................................ 3

*Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001) .................................. 3

*Southwest Ctr. for Biological Diversity v. Sprague*, Civ. No. C-98-2434 SC (N.D. Cal. 1999) ................................................................................................................... 6

*Southwest Ctr. for Biological Diversity v. U.S. Forest Serv.*, 82 F. Supp. 2d 1070 (D. Ariz. 2000) .................................................................................................................. 5

*Washington Toxics Coal. v. EPA*, No. C01-0132 C (W.D. Wash. May 29, 2001) ................................................................................................................................... 5

**Statutes**

ESA § 7(a)(2), 16 U.S.C. § 1536(a)(2) ....................................................................................... 1, 4, 6

ESA § 7(a)(3), 16 U.S.C. § 1536(a)(3) .............................................................................................. 4

ESA § 7(b), 16 U.S.C. § 1536(b) ....................................................................................................... 4

FIFRA § 3(c), 7 U.S.C. § 136a(c) ...................................................................................................... 5

FIFRA § 6, 7 U.S.C. § 136d ..................................................................................................4

**Regulations**

36 C.F.R. § 222.3(c)(1)(i) .....................................................................................................5

50 C.F.R. § 402.11 ................................................................................................................4

50 C.F.R. § 402.14 ................................................................................................................4

**Rules**

Fed. R. Civ. P. 24(a) .............................................................................................................7

Fed. R. Civ. P. 24(b) .............................................................................................................8

**INTRODUCTION**

Proposed Intervenors CropLife America ("CLA") and RISE are entitled to intervene in this wide-ranging lawsuit to protect interests in the "property or transaction which is the subject of this action," Fed. R. Civ. P. 24(a)(2) – specifically, their members' interests in the many federal licenses they hold to manufacture and sell pesticides registered under the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136-136y. *See* Mot. to Intervene (Dkt. 19) at 5-7, 8-11. Those registrations by Defendant Environmental Protection Agency ("EPA") are at the heart of the Center for Biological Diversity's ("CBD's") lengthy Complaint and form the predicate for virtually all the allegations of CBD's "Claims for Relief." *See* Compl. ¶¶ 125-245. Intervenors' interests are threatened because CBD asks the Court to declare their registrations unlawful and enjoin EPA from allowing any use of the registered products throughout a major agricultural area of the country. Compl. at 49.

Remarkably, even though CBD targets Intervenors' registrations, CBD opposes the registrants' full intervention on grounds that, under Ninth Circuit precedent involving a statute not at issue here (the National Environmental Policy Act ("NEPA")), the registrants lack a "significant protectable interest in the liability phase of this case." Pl's. Combined Opposition to Motions to Intervene (Dkt. 27) at 5 ("CBD Opp."). According to CBD, that supposed flaw requires denying full intervention as of right as well as permissive intervention. *Id.* at 12-13.

These arguments are without merit. Accordingly, the motion to intervene should be granted.

**ARGUMENT**

**I.    FULL INTERVENTION OF RIGHT SHOULD BE GRANTED**

CBD's position is that, while pesticide registrants can intervene in the remedy phase of this case, they have no right to intervene in the liability phase. That limitation is inappropriate, as we explained in our opening brief. *See* CLA Mot. at 13-16. CBD's arguments in response fail for several reasons:

1.    CBD's "remedy only" argument ignores the premises of this case – CBD's own contentions that: (1) Intervenors' pesticide registrations are unlawful because, allegedly, EPA failed to consult with the U.S. Fish and Wildlife Service ("FWS") under § 7(a)(2) of the Endangered

Species Act ("ESA") in the course of making those registration decisions under FIFRA; and (2) the use of those pesticides is causing the alleged harm to wildlife and habitat on which CBD bases its standing to sue. *See, e.g.*, Compl. ¶ 10 (last sentence); *id.* ¶¶ 132-245; *Id.*, Prayer for Relief ¶ 1 (seeking declaration that "EPA is violating ESA § 7(a)(2) by failing to consult with FWS concerning effects of EPA pesticide registrations on the eleven identified endangered and threatened species in the Bay Area"); *id.* ¶ 3 (seeking injunction against pesticide use).

