1    Thomas W. Stoever, Jr. (Cal. Bar No. 150056)
     ARNOLD & PORTER LLP
2    370 Seventeenth Street, Suite 4500
     Denver, Colorado  80202-1370
3    Telephone:  (303) 863-1000
     Facsimile:  (303) 832-0428
4    thomas.stoever@aporter.com

5    Attorney for Proposed Intervenor-Defendant
     Reckitt Benckiser PLC

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA
                        SAN FRANCISCO DIVISION

10

11   **Center for Biological Diversity,** a non-profit )        Case No. 07-cv-02794-JCS
     organization,                                      )
12                                                      )
                            Plaintiff,                  )        **RECKITT BENCKISER'S REPLY**
13                                                      )        **BRIEF IN SUPPORT OF ITS**
              v.                                        )        **MOTION TO INTERVENE**
14                                                      )
     **Environmental Protection Agency**, and          )        (Fed. R. Civ. P. 24)
15   **Stephen Johnson**, Administrator, U.S. EPA       )
                                                        )        Date:     November 30, 2007
16                          Defendants,                 )        Time:     9:30 a.m.
                                                        )        Place:    Courtroom A, 15th Floor
17            and                                       )        Judge:    Magistrate Judge Joseph C. Spero
                                                        )
18   **Reckitt Benckiser PLC,**                         )
                                                        )
19             Proposed Intervenor-Defendant. )

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3

INTRODUCTION ........................................................................................................1

4

I.     THE COURT SHOULD PERMIT RECKITT TO INTERVENE NOW SO IT
       CAN PARTICIPATE IN THE SETTLEMENT NEGOTIATIONS THAT ARE

5

       ALREADY UNDERWAY. ...........................................................................1

6

II.    PLAINTIFF'S OPPOSITION IGNORES RECKITT'S SIGNIFICANT
       INTEREST IN THE CONSULTATION PROCESS. .........................................2

7

III.   RECKITT'S INTEREST IN THE LIABILITY PHASE IS NOT PROTECTED

8

       BY EPA. .......................................................................................................6

9

IV.    THE COURT SHOULD GRANT RECKITT'S REQUEST FOR
       PERMISSIVE INTERVENTION. ....................................................................9

10

CONCLUSION.........................................................................................................10

11

CERTIFICATE OF SERVICE ...................................................................................11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Animal Prot. Inst. v. Martin*,
   241 F.R.D. 66 (D. Maine 2007) ....................................................................... 2

*Animal Prot. Inst. v. Merriam*,
   242 F.R.D. 524, 529 (D. Minn. 2006).............................................................. 2

*Arakaki v. Cayento*,
   324 F.3d 1078 (9th Cir. 2003) ......................................................................... 7

*County of Fresno v. Andrus*,
   622 F.2d 436 (9th Cir. 1980) ........................................................................... 2

*Ctr. for Biological Diversity v. Whitman*,
   No. C 02-1580-CW (N.D. Cal. 2002)............................................................... 6

*Forest Conservation Council v. U.S. Forest Serv.*,
   66 F.3d 1489 (9th Cir. 1995) ...................................................................... 6, 8

*Forest Guardians v. U.S. Forest Serv.*,
   CV 00-612 TUC RCC (Gee) (D. Ariz. June 6, 2001)..................................... 6

*Hells Canyon Pres. Council v. U.S. Forest Serv.*,
   CV 00-755-HV (D. Or. Dec. 18, 2000) ........................................................... 6

*High Sierra Hikers Ass'n v. Powell*,
   C-00-1239-EDL (N.D. Cal. July 24, 2000) ..................................................... 6

*Home Builders Ass'n of N. Cal. v. Williams*,
   CIV S-04-0345 LKK GGH (Mar. 26, 2004)............................................ 1, 2, 4, 5

*Kleissler v. U.S. Forest Serv.*,
   157 F.3d 964 (3d Cir. 1998)............................................................................ 8