CBD has attacked the legal sufficiency of Intervenors' registrations under the ESA and has made the registrations and the use of Intervenors' products the Rule 24(a) "property or transaction which is the subject of the action." Thus, there is a clear relationship between Intervenors' undisputed property interests in their registrations, their business interests in ensuring that their products can be marketed and used, and CBD's claims that the registrations violate the ESA. Limiting intervention is inappropriate when, as here, the rights Intervenors seek to protect are affected by the liability portion of the action. *See Animal Prot. Inst. v. Merriam*, 242 F.R.D. 524, 529 (D. Minn. 2006) (declining to limit licensees' intervention to remedy phase in ESA case). One possible outcome of this case – in fact, the result CBD seeks – is an order limiting the use of the registered pesticides. Compl., Prayer for Relief ¶ 3. As the courts held in the ESA cases we cite (Mot. at 15) but CBD ignores, limiting license holders to participating only in the remedial stage would prejudicially deprive them of the opportunity to address the legal necessity for that relief to begin with. *See Animal Prot. Inst. v. Merriam*, 242 F.R.D. at 524 (granting license holders full intervention); *Animal Prot. Inst. v. Martin*, 241 F.R.D. 66, 71 (D. Me. 2007) (same). *See also Natural Resources Defense Council v. EPA*, No. 1:03-cv-02444-RDB (D. Md. Dec. 1, 2003) (CLA Mot. Ex. C) (noting pesticide registrant's loss of right to present supporting evidence and cross-examine witnesses if intervention not granted).

2.  CBD opposes full intervention based on Ninth Circuit precedent that it acknowledges (Opp. at 6) was developed under NEPA, not the ESA and FIFRA. That line of cases is inapposite, as this case arises under the latter two statutes, not NEPA. The absence of NEPA allegations enabled a court in a sister jurisdiction, in another ESA case we cite (Mot. at 16 & Ex. D) and CBD ignores, to grant full intervention of right *to CBD* in a suit by land developers challenging the listing of distinct

population segments of the California tiger salamander as "endangered species" under the ESA. *Home Builders Ass'n of North. California v. Williams*, Civ. S-04-345 LKK/GGH at 11 (E.D. Cal. Apr. 9, 2004) (noting that Ninth Circuit has "declined to extend the NEPA line of cases to the ESA") (citing *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001)). Just last month, the Eastern District reinforced the importance of intervening on the merits in an ESA case by granting full intervention to an irrigation district whose dam the plaintiffs sought to modify or remove based on alleged ESA deficiencies in a Biological Opinion prepared by the defendant federal agency. The court found that the district's interests were not adequately represented by existing irrigation and water district intervenors because those intervenors had stipulated to intervene only on the remedy rather than face plaintiffs' opposition to their intervention on the merits. *South Yuba River Citizens League, et al. v. National Marine Fisheries Serv.*, No. Civ. S-06-2845 LKK/JFM, 2007 WL 3034887 at *15 (Oct. 16, 2007).[1] Intervention on the merits was critical for the affected permit holders in that case, just as it is for the pesticide registrants here.

The Ninth Circuit's analysis in *Sierra Club v. EPA*, 995 F.2d 1478 (9th Cir. 1993) explains why full intervention *is* warranted here. See CLA Mot. at 15; *see also South Yuba*, 2007 WL 3034887 at *14. There, the court reversed a denial of the City of Phoenix's intervention in litigation that would require EPA to impose restrictions on the city's Clean Water Act ("CWA") permits (much as CBD's suit would require EPA to restrict Intervenors' FIFRA licenses). The court distinguished NEPA on grounds that, unlike the CWA, NEPA does not regulate the conduct of private parties. *Sierra Club*, 995 F.2d at 1485. See CLA Mot. at 15. That same distinction holds true here for two reasons.

First, CBD acknowledges that this case implicates FIFRA, not just the ESA. *See, e.g.*, Compl. ¶¶ 24-39. Pesticide registrants clearly have rights in their registrations under FIFRA,

---

[1] CBD argues (Opp. at 9) that intervention in the merits phase is inappropriate because "[a]t this time it is unknown whether or which injunctive relief might be appropriate." This argument is not only disingenuous (if CBD has its way, injunctive relief *will* issue), but is exactly why full intervention must be granted. Without it, the registrants will have no voice in the threshold determination of whether any grounds for relief exist. *See South Yuba*, 2007 WL 3034887 at *14 (granting full intervention even though nature of ultimate relief still undetermined).

including the right to submit information in support of the registration, and due process entitlements before a registration can be suspended or revoked. 7 U.S.C. § 136d.