*Kootenai Tribe of Idaho v. Veneman*,
   313 F.3d 1094 (9th Cir. 2002) ....................................................................... 10

*People ex rel. Lockyer v. U.S. Dep't of Agric.*,
   No. C05-03508, -04038, 2006 WL 870732, at *1-4 (N.D. Cal. Mar. 31, 2006) ..................... 9

*Portland Audubon Society v. Hodel*,
   866 F.2d 302 (9th Cir. 1993) ........................................................................... 5

*Protect Lake Pleasant, LLC v. Johnson*,
   No. CIV 07-454, 2007 WL 1108916, at 3-5 (D. Ariz. Apr. 13, 2007) .................. 9

*River Runners for Wilderness v. Alston*,
   No. CV-06-0894, 2006 WL 2971495, at *1-2 (D. Ariz. Oct. 17, 2006).................. 9

*Sierra Club v. EPA*,
   995 F.2d 1478 (9th Cir. 1993) ................................................................. 4, 5, 6

*So. Cal. Edison v. Lynch*,
　307 F.3d 794 (9th Cir. 2002) ................................................................................... 2

*South Yuba River Citizens League And Friends Of The River v. Nat'l Marine Fisheries Serv.*,
　No. S-06-2845, 2007 WL 3034887 (E.D. Cal. Oct. 16, 2007) ................................ 8

*Southwest Ctr. for Biological Diversity v. Berg*,
　268 F.3d 810 (9th Cir. 2001) .......................................................................... 3, 5, 7, 9

*Southwest Ctr. for Biological Diversity v. U.S. Forest Serv.*,
　82 F. Supp. 2d 1870 (D. Ariz. 2000) ...................................................................... 6

*Trbovich v. United Mine Workers of Am.*,
　404 U.S. 528 n.10 (1972) ......................................................................................... 6

*United States v. Oregon*,
　745 F.2d 550 (9th Cir. 1984) ............................................................................. 1, 2

**Statutes**

16 U.S.C. § 1536 ..................................................................................................... 4, 8

33 U.S.C. § 1313(c) ................................................................................................... 5

33 U.S.C. § 1314(l) .................................................................................................... 5

33 U.S.C. § 1365(a)(2) ............................................................................................... 5

50 C.F.R. § 402.02 ..................................................................................................... 3

50 C.F.R. § 402.10 ..................................................................................................... 3

50 C.F.R. § 402.14 .................................................................................................. 3, 4

50 C.F.R. § 402.40(b)(3) ........................................................................................... 4

50 C.F.R. § 402.46 ..................................................................................................... 4

**Rules**

Fed. R. Civ. P. 24 ....................................................................................................... 6

**Other Authorities**

3B Moore's Federal Practice, ¶ 24.07[4] (2d ed. 1995) ............................................ 8

6 Moore's Federal Practice § 24.10[1] (3d ed. 2007) ................................................ 9

7C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1913 (2d ed. 2003) ............................................................................................................. 9

**Introduction**

Proposed Intervenor Reckitt Benckiser ("Reckitt") submits this brief in reply to Plaintiff's Combined Opposition to Motions to Intervene ("Plaintiff's Opp.") filed by the Center for Biological Diversity ("CBD") on October 11, 2007. There is no dispute between the parties that leave to intervene should be liberally granted, that Reckitt's motion is timely, or that Reckitt is entitled to intervene as of right in the remedial phase of this litigation. The only issue is whether Reckitt has a significant protectable interest that is not adequately represented in the liability phase of this case.