Second, CBD's analogy between the ESA and NEPA is flawed, because the consultation process in ESA § 7(a)(2) is *not* exclusively the concern of federal agencies. The ESA expressly confers rights on the "prospective permit or license applicant" involved in the federal action that triggers the consultation provision. *See* ESA § 7(a)(3), 16 U.S.C. § 1536(a)(3). The timeframes for completing consultation confer due process rights on, and contemplate a substantive role for, the "permit or license applicant." *Id.* § 7(b), 16 U.S.C. § 1536(b). Indeed, one result of consultation can be a finding of jeopardy to the species, in which case FWS must suggest "reasonable and prudent alternatives" that would prevent jeopardy by the "Federal agency *or applicant* in implementing the agency action." *Id.* § 7(b)(3)(A), 16 U.S.C. § 1536(b)(3)(A) (emphasis added).

Likewise, the regulations implementing the consultation provisions require the participation of private stakeholders "throughout the consultation process." 50 C.F.R. § 402.11(a). EPA must provide FWS with "the best scientific and commercial data available or which can be obtained during the consultation." *Id.* § 402.14(d). This provision necessarily implicates and burdens pesticide registrants, because it is they who develop data in the course of applying for registration under FIFRA and would have the intrinsic economic incentive to develop additional data if need be. *See, e.g., id.* § 402.14(f) ("[t]he responsibility for conducting and funding any studies belongs to the Federal agency *and the applicant*, not to the Service") (emphasis added); *id.* § 402.14(g)(5) ("the Service will utilize the expertise of the Federal agency *and any applicant* in identifying" reasonable and prudent alternatives to the proposed action) (emphasis added). Additionally, as to any specific pesticide, whether there is sufficient evidence for a "may affect" finding (*see* 50 C.F.R. § 402.14(a)) that would trigger any ESA consultation obligation is an issue in which Intervenors have a significant interest at the liability stage of this case. Registrants would suffer potential damage to the reputation of their products, as well as bear the expense of participating in the consultations, if unwarranted consultations are held without any basis for a "may affect" determination. Thus, CBD's argument, which ignores the plain statutory and regulatory language as well as the realities of the registration process, must fail.

3.     CBD cites only one instance of denial of full intervention by pesticide registrants in a case involving EPA's alleged failure to comply with the ESA in the registration of pesticides. Opp. at 7 (citing *CBD v. Whitman*, No. C 02-1580 (N.D. Cal. Aug. 6, 2002) (CBD Ex. D)).[2] Judge Wilken's denial of intervention in that case is in the minority, as courts in two other similar cases have granted registrants full intervention. *See Natural Resources Defense Council v. EPA*, No. 1:03-cv-02444-RDB (D. Md. Dec. 1, 2003) (CLA Mot. Ex. C); *Washington Toxics Coal. v. EPA*, No. C01-0132 C (W.D. Wash. May 29, 2001) (appended to this reply at Ex. E).

In any event, CBD's relies on Judge Wilken's *dictum*, not her holding. Her Order held that CLA and other proposed intervenors had failed to demonstrate "protectable interests" because their supporting declarations contained only general averments about their interests without identifying which of their members held pesticide registrations, and which specific pesticides they had registered. *See CBD v. Whitman*, Aug. 6, 2002 Order at 8-11. In this case, CLA and RISE have cured those perceived defects by identifying in detail which of their members hold registrations in which of the pesticides named in the Complaint. *See* Nelson Decl. ¶ 7 (CLA Mot. Ex. A); James Decl. ¶ 7 (CLA Mot. Ex. B).

On CBD's point, Judge Wilken noted *in dictum* only that although the trade associations had not satisfied the test for intervention as of right or permissively at that time, if they applied for