I.    **THE COURT SHOULD PERMIT RECKITT TO INTERVENE NOW SO IT CAN PARTICIPATE IN THE SETTLEMENT NEGOTIATIONS THAT ARE ALREADY UNDERWAY.**

CBD and the EPA are already discussing a settlement in this case. *See* Second Joint Case Management Statement, Docket No. 30 (Oct. 16, 2007). Those discussions are far enough along that CBD and the EPA asked the Court to delay the entry of a case management order so they can focus their efforts on settlement. *Id.* Any settlement negotiated by CBD and the EPA will undoubtedly deal with both liability and remedy at one time. Settlements in other similar cases brought by CBD have addressed EPA's liability (if any) and remedy in the same document. Thus, even by CBD's reckoning (*i.e.*, Reckitt's only interest is in the remedy phase), Reckitt should be permitted to intervene now so it has a seat at the settlement table.

This is consistent with the position CBD has taken in other litigation. In *Home Builders Ass'n of Northern California, et al. v. Williams*, CBD argued that it was entitled to intervene during the liability phase of that case so it could "participate fully" in the settlement negotiations taking place at the time. Reply in Support of Motion to Intervene by Center for Biological Diversity and Environmental Defense Center at 8, filed in *Home Builders Ass'n of Northern Cal. v. Williams*, CIV S-04-0345 LKK GGH (Mar. 26, 2004), attached as Exhibit A to the Declaration of Thomas W. Stoever, Jr. (hereafter "Stoever Dec. Exh. A"). In that brief, CBD cited *United States v. Oregon*, 745 F.2d 550, 553 (9th Cir. 1984), for the proposition that an interested party should be allowed to intervene to protect its rights in settlement negotiations. *Id.* CBD also argued that allowing it to intervene to participate in settlement negotiations was in the interest of

judicial economy because it was "undisputed that the [CBD] would have the right to object to any settlement agreement submitted to the Court." *Id.* at 8-9. There is no principled distinction between the arguments CBD made in *Home Builders Ass'n* and Reckitt's arguments here. If settlement negotiations are underway, Reckitt should be allowed to intervene, either as of right or permissively, to protect its interest in those negotiations, to conserve the Court's resources, and to be a full partner in any resolution of the issues presented in this case.[1]

## II.    PLAINTIFF'S OPPOSITION IGNORES RECKITT'S SIGNIFICANT INTEREST IN THE CONSULTATION PROCESS.

As a threshold matter, there is no dispute that the significant protectable interest test is not a "clear cut or bright-line rule." *So. Cal. Edison v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002). Rather it is "a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (internal quotations and citations omitted).

In an effort to blunt the Ninth Circuit's guidance on who should be allowed to intervene, CBD argues that, "[b]ecause only the EPA can comply with ESA Section 7(a)(2) duties, only the EPA can and should be a defendant in the liability phase of this litigation." Plaintiff's Opp. at 7. At one level, this statement is correct – Section 7(a)(2) does apply to the EPA. But CBD's analysis is facile; it ignores Reckitt's interest in the consultation process. It further ignores the fact that this action also implicates FIFRA.

In this case, Reckitt's interests are set out in the Declaration of Neil Snyder submitted in support of Reckitt's Motion to Intervene. As Dr. Snyder states, Reckitt has spent over $1,000,000 working with EPA to obtain registrations for the products it sells, Snyder Dec. at ¶ 13, 14, and is at risk of losing millions more if EPA is found liable and registrations are

---

[1]  Reckitt should be allowed to intervene even if settlement discussions are not successful. Reckitt's "interest in the proceeding is not limited to the remedy only; it extends to whether there should be any change in the first place. . . . [T]he Intervenors should be allowed to participate in the process that leads to that result." *Animal Prot. Inst. v. Martin*, 241 F.R.D. 66, 71 (D. Maine 2007); *see also Animal Prot. Inst. v. Merriam*, 242 F.R.D. 524 (D. Minn. 2006) (noting limiting intervention to the remedy phase alone is only appropriate "when the rights that the proposed intervenors seek to protect are not affected by the litigation portion" of the proceedings).

withdrawn, *see id.* at ¶ 15-17.  Moreover, Reckitt has a continuing interest in the FIFRA

registration process, including whether and how that process requires ESA consultation.  CBD

does not contradict Dr. Snyder's statements about Reckitt's interests, and in this context, the

Court must accept them as true.  *See Southwest Center for Biological Diversity v. Berg*, 268 F.3d

810, 819-20 (9th Cir. 2001) (the interests asserted by a proposed intervenor are accepted as true

when deciding a motion to intervene).