---

[2]     To the extent the other four district court cases CBD cites and appends (at 6-7 and Exs. A-C) limited or denied intervention in ESA § 7 cases, none of them involve rights under FIFRA; and three of them simply derive from the fourth case and, like it, do not address the express role the ESA and regulations give to permit and license applicants. *See Southwest Ctr. for Biological Diversity v. U.S. Forest Serv.*, 82 F. Supp. 2d 1070, 1074 (D. Ariz. 2000) (no discussion of permit and license applicants' interests); *Forest Guardians v. U.S. Forest Serv.*, No. CV 00-612 TUC RCC (GEE) (D. Ariz. June 6, 2001) (same; citing *Southwest Ctr.*); *Hell's Canyon Preservation Council v. U.S. Forest Serv.*, No. CV 00-755-HU (D. Or. Dec. 18, 2000) (same; citing *Southwest Ctr.*); *High Sierra Hikers v. Powell*, No. C-00-1239-EDL (N.D. Cal. July 24, 2000) (citing *Southwest Ctr.*; denying intervention under Wilderness Act; ESA provisions not addressed). Moreover, it is not true here, as the court in *Southwest Ctr.* found (82 F. Supp. 2d at 1074) with respect to proposed intervention by a cattle grower's association in a suit challenging Forest Service grazing permits, that EPA has a greater "incentive" and "informational ability" than the registrants to explain how and why registered pesticide products do not have the alleged effects on ESA-listed species. Persons who apply for grazing permits need only make a perfunctory showing that they "own livestock to be grazed and such base property as may be required," 36 C.F.R. § 222.3(c)(1)(i), and the agency does the rest. In contrast, under FIFRA, the *registrant*, not the agency, has the unique "informational ability" and incentive – the legal obligation to gather substantial information for EPA on its products and submit extensive data on environmental effects. 7 U.S.C. § 136a(c). *See also* note 3 below and accompanying text.

intervention in the future the Ninth Circuit's approach to intervention in NEPA actions "*may* become applicable." *CBD v. Whitman*, slip op. at 17 (emphasis added). She distinguished *Southwest Ctr. for Biological Diversity v. Sprague*, Civ. No. C-98-2434 SC (N.D. Cal. 1999) (appended to this reply at Ex. F), where the district court permitted intervention by permit holders in the merits phase of an ESA case based on "the weight of the [intervenor's] declared interests."

      As in *Sprague*, CLA and RISE here have shown that the "weight of [their] declared interests" warrants full intervention. CLA and RISE have established through unrefuted declarations that specific members of each organization have significant property interests in nearly all the pesticide registrations named in CBD's Complaint. In addition, Intervenors have shown that those property interests are directly threatened by CBD's desire to have the registrations suspended and declared to be in violation of the ESA, and to have pesticide use banned in the San Francisco Bay watershed. Thus, allowing full intervention in this case would comport with Judge Wilken's ruling.

      4.    CBD contends that it would be fair to deny intervention on the merits because only EPA can be held liable under ESA § 7(a)(2). Yet, the Ninth Circuit focuses on whether interests may be impaired, not on a narrow concept of defendant liability. For example, the Ninth Circuit has noted that alleged polluters in environmental cases should not be excluded from participation in lawsuits that will affect their property and permits. *Sierra Club v. EPA*, 995 F.2d at 1483. Their participation, like the registrants' participation here, is not only fair but legally required, because "our adversary process requires that we hear from both sides before the interests of one side are impaired by a judgment." *Id.*

      5.    CBD's argument (at 10-12) that Intervenors' interests in the liability phase are adequately represented by EPA is wrong, for the reasons given in our opening brief (at 11-13). Those arguments have become more urgent since then, now that the parties have stated a "preference for pursuing settlement rather than moving forward with briefing on the allegations in Plaintiff's complaint" and are continuing to conduct settlement discussions. *See* Second Joint Case Management Statement and Request for Continuance (Dkt. 30) (Oct. 19, 2007) at 1. Further, in the case CBD cites (which concluded with a settlement among CBD, EPA, *and* intervening registrants), Judge Wilken acknowledged that the interests of pesticide registrants may not be adequately

represented by EPA in these types of cases. *CBD v. Whitman*, Aug. 6, 2002 Order at 13-14. Thus, the courts are unanimous on this issue in suits challenging EPA's compliance with the ESA in pesticide registration actions under FIFRA. *See also NRDC v. EPA*, slip op. at 6-7 (CLA Mot. Ex. C).[3]

6. Finally, and more generally, Rule 24(a) does not distinguish between the merits phase and the relief phase of a case – it states that a person meeting the criteria "shall" be permitted to intervene in the "action" if certain criteria are met. A judicial action consists of both merits and relief components. The entitlement to, and form of, relief in this case will flow from the Court's decision on the merits. Denial of intervention in the merits phase to persons who, like CLA and RISE members, hold threatened property interests and otherwise meet the Rule 24(a) criteria would undermine Rule 24(a)'s goal of affording the right to intervene to "as many apparently concerned persons as is compatible with efficiency and due process." *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980). *See also Sierra Club v. EPA*, 995 F.2d at 1481 (interest test is interpreted flexibly and "broadly, in favor of the applicants for intervention"). Indeed, as of this date the case has not been bifurcated into "liability" and "remedial" phases. There is no legitimate basis to postulate that bifurcation now merely to serve CBD's argument against full intervention.