       Not only does CBD ignore Reckitt's interests as stated in Dr. Snyder's declaration, but

CBD overlooks the role Reckitt would play in any consultation required by a settlement or

finding of liability in this case.  The ESA's implementing regulations contemplate the

participation of an applicant,[2] such as Reckitt, in the consultation process.  First, the regulations

describing the informal conference procedure[3] state that the conference is "designed to assist the

Federal agency *and any applicant* in identifying and resolving potential conflicts at an early

stage in the planning process."  50 C.F.R. § 402.10(a) (emphasis added).  Applicants should be

involved in the informal conference discussions "to the greatest extent practicable."  *Id.*

§ 402.10(c).  Second, if formal consultation is required, the relevant federal agency is to use and

rely on the "best scientific and commercial data available."  50 C.F.R. § 402.14(d).  Often, this

data is in the possession of permit applicants, and federal agencies will rely on the applicants to

provide that data.  Moreover, the regulations expressly state that applicants must be provided

"with the opportunity to submit information for consideration during the consultation."  *Id.*

Third, if the U.S. Fish & Wildlife Service ("FWS") determines after consultation that additional

data is necessary to properly formulate a biological opinion, "[t]he responsibility for conducting

and funding any studies belongs to the Federal agency and the applicant, not [FWS]."  *Id.*

§ 402.14(g).  Fourth, applicants are to be involved in: (1) on-site inspections of action areas, *id.*

§ 402.14(g)(1); (2) discussions of FWS's review and evaluation and the basis for its biological

---

[2] 50 C.F.R. § 402.02 defines "applicant" as "any person . . . who requires formal approval or authorization from a Federal agency as a prerequisite to conducting" an action.

[3] An informal conference is to take place for any "action which is likely to jeopardize the continued existence of any proposed species or result in the destruction or adverse modification of proposed critical habitat."  50 C.F.R. § 402.10(a).

---

1  opinion, *id.* § 402.14(g)(5); *see also* 16 U.S.C. § 1536(b)(3)(A) (stating that a written copy of

2  FWS's opinion and a summary of the information on which the opinion is based must be

3  provided to the applicant); and (3) identifying alternatives that can help avoid violation of

4  Section 7(a)(2), 50 C.F.R. § 402.14(g)(5).  Fifth, applicants may receive copies of and submit

5  comments on all draft biological opinions.  *Id.*[4]  Thus, to the extent a ruling in the liability phase

6  invalidates or changes EPA's process for issuing FIFRA registrations, Reckitt will bear the

7  burden of that result.[5]

8         *Sierra Club v. EPA*, 995 F.2d 1478 (9th Cir. 1993), presents a close analogy to this case.

9  In *Sierra Club*, plaintiffs sued the EPA for failure to comply with provisions of the Clean Water

10  Act that *only* apply to the EPA.  *Id.* at 1479.  The proposed intervenor, the City of Phoenix, held

11  discharge permits issued by the EPA.  Even though the EPA was the only potentially liable party,

12  the court found that injunctive relief requested by the Sierra Club could have an impact on the

13  City of Phoenix's permits by requiring changes in the permits or by impairing the city's ability to

14  challenge EPA decisions regarding modifications to the permits.  *Id.* at 1486.  The court

15  concluded that although the Sierra Club sought to compel an action by the EPA, compliance with

16  the statutory scheme would ultimately be the responsibility of the city.  *Id*. at 1485.  Just like the

17  City of Phoenix in *Sierra Club*, Reckitt holds a permit issued by the EPA.  And even though the

18  EPA may be the only potentially liable party under ESA Section 7(a), it is Reckitt's registration

19  that may be modified, Reckitt's rights that may be impaired, and it is Reckitt that will bear the

20  cost of complying with any consultation ordered by the Court or agreed to in a settlement.