## II. PERMISSIVE INTERVENTION SHOULD BE GRANTED

CBD opposes permissive intervention on grounds that the registrants' interests lie only in the remedial phase of the case, and that Federal Defendants will fully defend themselves. CBD Opp. at 12-13. Neither of those reasons warrants denial of permissive intervention.

First, as explained in our opening brief and as the Ninth Circuit has held, permissive intervention does not require a showing of a protectable interest. CLA Mot. at 16-17; *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002). It is undisputed that Intervenors

---

[3] CBD's argument that no entity other than EPA has a "stronger incentive or greater informational ability" to challenge the Plaintiff's claims is mistaken. CBD Opp. at 11 (citing *Southwest Ctr.*). FIFRA is a data call-in statute that requires prospective registrants to collect and submit data. In this case, by reason of their business interests, the studies they have conducted, and the data they have gathered to support their FIFRA registrations, the private-sector FIFRA registrants have a much stronger economic incentive *and* a greater informational ability under FIFRA to challenge Plaintiff's allegations than does EPA. *See* Nelson Decl. ¶ 3; James Decl. ¶ 5.

1  have satisfied the terms for permissive intervention under Rule 24(b), which CBD cites but proceeds
2  to ignore.  *See* CLA Mot. at 17; CBD Opp. at 12.  Thus, the court can and should grant intervention
3  on that basis.
4         Second, contrary to CBD's portrayal (Opp. at 12), permissive intervention in *Kootenai Tribe*
5  did not depend entirely on the absence of a full defense by the federal government, but also on the
6  "magnitude" of the case and the likelihood that intervention by environmental groups would
7  "contribute to the equitable resolution" of the case.  313 F.3d at 1111.  Those factors favor CLA's
8  and RISE's intervention here.  The "magnitude" of the case is self-evident: CBD seeks to curtail the
9  use of over five dozen pesticides in one of the major agricultural areas of the country.  Moreover, the
10 industry's input will contribute to any "equitable resolution," by rounding out the dialogue before
11 the Court, providing a basis for a more informed decision, and ensuring that the voices of all
12 concerned interests – CBD, the registrants, and the regulating agency – are heard.  Whether or not
13 EPA mounts a "full" defense under *Kootenai Tribe*, the regulated industry can only provide its
14 unique perspective through intervention.

1 have satisfied the terms for permissive intervention under Rule 24(b), which CBD cites but proceeds
2 to ignore.  *See* CLA Mot. at 17; CBD Opp. at 12.  Thus, the court can and should grant intervention
3 on that basis.

4  Second, contrary to CBD's portrayal (Opp. at 12), permissive intervention in *Kootenai Tribe*
5 did not depend entirely on the absence of a full defense by the federal government, but also on the
6 "magnitude" of the case and the likelihood that intervention by environmental groups would
7 "contribute to the equitable resolution" of the case.  313 F.3d at 1111.  Those factors favor CLA's
8 and RISE's intervention here.  The "magnitude" of the case is self-evident: CBD seeks to curtail the
9 use of over five dozen pesticides in one of the major agricultural areas of the country.  Moreover, the
10 industry's input will contribute to any "equitable resolution," by rounding out the dialogue before
11 the Court, providing a basis for a more informed decision, and ensuring that the voices of all
12 concerned interests – CBD, the registrants, and the regulating agency – are heard.  Whether or not
13 EPA mounts a "full" defense under *Kootenai Tribe*, the regulated industry can only provide its
14 unique perspective through intervention.

15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CONCLUSION**

For the foregoing reasons, CropLife America and RISE respectfully urge that they be granted Intervenor-Defendant status.

Respectfully submitted,

By:    /s/

Steven P. Rice (Cal. Bar No. 094321)
CROWELL & MORING LLP
3 Park Plaza
20th Floor
Irvine, CA 92614-8505
Telephone: (949) 263-8400
Facsimile: (949) 263-8414
srice@crowell.com

J. Michael Klise (*pro hac vice*)
jmklise@crowell.com
Steven P. Quarles (D.C. Bar No. 351668)
squarles@crowell.com
Thomas R. Lundquist (D.C. Bar No. 968123)
tlundquist@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Ave., NW
Washington, D.C. 20004-2595
Telephone: (202) 624-2629
Facsimile: (202) 628-5116

Attorneys for Proposed Intervenors CropLife America and RISE

Dated: November 16, 2007