---

21

22  [4] The counterpart regulations relating to section 7(a)(2) consultation when a FIFRA action is at issue also contemplate involvement of applicants.  First, applicants may provide "information or recommendations" to assist the EPA in formulating its "effects determination."  50 C.F.R.

23  § 402.40(b)(3).  Second, if formal consultation is initiated and FWS decides to either issue a written modification of the EPA's effects determination or issue a jeopardy opinion, an applicant

24  may participate in reviewing, discussing, and commenting on the written modification or biological opinion.  50 C.F.R. § 402.46(c)(2).

25  [5] CBD made a similar argument when it sought to intervene in *Home Builders Ass'n*.  CBD

26  claimed that a ruling on the merits of the case might affect FWS policy, which could impact the protection of endangered species, which would affect CBD's "broad interests in the preservation

27  of imperiled species and biodiversity."  Stoever Dec. Exhibit A at 6.  Here again, there is no principled distinction between CBD's broad interest in FWS policy and Reckitt's interest in EPA

28  policy on FIFRA registration.

1  Reckitt has rights in its FIFRA registrations, including a right to participate in the consultation

2  process, and that right cannot be suspended or revoked without due process.

3       CBD tries to distinguish *Sierra Club* on the grounds that it is a Clean Water Act case, not

4  an ESA case.  Plaintiff's Opp. at 8.  CBD argues that the ESA is more like NEPA, *i.e.*, it

5  regulates the government's conduct, than the Clean Water Act.  *Id.*  In fact, the opposite is true.

6  NEPA regulates *only* the government.  The ESA, however, is a statutory scheme that regulates

7  both the government and private parties (*compare* ESA Section 7(a)(2) and ESA Section 9), in

8  much the same way as the Clean Water Act does.  Indeed, in *Sierra Club*, plaintiffs sued

9  pursuant to 33 U.S.C. § 1365(a)(2), which permits citizen suits against the EPA Administrator

10  for relief pursuant to 33 U.S.C. § 1313(c) and 33 U.S.C. § 1314(l), which relate to actions that

11  only the EPA can take.  In short, the ESA and the Clean Water Act are comparable, and *Sierra*

12  *Club* is on point.

13       CBD also challenges Reckitt's reliance on *Southwest Center for Biological Diversity v.*

14  *Berg*, 268 F.3d 810 (9th Cir. 2001), on the grounds that it is an ESA Section 9 case, not an ESA

15  Section 7(a)(2) case.  In *Southwest Center v. Berg,* environmental groups challenged a Habitat

16  Conservation Plan ("HCP") approved by the Fish & Wildlife Service.  As it did in *Sierra Club*,

17  the Ninth Circuit found that the remedy requested would have an impact on the intervenors'

18  rights under the HCP and related agreements.  *Id.* at 821-22.  The decision discusses *Portland*

19  *Audubon Society v. Hodel*, 866 F.2d 302 (9th Cir. 1993), the case that first articulated the NEPA

20  rule, but distinguishes it without any reference to differences between ESA Section 7 and

21  Section 9.  *Southwest Center v. Berg*, 268 F.3d at 819.  Thus, there is nothing in the reasoning of

22  *Southwest Center v. Berg* to support CBD's analysis.  And, in fact, the *Southwest Center v. Berg*

23  decision supports Reckitt's motion; it is another example of the Ninth Circuit allowing a

24  permitee whose rights will be affected by the outcome of a case to intervene in that case.[6]

25

26

27  ――――――――――――――――
[6] It is worth noting that in *Home Builders Ass'n*, CBD relied on *Southwest Center v. Berg* and
*Sierra Club* for the proposition that "the Ninth Circuit has in fact explicitly declined to extend

28  the NEPA line of cases to the ESA and other statutes."  Stoever Dec. Exh. A at 5.

In its response, CBD cites a series of district court cases that are distinguishable. First, CBD cites dicta from the unpublished opinion in *Center for Biological Diversity v. Whitman*, No. C 02-1580-CW (N.D. Cal. 2002), for the proposition that the NEPA rule applies to ESA cases. Plaintiff's Opp. at 7. The holding in that case is based on the court's finding that the proposed intervenors' "conclusory allegations" about their interests "are insufficient for intervention under Rule 24(a)(2)." *Id.* at 9. The *Whitman* court held that "[b]ecause Applicants have not yet asserted any protectable interests, they may not intervene as of right, even if they satisfy the remaining two prongs of the Ninth Circuit's test for intervention as of right. *Id.* at 11. Thus, the later discussion of the NEPA rule (*see id.* at 17-18) is dicta. More importantly, unlike the proposed intervenor in *Whitman*, Reckitt has made a showing of a specific, significant, profitable interest in its negotiations for brodificoum, difethialone and warfarin.

The remaining cases, *Southwest Center for Biological Diversity v. U.S. Forest Service*, 82 F. Supp. 2d 1870 (D. Ariz. 2000); *Forest Guardians v. U.S. Forest Service*, CV 00-612 TUC RCC (Gee) (D. Ariz. June 6, 2001); *Hells Canyon Pres. Council v. U.S. Forest Service*, CV 00-755-HV (D. Or. Dec. 18, 2000); and *High Sierra Hikers Ass'n v. Powell,* C-00-1239-EDL (N.D. Cal. July 24, 2000) (Plaintiff's Opp. at 6), are all derivative of the Ninth Circuit's decision in *Forest Conservation Council v. U.S. Forest Service*, 66 F.3d 1489 (9th Cir. 1995), a NEPA case. It is not surprising, therefore, that *Forest Conservation Council* follows the Ninth Circuit's NEPA rule. What is surprising is that these lower courts have elected to apply the decision in *Forest Conservation Council* rather than *Sierra Club* where the statute at issue was analogous to the ESA and permittees had significant protectable rights at issue. This Court should not make the same mistake.

## III.    RECKITT'S INTEREST IN THE LIABILITY PHASE IS NOT PROTECTED BY EPA.

The Supreme Court has stated that the inadequate representation requirement of Fed. R. Civ. P. 24(a) "is satisfied if the applicant shows that the representation of his interests 'may be' inadequate; and the burden of making that showing should be treated as "minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (citation omitted). That showing is

---

1   especially easy here for, as the court noted in *Southwest Center v. Berg,* "[t]he priorities of the

2   defending government agencies are not simply to confirm the Applicant['s] interests" in its

3   licenses. *Southwest Center v. Berg,* 268 F.3d at 823. In *Southwest Center v. Berg*, the Ninth

4   Circuit determined that the City of San Diego did not adequately represent the applicant

5   intervenors – developers – in defending the City's incidental take plan. The City's

6   representation would not be adequate because "(1) the City's range of considerations in

7   development is broader than the profit-motives animating developers; and (2) developers have

8   different duties under the Plans relating to mitigation." *Id.* The same can be said for Reckitt.

9   The EPA's range of considerations is far broader than Reckitt's. The EPA's duties also diverge

10  from Reckitt's: the EPA is charged with making jeopardy determinations and issuing incidental

11  take statements, while Reckitt is required to conform its conduct to the incidental take statements

12  and implement any required mitigation. At the very least, these factors show that the EPA's

13  defense against CBD's lawsuit "may be" inadequate to represent Reckitt's interests. Thus,

14  Reckitt should be granted intervention.

15      CBD tries to pound a square peg into a round hole by relying on *Arakaki v. Cayento*, 324

16  F.3d 1078 (9th Cir. 2003). CBD quotes the *Arakaki* opinion as follows: "[t]here is also an

17  assumption of adequacy when the government and the applicant are on the same side."

18  Plaintiff's Opp. at 10. In fact, the *Arakaki* opinion states: "[t]here is also an assumption of

19  adequacy when the government is acting on behalf of a constituency that it represents." *Arakaki*,

20  324 F.3d at 1086. Here, the EPA does not represent Reckitt. If anything, the EPA and Reckitt

21  are adverse as any permitee and permit-issuing agency would be. At the very least, the EPA is

22  agnostic on whether the Reckitt permits are modified, Reckitt's rights are impaired by a decision

23  in this case, or Reckitt is put to additional burden and expense.

24      In addition to misquoting *Arakaki*, CBD misstates the presumption that applies in

25  evaluating adequacy of representation. CBD asserts there is a presumption of adequate

26  representation when the proposed intervenor and an existing party "both seek the same result."

27  Plaintiff's Opp. at 10. Actually, the presumption applies only when the proposed intervenor and

28  a party "have the same *ultimate objective*." *Southwest Center v. Berg*, 268 F.3d at 823 (emphasis

---

Reckitt Benckiser's Reply Brief In Support of Its Motion to Intervene

1    added, quotation omitted).  Just because both Reckitt and the EPA seek "to defend against

2    Plaintiff's legal challenge" (Plaintiff's Opp. at 11) does not mean they have the same "ultimate

3    objective"; that would be like saying they have the same ultimate objective because they both

4    want to win the case.  It is always true that a party seeking to intervene as a defendant shares

5    with existing defendants a desire for the plaintiff's case to fail – that cannot be enough to

6    implicate a presumption of adequate representation.

7        In fact, Reckitt's and the EPA's ultimate objectives diverge.  The EPA's ultimate

8    objective is to ensure that listed species are not jeopardized and their critical habitat not

9    adversely modified or destroyed.  *Cf.* 16 U.S.C. § 1536(a)(1) ("Federal agencies [such as the

10   EPA] shall . . . utilize their authorities in furtherance of the purposes of this chapter by carrying

11   out programs for the conservation of endangered species and threatened species . . . .").

12   Reckitt's ultimate objective is protecting its economic interests for the benefit of its shareholders

13   by maintaining its pesticide registrations.  *See Forest Conservation Council v. U.S. Forest Serv.*,

14   66 F.3d 1489, 1499 (9th Cir. 1995) ("Inadequate representation is most likely to be found when

15   the applicant asserts a personal interest that does not belong to the general public.") (quoting 3B

16   Moore's Federal Practice, ¶ 24.07[4] (2d ed. 1995)); *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964,

17   973-74 (3d Cir. 1998) ("The straightforward business interests asserted by intervenors here may

18   become lost in the thicket of sometimes inconsistent governmental policies.").  As Judge Wilken

19   acknowledged in *Whitman*, the EPA "may not share Applicants' likely interests in protecting

20   specific pesticide registrations, existing contractual duties or existing economic interests."  *CBD*

21   *v. Whitman*, Aug. 6, 2002 Order at 13-14 (CBD Resp. Exh. D).  Because EPA does not hold

22   FIFRA registrations and does not have an economic stake in this litigation, there is nothing to

23   suggest that EPA would make the same arguments as Reckitt.  *See* South Yuba River Citizens

24   League And Friends Of The River v. Nat'l Marine Fisheries Serv., No. S-06-2845, 2007 WL

25   3034887, at *15 (E.D. Cal. Oct. 16, 2007) (finding interests not adequately represented and

26   granting intervention as a matter of right in an ESA case).

27

28

1

2

**IV.    THE COURT SHOULD GRANT RECKITT'S REQUEST FOR PERMISSIVE INTERVENTION.**

3

4

The parties agree that district courts in the Ninth Circuit construe Rule 24 liberally in

5

favor of a potential intervenor. *See Southwest Center v. Berg*, 268 F.3d at 819.  The only basis

6

for denying permissive intervention is undue delay and prejudice to the original parties. *See* 7C

7

Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1913 (2d ed. 2003);

8

*see also* 6 Moore's Federal Practice § 24.10[1] (3d ed. 2007).  CBD has not shown that Reckitt's

intervention would delay these proceedings or prejudice CBD's rights.

9

10

In its response brief, CBD makes the weak suggestion that Reckitt's intervention would

11

impede settlement efforts in this case. *See* Plaintiff's Opp. at 9-10, 12 n.2.  But CBD cites

12

nothing to support its supposition.  As noted above, CBD has brought other, similar cases where

13

industry representatives participated in all phases of the settlement discussions.  CBD points to

14

nothing from those experiences to suggest that industry participation delayed those settlements.

15

Likewise, CBD cites nothing in Reckitt's behavior to support CBD claims.[7]

16

CBD also claims that Reckitt should be denied permissive intervention because the

17

federal defendants have adequately defended against CBD's claims.  Plaintiff's Opp. at 12.

18

CBD's suggestion that failure to adequately defend is a pre-condition to permissive intervention

19

is incorrect. *See, e.g.*, *Protect Lake Pleasant, LLC v. Johnson*, No. CIV 07-454, 2007 WL

20

1108916, at 3-5 (D. Ariz. Apr. 13, 2007) (granting permissive intervention in a NEPA action

21

where there was no suggestion of failure to defend); *River Runners for Wilderness v. Alston*, No.

22

CV-06-0894, 2006 WL 2971495, at *1-2 (D. Ariz. Oct. 17, 2006) (same); *People ex rel. Lockyer*

23

*v. U.S. Dep't of Agric.*, No. C05-03508, -04038, 2006 WL 870732, at *1-4 (N.D. Cal. Mar. 31,

24

25

2006) (same).

26

27

28

---

[7] Reckitt has no interest in prolonging this litigation, and its actions reflect that fact.  Reckitt filed an early motion to intervene.  Reckitt has already said that if the Court enters a scheduling order before Reckitt is allowed to intervene, it will abide by that order.  Reckitt filed a proposed answer with its motion to intervene so there will be no delay in moving forward.

---

Reckitt Benckiser's Reply Brief In Support of Its Motion to Intervene

1

2    In sum, Reckitt has shown an independent basis for jurisdiction and common issues of

3    law and fact, and in the absence of delay or prejudice, the Court should allow Reckitt to

     intervene. *See Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1109 (9th Cir. 2002).

4

5                                    **CONCLUSION**

6         For the reasons stated above, and elsewhere in the pleadings and papers on file in this

7    matter, Reckitt Benckiser asks the Courts to grant its motion to intervene pursuant to

8    Fed. R. of Civ. P. 24(a).  In the alternative, Reckitt asks the Court to grant its motion for

9    permissive intervention pursuant to Fed. R. of Civ. P. 24(b).

10        Respectfully submitted this 16th day of November, 2007.

11                                    ARNOLD & PORTER LLP

12

13                              By:  ___/s/  Thomas W. Stoever, Jr._____
                                    Thomas W. Stoever, Jr.
14                                  (Cal. Bar No. 150056)
                                    ARNOLD & PORTER LLP
15                                  370 Seventeenth Street
                                    Suite 4500
16                                  Denver, Colorado  80202-1370
                                    Telephone:  (303) 863-1000
17                                  Facsimile:   (303) 832-0428

18                                  Attorney for Proposed Intervenor-Defendant
                                    Reckitt Benckiser, PLC
19

20

21

22

23

24

25

26

27

28

---

Reckitt Benckiser's Reply Brief In Support of Its Motion to Intervene

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2007, I caused the foregoing **Reckitt Benckiser's Reply Brief In Support of Its Motion to Intervene** to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such to counsel of record.

/s/  Thomas W. Stoever, Jr.